EXHIBIT 4

AR400089

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF LAND MANAGEMENT
ALASKA STATE OFFICE
**OFFER TO LEASE AND LEASE FOR OIL AND GAS**

Serial No.

AA-090707

The undersigned (reverse) offers to lease all or any of the lands in Item 2 that are available for lease pursuant to the Mineral Leasing Act of 1920, as amended and supplemented (30 U.S.C. 181 et seq.), the Mineral Leasing Act for Acquired Lands of 1947, as amended (30 U.S.C. 351-359), the Attorney General's Opinion of April 2, 1941 (40 Op. Atty. Gen. 41), or the Naval Petroleum Reserve Production Act of 1976 (42 U.S.C. 6501 et seq.), as amended.

**READ INSTRUCTIONS BEFORE COMPLETING**

1. Name **ConocoPhillips Alaska, Inc.**
   Street **P.O. Box 100360**
   City, State, Zip Code **Anchorage, Alaska 99510-0360**

2. This application/offer/lease is for Public Domain Lands in the National Petroleum Reserve - Alaska (NPR-A)

Legal description of land requested:      *Tract No.: 2008-H-017    * Sale Date (m/d/y): Sept. / 24 / 2008

| T. | R. | Meridian | State | County |
|---|---|---|---|---|
| NE 1/4 T. 8 N. | R. 1 W. | Umiat Meridian | Alaska | |

Sections 1-3, 10-15

Area-Specific Lease Stipulations and Required Operating Procedures: K-7
Stipulations and Required Operating Procedures: A-J, L
Colville River Special Area Protection Measures 2-9
Non-discretionary Terms and Conditions 1A thru 3A, 5A

Amount remitted: Filing fee $_____    Rental fee $ 28,800.00

Total acres applied for 5,760
Total $ _____

**DO NOT WRITE BELOW THIS LINE**

3. Land included in lease:

| T. | R. | Meridian | State | County |
|---|---|---|---|---|
| NE 1/4 T. 8 N. | R. 1 W. | Umiat Meridian | Alaska | |

Sections 1-3, 10-15

Area-Specific Lease Stipulations and Required Operating Procedures: K-7
Stipulations and Required Operating Procedures: A-J, L
Colville River Special Area Protection Measures 2-9
Non-discretionary Terms and Conditions 1A thru 3A, 5A

Total acres in lease 5,760
Rental retained $ 28,800.00

2008 DEC 11 PM 3:05
BLM AK SO 952
ANCHORAGE, AK

This lease is issued granting the exclusive right to drill for, mine, extract, remove and dispose of all the oil and gas (except helium) in the lands described in Item 3 together with the right to build and maintain necessary improvements thereupon for the term indicated below, subject to renewal or extension in accordance with the appropriate leasing authority. Rights granted are subject to applicable laws, the terms, conditions, and attached stipulations of this lease, the Secretary of the Interior's regulations and formal orders in effect as of lease issuance, and to regulations and formal orders hereafter promulgated when not inconsistent with lease rights granted or specific provision of this lease.

NOTE: This lease is issued to the high bidder pursuant to his/her duly executed bid or nomination form submitted under 43 CFR Part 3130 and is subject to the provisions of that bid or nomination and those specified on this form.

Type and primary term of lease:

THE UNITED STATES OF AMERICA

[ ] Noncompetitive lease (ten years)

[ ] Competitive lease (ten years)

[ X ] Other Competitive NPR-A Lease (ten years)

by _Carrie Taylor_ (Signing Officer)

Section Chief, Mineral Law and Solid Minerals Section
(Title)

DEC 1 6 2008
(Date)

EFFECTIVE DATE OF LEASE   DEC 1 2008

AR400090

4. (a) Undersigned certifies that (1) offeror is a citizen of the United States, an association of such citizens, a municipality, or a corporation organized under the laws of the United States or of any State or Territory thereof; (2) all parties holding an interest in the offer are in compliance with 43 CFR Part 3132.1 and the leasing authorities; (3) offeror is not considered a minor under the laws of the State in which the lands covered by this offer are located.

(b) Undersigned agrees that signature to this offer constitutes acceptance of this lease, including all terms, conditions, and stipulations of which offeror has been given notice, and any amendment or separate lease that may include any land described in this offer open to leasing at the time this offer was filed but omitted for any reason from this lease. The offeror further agrees that this offer cannot be withdrawn, either in whole or in part.

This offer will be rejected and will afford offeror no priority if it is not properly completed and executed in accordance with the regulations, or if it is not accompanied by the required payments. 18 U.S.C. Sec. 1001 makes it a crime for any person knowingly and willfully to make to any Department or agency of the United States any false, fictitious or fraudulent statements or representations as to any matter within its jurisdiction.

## NOTICE

The Privacy Act of 1974 and the regulations in 43 CFR 2.48(d) provide that you be furnished with the following information:

**AUTHORITY:** 50 Stat. 900; 25 U.S.C. 500

**PRINCIPAL PURPOSE:** The primary uses of the records are (1) to determine your qualification to receive an oil and gas lease; and (2) to provide information concerning oil and gas leases for administrative and public use.

**ROUTINE USES:** BLM and the Department of the Interior (DOI) may disclose your information on this form: (1) to members of the public who have a need for the information that is maintained by BLM for public record; (2) to the U.S. Department of Justice, court, or other adjudicative body when DOI determines the information is necessary and relevant to litigation; (3) to appropriate Federal, State, local or foreign agencies responsible for investigating, prosecuting, violations, enforcing or implementing this statute, regulation, or lease; and (4) to a congressional office when you request the assistance of the Member of Congress in writing.

**EFFECT OF NOT PROVIDING THIS INFORMATION:** If you do not furnish all the information required by this form, your application may be rejected.

Duly executed this 10th day of _December_ , 20 08      _David W. Brown_

(Signature of Lessee or Attorney-in-fact)

*[Vertical stamp, right margin: 2008 DEC 11 PM 3: __ BLM AK SO352__ ANCHORAGE AK]*

---

## LEASE TERMS

Sec. 1. Rentals - Rentals must be paid to the proper office of lessor in advance of each lease year. Annual rental rates per acre or fraction thereof are:

(a) Noncompetitive lease, $1.50 for the first 5 years; thereafter $2.00
(b) Competitive lease, $1.50, for the first 5 year; thereafter $2.00
(c) Other, see attachment; or for NPR-A: $5.00 for Area H; $3.00 for Area L; or as specified in the detailed statement of sale

If this lease or a portion thereof is committed to an approved cooperative or unit plan which includes a well capable of producing leased resources, or a well that meets criteria in 43 CFR 3137.82 and the plan contains a provision for allocation of production, royalties shall be paid on the production allocated to this lease. However, annual rentals shall continue to be due at the rate specified in (a), (b), or (c) for those lands not within a participating area.

Failure to pay annual rent, within 30 days after receipt of a Notice of Delinquency shall cause this lease to terminate. Rentals may be waived, reduced, or suspended by the Secretary upon a sufficient showing by lessee.

Sec. 2. Royalties - Royalties shall be paid to the proper office of lessor. Royalties shall be computed in accordance with regulations on production reserved or sold. Royalty rates are:

(a) Noncompetitive lease, 12 1/2%,
(b) Competitive lease, 12 1/2%,
(c) Other, see attachment; or for NPR-A: 16 2/3% for Area H; 12 1/2% for Area L; or as specified in the detailed statement of sale.

Lessor reserves the right to specify whether royalty is to be paid in value or in kind, and the right to establish reasonable minimum values on products after giving lessee notice and an opportunity to be heard. When paid in value, royalties shall be due and payable on the last day of the month following the month in which production occurred. When paid in kind, production shall be delivered, unless otherwise agreed to by lessor, in merchantable condition on the premises where produced without cost to lessor. Lessee shall not be required to hold such production in storage beyond the last day of the month following the month in which production occurred, nor shall lessee be held liable for loss or destruction of royalty oil or other products in storage from causes beyond the reasonable control of the lessee.

Minimum royalty in lieu of rental of not less than the rental which otherwise would be required for that lease year shall be payable at the end of each lease year beginning on or after a discovery in paying quantities. This minimum royalty may be waived, suspended, or reduced and the above royalty rates may be reduced, for all or portions of the lease if the Secretary determines that such action is necessary to encourage the greatest ultimate recovery of the leased resources, or is otherwise justified.

An interest charge shall be assessed on the late royalty payments or underpayments in accordance with the Federal Oil and Gas Royalty Management Act of 1982 (FOGRMA) (30 U.S.C. 1701). Lessee shall be liable for royalty payments on oil and gas loss or wasted from a lease site when such loss or waste is from negligence on the part of the operator, or due to the failure to comply with any rules, regulations, orders, or citations issued under FOGRMA or the leasing authority.

Sec. 3. Bonds - A bond shall be filed and maintained for lease operations as required under regulations.

Sec. 4. Diligence, rate of development, unitization, and drainage - Lessee must exercise reasonable diligence in developing and producing, and must prevent unnecessary damage to, loss of, or waste of leased resources. Lessor reserves the right to specify rates of development and production in the public interest and to require lessee to subscribe to a cooperative or unit plan, within 30 days of notice, if deemed necessary for proper development and operation of area, field, or pool embracing these leased lands. Lessee shall drill and produce wells necessary to protect leased lands from drainage or pay compensatory royalty for drainage in amount determined by lessor.

Sec. 5. Documents, evidence, and inspection - Lessee shall file with the proper office of lessor, not later than 30 days after effective date thereof, any contract or evidence of other arrangement for sale or disposal of production. At such times and in such form as lessor may prescribe, lessee shall furnish detailed statements showing amounts and quality of all products removed and sold, proceeds therefrom, and amount used for production purposes or unavoidably lost. Lessee may be required to provide plats and schematic diagrams showing development work and improvements, and reports with respect to parties in interest, expenditures, and depreciation costs. In the form prescribed by lessor, lessee shall keep a daily drilling record, a log, information on well surveys and tests, and a record of subsurface investigations and furnish copies to lessor when required. Lessee shall keep open at all reasonable times for inspection by any authorized officer of lessor, the leased premises and all wells, improvements, machinery, and fixtures thereon, and all books, accounts, maps, and records relative to operations, surveys, or investigations on or in the leased lands. Lessee shall maintain copies of all contracts, sales agreements, accounting records, and documentation such as billings, invoices, or similar documentation that support costs claimed as manufacturing, preparation, and/or transportation costs. All such records shall be maintained in lessee's accounting office for future audit by lessor. Lessee shall maintain required records for 6 years after they are generated or, if an audit or investigation is underway, until released of the obligation to maintain such records by lessor.

During existence of this lease, information obtained under this section shall be closed to inspection by the public in accordance with the Freedom of Information Act (5 U.S.C. 552).

Sec. 6. Conduct of operations - Lessee shall conduct operations in a manner that minimizes adverse impacts to the land, air, and water, to cultural, biological, visual, and other resources, and to other land uses or users. Lessee shall take reasonable measures deemed necessary by lessor to accomplish the intent of this section. To the extent consistent with lease rights granted, such measures may include, but are not limited to, modification to siting or design of facilities, timing of operations, and specification of interim and final reclamation measures. Lessor reserves the right to continue existing uses and to authorize future uses upon or in the leased lands, including the approval of easements or rights-of-way. Such uses shall be conditioned so as to prevent unnecessary or unreasonable interference with the rights of lessee.

Prior to disturbing the surface of the leased lands, lessee shall contact lessor to be apprised of procedures to be followed and modifications or reclamation measures that may be necessary. Areas to be disturbed may require inventories or special studies to determine the extent of impacts to other resources. Lessee may be required to complete minor inventories or short term special studies under guidelines provided by lessor. If, in the conduct of operations, threatened or endangered species, objects of historic or scientific interest, or substantial unanticipated environmental effects are observed, lessee shall immediately contact lessor. Lessee shall cease any operations that would result in the destruction of such species or objects.

Sec. 7. Mining operations - To the extent that impacts from mining operations would be substantially different or greater than those associated with normal drilling operations, lessor reserves the right to deny approval of such operations.

Sec. 8. Extraction of helium - Lessor reserves the option of extracting or having extracted helium from gas production in a manner specified and by means provided by lessor at no expense or loss to lessee or owner of the gas. Lessee shall include in any contract of sale of gas the provision of this section.

Sec. 9. Damages to property - Lessee shall pay lessor for damage or harm to persons or property as a result of lease operations.

Sec. 10. Protection of diverse interests and equal opportunity – Lessee shall pay when due, all taxes legally assessed and levied under laws of the State or the United States, accord all employees complete freedom of purchase, pay all wages at least twice each month in lawful money of the United States, maintain a safe working environment in accordance with standard industry practices, and take measures necessary to protect the health and safety of the public.

Lessor reserves the right to ensure that production is sold at reasonable prices and to prevent monopoly. If lessee operates a pipeline, or owns controlling interest in a pipeline or a company operating a pipeline, which may be operated accessible to oil derived from these leased lands, lessee shall comply with section 28 of the Mineral Leasing Act of 1920.

Lessee shall comply with Executive Order No. 11246 of September 24, 1965, as amended, and regulations and relevant orders of the Secretary of Labor issued pursuant thereto. Neither lessee nor lessee's subcontractors shall maintain segregated facilities. During the performance of this lease, the lessee must comply fully with paragraphs (1) through (7) of 43 CFR 60-1.4(a) with respect to employment discrimination on the basis of race, color, religion, sex, or national origin, and must incorporate the requirements set forth in those paragraphs in every subcontract or purchase order, as provided by that regulation.

Sec. 11. Transfer of lease interests and relinquishment of lease – As required by regulations, lessee shall file with lessor any assignment or other transfer of an interest in this lease. Lessee may relinquish this lease or any legal subdivision by filing in the proper office, a written relinquishment, which shall be effective as of the date of filing, subject to the continued obligation of the lessee and surety to pay all accrued rentals and royalties.

Sec. 12. Delivery of premises – At such time as all or portions of this lease are returned to lessor, lessee shall place affected wells in condition for suspension or abandonment, reclaim the land as specified by lessor, and within a reasonable period of time, remove equipment and improvements not deemed necessary by lessor for preservation of producible wells.

Sec. 13. Proceedings in case of default – If lessee fails to comply with any provisions of this lease, and the noncompliance continues for 30 days after written notice thereof, this lease shall be subject to cancellation unless or until the leasehold contains:
   (a)  a well capable of production of oil and gas in paying quantities, or
   (b)  meets criteria under 43 CFR 3135.1-5, or

The lease is committed to an approved cooperative or unit plan or communitization agreement which:
   (a)  contains a well capable of production of unitized substances in paying quantities, or
   (b)  meets the criteria under 43 CFR 3137.70 and 43 CFR 3137 82.

This provision shall not be construed to prevent the exercise by lessor of any other legal and equitable remedy, including waiver of the default. As such, remedy or waiver shall prevent later cancellation of the same default occurring at any other time. Lessee shall be subject to applicable provisions and penalties of FOGRMA (30 U.S.C. 1701).

Sec. 14. Heirs and successors in interest – Each obligation of this lease shall extend to and be binding upon and every benefit hereof shall inure to: the heirs, executors, administrators, successors, beneficiaries, or assignees of the respective parties hereto.

---

## INSTRUCTIONS

A. General

  1.  The front of this form is to be completed only by parties filing for a noncompetitive lease. The BLM will complete front of the form for all other types of leases.

  2.  Entries must be typed or printed plainly in ink. Offeror must sign Item 4 in ink.

  3.  An original and two copies of this offer must be prepared and filed in the proper BLM State Office. See regulations at 43 CFR 1821.2-1 for office locations.

  4.  If more space is needed, additional sheets must be attached to each copy of the form submitted.

B. Special:

  Item 1 - Enter offeror's name and billing address.

  Item 2 - A single tract number and Sale Date shall be the only acceptable description.

  Item 3 - This space will be completed by the United States.

**PAPERWORK REDUCTION ACT STATEMENT**

The Paperwork Reduction Act of 1990 (44 U.S.C. 3501 et seq.) requires us to inform you that:

1. This information is being collected pursuant to the law.

2. This information will be used to create and maintain a record of oil and gas lease activity.

3. Response to this request is required to obtain a benefit.

**EFFECT OF NOT PROVIDING INFORMATION** - If you do not provide all the information, the offer may be rejected. See regulations at 43 CFR Part 3130.

2008 DEC 11 PM 3: 05
BLM AK SO 952
ANCHORAGE. AK

Form AK 3130-1 (November 2008)

AR400092

## UNITED STATES
## DEPARTMENT OF THE INTERIOR
## BUREAU OF LAND MANAGEMENT
## ALASKA STATE OFFICE
## OFFER TO LEASE AND LEASE FOR OIL AND GAS

Serial No.

**AA-090708**

The undersigned (reverse) offers to lease all or any of the lands in Item 2 that are available for lease pursuant to the Mineral Leasing Act of 1920, as amended and supplemented (30 U.S.C. 181 et seq.), the Mineral Leasing Act for Acquired Lands of 1947, as amended (30 U.S.C. 351-359), the Attorney General's Opinion of April 2, 1941 (40 Op. Atty. Gen. 41), or the Naval Petroleum Reserve Production Act of 1976 (42 U.S.C. 6501 et seq.), as amended.

### READ INSTRUCTIONS BEFORE COMPLETING

1. Name — **ConocoPhillips Alaska, Inc.**
   Street — **P.O. Box 100360**
   City, State, Zip Code — **Anchorage, Alaska 99510-0360**

2. This application/offer/lease is for Public Domain Lands in the National Petroleum Reserve - Alaska (NPR-A)

Legal description of land requested:  *Tract No.: 2008-H-018   * Sale Date (m/d/y): Sept. / 24 / 2008

| T. | R. | Meridian | State | County |
|---|---|---|---|---|
| NW 1/4 T. 8 N. | R. 1 W. | Umiat Meridian | Alaska | |

Sections 4-9, 16-18

Area-Specific Lease Stipulations and Required Operating Procedures: K-7
Stipulations and Required Operating Procedures: A-J,
Colville River Special Area Protection Measures 2-9
Non-discretionary Terms and Conditions 1A thru 3A, 5A

Amount remitted: Filing fee $_____   Rental fee $ 27,915.00

Total acres applied for 5,____
Total $_____

### DO NOT WRITE BELOW THIS LINE

3. Land included in lease:

| T. | R. | Meridian | State | County |
|---|---|---|---|---|
| NW 1/4 T. 8 N. | R. 1 W. | Umiat Meridian | Alaska | |

Sections 4-9, 16-18

Area-Specific Lease Stipulations and Required Operating Procedures: K-7
Stipulations and Required Operating Procedures: A-J, L
Colville River Special Area Protection Measures 2-9
Non-discretionary Terms and Conditions 1A thru 3A, 5A

Total acres in lease 5,583

Rental retained $ 27,915.00

This lease is issued granting the exclusive right to drill for, mine, extract, remove and dispose of all the oil and gas (except helium) in the lands described in Item 3 together with the right to build and maintain necessary improvements thereupon for the term indicated below, subject to renewal or extension in accordance with the appropriate leasing authority. Rights granted are subject to applicable laws, the terms, conditions, and attached stipulations of this lease, the Secretary of the Interior's regulations and formal orders in effect as of lease issuance, and to regulations and formal orders hereafter promulgated when not inconsistent with lease rights granted or specific provision of this lease.

NOTE: This lease is issued to the high bidder pursuant to his/her duly executed bid or nomination form submitted under 43 CFR Part 3130 and is subject to the provisions of that bid or nomination and those specified on this form.

Type and primary term of lease:

[  ] Noncompetitive lease (ten years)

[  ] Competitive lease (ten years)

[ X ] Other Competitive NPR-A Lease (ten years)

THE UNITED STATES OF AMERICA

by _Carol Taylor_

Section Chief, Mineral Law and Solid Minerals Section   (Signing Officer)   DEC 1 6 2008
(Title)   (Date)

EFFECTIVE DATE OF LEASE   DEC 1 2008

BLM AK 80.952 ANCHORAGE, AK 2008 DEC 11 PM 3:05

**Exhibit 7, Page 98 of 137**

4. (a) Undersigned certifies that (1) offeror is a citizen of the United States, an association of such citizens, a municipality, or a corporation organized under the laws of the United States or of any State or Territory thereof; (2) all parties holding an interest in the offer are in compliance with 43 CFR Part 3132.1 and the leasing authorities; (3) offeror is not considered a minor under the laws of the State in which the lands covered by this offer are located.

(b) Undersigned agrees that signature to this offer constitutes acceptance of this lease, including all terms, conditions, and stipulations of which offeror has been given notice, and any amendment or separate lease that may include any land described in this offer open to leasing at the time this offer was filed but omitted for any reason from this lease. The offeror further agrees that this offer cannot be withdrawn, either in whole or in part.

This offer will be rejected and will afford offeror no priority if it is not properly completed and executed in accordance with the regulations, or if it is not accompanied by the required payments. 18 U.S.C. Sec. 1001 makes it a crime for any person knowingly and willfully to make to any Department or agency of the United States any false, fictitious or fraudulent statements or representations as to any matter within its jurisdiction.

## NOTICE

The Privacy Act of 1974 and the regulations at 43 CFR 2.48(d) provide that you are furnished with the following information:

**AUTHORITY:** 50 Stat. 900; 25 U.S.C. 500

**PRINCIPAL PURPOSE:** The primary uses of the records are (1) to determine your qualification to receive an oil and gas lease; and (2) to provide information concerning the status of oil and gas leases for administrative and public use.

**ROUTINE USES:** BLM and the Department of the Interior (DOI) may disclose your information on this form: (1) to members of the public who have a need for the information that is maintained by BLM for public record; (2) to the U.S. Department of Justice, court, or other adjudicative body when DOI determines the information is necessary and relevant to litigation; (3) to appropriate Federal, State, local or foreign agencies responsible for investigating, prosecuting violations, enforcing or implementing this statute, regulation, or lease; and (4) to a congressional office when you request the assistance of the Member of Congress in writing

**EFFECT OF NOT PROVIDING THIS INFORMATION:** If you do not furnish all the information required by this form, your application may be rejected.

Duly executed this 10th day of December , 20 08 . David W. Brown

(Signature of Lessee or Attorney-in-fact)

## LEASE TERMS

**Sec. 1. Rentals** - Rentals must be paid to the proper office of lessor in advance of each lease year. Annual rental rates per acre or fraction thereof are:

(a) Noncompetitive lease, $1.50 for the first 5 years, thereafter $2.00
(b) Competitive lease, $1.50, for the first 5 year; thereafter $2.00
(c) Other, see attachment; or for NPR-A: $5.00 for Area H; $3.00 for Area L; or
as specified in the detailed statement of sale

If this lease or a portion thereof is committed to an approved cooperative or unit plan which includes a well capable of producing leased resources, or a well that meets criteria in 43 CFR 3137.82 and the plan contains a provision for allocation of production, royalties shall be paid on the production allocated to this lease. However, annual rentals shall continue to be due at the rate specified in (a), (b), or (c) for those lands not within a participating area.

Failure to pay annual rent, within 30 days after receipt of a Notice of Delinquency shall cause this lease to terminate. Rentals may be waived, reduced, or suspended by the Secretary upon a sufficient showing by lessee.

**Sec. 2. Royalties** - Royalties shall be paid to the proper office of lessor. Royalty rates are computed in accordance with regulations on production removed or sold. Royalty rates are:

(a) Noncompetitive lease, 12 ½%.
(b) Competitive lease, 12 ½%;
(c) Other, see attachment; or for NPR-A: 16 2/3% for Area H; 12 ½% for Area L; or
as specified in the detailed statement of sale.

Lessor reserves the right to specify whether royalty is to be paid in value or in kind, and the right to establish reasonable minimum values on products after giving lessee notice and an opportunity to be heard. When paid in value, royalties shall be due and payable on the last day of the month following the month in which production occurred. When paid in kind, production shall be delivered, unless otherwise agreed to by lessor, in merchantable condition on the premises where produced without cost to lessor. Lessee shall not be required to hold such production in storage beyond the last day of the month following the month in which production occurred, nor shall lessee be held liable for loss or destruction of royalty oil or other products in storage from causes beyond the reasonable control of the lessee.

Minimum royalty in lieu of rental of not less than the rental which otherwise would be required for that lease year shall be payable at the end of each lease year beginning on or after a discovery in paying quantities. This minimum royalty may be waived, suspended, or reduced and the above royalty rates may be reduced, for all or portions of the lease if the Secretary determines that such action is necessary to encourage the greatest ultimate recovery of the leased resources, or is otherwise justified.

An interest charge shall be assessed on the late royalty payments or underpayments in accordance with the Federal Oil and Gas Royalty Management Act of 1982 (FOGRMA) (30 U.S.C. 1701). Lessee shall be liable for royalty payments on oil and gas lost or wasted from a lease site when such loss or waste is due to negligence on the part of the operator, or due to the failure to comply with any rules, regulations, orders, or citations issued under FOGRMA or the leasing authority.

**Sec. 3. Bonds** - A bond shall be filed and maintained for lease operations as required under regulations.

**Sec. 4. Diligence, rate of development, unitization, and drainage** - Lessee must exercise reasonable diligence in developing and producing, and must prevent unnecessary damage to, loss of, or waste of leased resources. Lessor reserves the right to specify rates of development and production in the public interest and to require lessee to subscribe to a cooperative or unit plan, within 30 days of notice, if deemed necessary for proper development and operation of area, field, or pool embracing these leased lands. Lessee shall drill and produce wells necessary to protect leased lands from drainage or pay compensatory royalty for drainage in amount determined by lessor.

**Sec. 5. Documents, evidence, and inspection** - Lessee shall file with the proper office of lessor, not later than 30 days after effective date thereof, any contract or evidence of other arrangement for sale or disposal of production. At such times and in such form as lessor may prescribe, lessee shall furnish detailed statements showing amounts and quality of all products removed and sold, proceeds therefrom, and amount used for production purposes or unavoidably lost. Lessee may be required to provide plats and schematic diagrams showing development work and improvements, and reports with respect to parties in interest, expenditures, and depreciation costs. In the form prescribed by lessor, lessee shall keep a daily drilling record, a log, information on well surveys and tests, and a record of subsurface investigations and furnish copies to lessor when required. Lessee shall keep open at all reasonable times for inspection by any authorized officer of lessor, the leased premises and all wells, improvements, machinery, and fixtures thereon, and all books, accounts, maps, and records relative to operations, surveys, or investigations on or in the leased lands. Lessee shall maintain copies of all contracts, sales agreements, accounting records, and documentation such as billings, invoices, or similar documentation that support costs claimed on manufacturing, preparation, and/or transportation costs. All such records shall be maintained in lessee's accounting office for future audit by lessor. Lessee shall maintain required records for 6 years after they are generated or, if an audit or investigation is underway, until released of the obligation to maintain such records by lessor.

During existence of this lease, information obtained under this section shall be closed to inspection by the public in accordance with the Freedom of Information Act (5 U.S.C. 552)

**Sec. 6. Conduct of operations** - Lessee shall conduct operations in a manner that minimizes adverse impacts to the land, air, and water, to cultural, biological, visual, and other resources, and to other land uses or users. Lessee shall take reasonable measures deemed necessary by lessor to accomplish the intent of this section. To the extent consistent with lease rights granted, such measures may include, but are not limited to, modification to siting or design of facilities, timing of operations, and specification of interim and final reclamation measures. Lessor reserves the right to continue existing uses and to authorize future uses upon or in the leased lands, including the approval of easements or rights-of-way. Such uses shall be conditioned so as to prevent unnecessary or unreasonable interference with the rights of lessee.

Prior to disturbing the surface of the leased lands, lessee shall contact lessor to be apprised of procedures to be followed and modifications or reclamation measures that may be necessary. Areas to be disturbed may require inventories or special studies to determine the extent of impacts to other resources. Lessee may be required to complete minor inventories or short term special studies under guidelines provided by lessor. If, in the conduct of operations, threatened or endangered species, objects of historic or scientific interest, or substantial unanticipated environmental effects are observed, lessee shall immediately contact lessor. Lessee shall cease any operations that would result in the destruction of such species or objects.

**Sec. 7. Mining operations** - To the extent that impacts from mining operations would be substantially different or greater than those associated with normal drilling operations, lessor reserves the right to deny approval of such operations.

**Sec. 8. Extraction of helium** - Lessor reserves the option of extracting or having extracted helium from gas production in a manner specified and by means provided by lessor at no expense or loss to lessee or owner of the gas. Lessee shall include in any contract of sale of gas the provision of this section.

**Sec. 9. Damages to property** - Lessees shall pay lessor for damage to lessor's improvements, and shall save and hold lessor harmless from all claims for damage or harm to persons or property as a result of lease operations.

Form 3130-I (November 2008)

**Exhibit 7, Page 99 of 137**

AR400094

Sec. 10 Protection of diverse interests and equal opportunity – Lessee shall pay when due, all taxes legally assessed and levied under laws of the State or the United States; accord all employees complete freedom of purchase; pay all wages at least twice each month in lawful money of the United States; maintain a safe working environment in accordance with standard industry practices; and take measures necessary to protect the health and safety of the public.

Lessee reserves the right to ensure that production is sold at reasonable prices and to prevent monopoly. If lessee operates a pipeline, or owns controlling interest in a pipeline or a company operating a pipeline, which may be operated accessible to oil derived from these leased land, lessee shall comply with section 28 of the Mineral Leasing Act of 1920.

Lessee shall comply with Executive Order No. 11246 of September 24, 1965, as amended, and regulations and relevant orders of the Secretary of Labor issued pursuant thereto. Neither lessee nor lessee's subcontractors shall maintain segregated facilities. During the performance of this lease, the lessee must comply fully with paragraphs (1) through (7) of 41 CFR 60-1.4(a) with respect to employment discrimination on the basis of race, color, religion, sex, or national origin, and must incorporate the requirements set forth in those paragraphs in every subcontract or purchase order, as provided by that regulation.

Sec. 11. Transfer of lease interests and relinquishment of lease – As required by regulations, lessee shall file with lessor any assignment or other transfer of an interest in this lease. Lessee may relinquish this lease or any legal subdivision by filing in the proper office, a written relinquishment, which shall be effective as of the date of filing, subject to the continued obligation of the lessee and surety to pay all accrued rentals and royalties.

Sec. 12. Delivery of premises – At such time as all or portions of this lease are returned to lessor, lessee shall place affected wells in condition for suspension or abandonment, reclaim the land as specified by lessor, and within a reasonable period of time, remove equipment and improvements not deemed necessary by lessor for preservation of producible wells.

Sec. 13. Proceedings in case of default – If lessee fails to comply with any provisions of this lease, and the noncompliance continues for 30 days after written notice thereof, this lease shall be subject to cancellation unless or until the leasehold contains:
   (a)  a well capable of production of oil and gas in paying quantities, or
   (b)  meets criteria under 43 CFR 3135.1-5, or

The lease is committed to an approved cooperative or unit plan or communitization agreement which:
   (a)  contains a well capable of production of unitized substances in paying quantities, or
   (b)  meets the criteria under 43 CFR 3137.70 and 43 CFR 3137.82.

This provision shall not be construed to prevent the exercise by lessor of any other legal and equitable remedy, including waiver of the default. As such, remedy or waiver shall prevent later cancellation of the same default occurring at any other time. Lessee shall be subject to applicable provisions and penalties of FOGRMA (30 U.S.C. 1701).

Sec. 14. Heirs and successors-in-interest – Each obligation of this lease shall extend to and be binding upon and every benefit hereof shall inure to the heirs, executors, administrators, successors, beneficiaries, or assignees of the respective parties hereto.

---

INSTRUCTIONS

A. General

1. The front of this form is to be completed only by parties filing for a noncompetitive lease. The BLM will complete front of the form for all other types of leases.

2. Entries must be typed or printed plainly in ink. Offeror must sign Item 4 in ink.

3. An original and two copies of this offer must be prepared and filed in the proper BLM State Office. See regulations at 43 CFR 1821.2-1 for office locations.

4. If more space is needed, additional sheets must be attached to each copy of the form submitted.

B. Special:

Item 1 - Enter offeror's name and billing address.

Item 2 - A single tract number and Sale Date shall be the only acceptable description.

Item 3 - This space will be completed by the United States.

PAPERWORK REDUCTION ACT STATEMENT

The Paperwork Reduction Act of 1990 (44 U.S.C. 3501 et seq.) requires us to inform you that:

1. This information is being collected pursuant to the law.

2. This information will be used to create and maintain a record of oil and gas lease activity.

3. Response to this request is required to obtain a benefit.

EFFECT OF NOT PROVIDING INFORMATION - If you do not provide all the information, the offer may be rejected. See regulations at 43 CFR Part 3130.

BLM AK SO 952
ANCHORAGE, AK
2000 DEC 11 PM 3:05

Form AK 3130-1 (November 2008)

**AR400095**

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF LAND MANAGEMENT
ALASKA STATE OFFICE
**OFFER TO LEASE AND LEASE FOR OIL AND GAS**

Serial No.

**AA-090709**

The undersigned (reverse) offers to lease all or any of the lands in Item 2 that are available for lease pursuant to the Mineral Leasing Act of 1920, as amended and supplemented (30 U.S.C. 181 et seq.), the Mineral Leasing Act for Acquired Lands of 1947, as amended (30 U.S.C. 351-359), the Attorney General's Opinion of April 2, 1941 (40 Op. Atty. Gen. 41), or the Naval Petroleum Reserve Production Act of 1976 (42 U.S.C. 6501 et seq.), as amended.

**READ INSTRUCTIONS BEFORE COMPLETING**

1. Name **ConocoPhillips Alaska, Inc.**

Street **P.O. Box 100360**

City, State, Zip Code **Anchorage, Alaska 99510-0360**

2. This application/offer/lease is for Public Domain Lands in the National Petroleum Reserve - Alaska (NPR-A)

Legal description of land requested:     *Tract No.: **2008-H-031**     * Sale Date (m/d/y): **Sept.** / **24** / **2008**

| T. | R. | Meridian | State | County |
|---|---|---|---|---|
| SW 1/4  T. 9 N. | R. 1 E. | Umiat Meridian | Alaska | |

Sections 19-21, 28-33

Area-Specific Lease Stipulations and Required Operating Procedures: K-7
Stipulations and Required Operating Procedures: A-J, L
Colville River Special Area Protection Measures 2-9
Non-discretionary Terms and Conditions 1A thru 3A, 5A

Amount remitted: Filing fee $_____    Rental fee $ **28,740.00**

Total acres applied for **5,748**

Total $_____

**DO NOT WRITE BELOW THIS LINE**

3. Land included in lease:

| T. | R. | Meridian | State | County |
|---|---|---|---|---|
| SW 1/4  T. 9 N. | R. 1 E. | Umiat Meridian | Alaska | |

Sections 19-21, 28-33

Area-Specific Lease Stipulations and Required Operating Procedures: K-7
Stipulations and Required Operating Procedures: A-J, L
Colville River Special Area Protection Measures 2-9
Non-discretionary Terms and Conditions 1A thru 3A, 5A

2008 DEC 11 PM 3:05
BLM AK SO 952
ANCHORAGE, AK

Total acres in lease **5,748**

Rental retained $ **28,740.00**

This lease is issued granting the exclusive right to drill for, mine, extract, remove and dispose of all the oil and gas (except helium) in the lands described in Item 3 together with the right to build and maintain necessary improvements thereupon for the term indicated below, subject to renewal or extension in accordance with the appropriate leasing authority. Rights granted are subject to applicable laws, the terms, conditions, and attached stipulations of this lease, the Secretary of the Interior's regulations and formal orders in effect as of lease issuance, and to regulations and formal orders hereafter promulgated when not inconsistent with lease rights granted or specific provision of this lease.

NOTE: This lease is issued to the high bidder pursuant to his/her duly executed bid or nomination form submitted under 43 CFR Part 3130 and is subject to the provisions of that bid or nomination and those specified on this form.

Type and primary term of lease:

THE UNITED STATES OF AMERICA

[ ] Noncompetitive lease (ten years)

[ ] Competitive lease (ten years)

[ X ] Other Competitive NPR-A Lease (ten years)

by _____

Section Chief, Mineral Law and Solid Minerals Section
(Title)

(Signing Officer)

DEC 1 6 2008
(Date)

EFFECTIVE DATE OF LEASE _____

Form AK 3150-1 (November 2008)

**Exhibit 7, Page 101 of 137**

AR400096

4. (a) Undersigned certifies that (1) offeror is a citizen of the United States; an association of such citizens; a municipality; or a corporation organized under the laws of the United States or of any State or Territory thereof; (2) all parties holding an interest in the offer are in compliance with 43 CFR Part 3132.1 and the leasing authorities; (3) offeror is not considered a minor under the laws of the State in which the lands covered by this offer are located.

(b) Undersigned agrees that signature on this offer constitutes acceptance of this lease, including all terms, conditions, and stipulations of which offeror has been given notice, and any amendment or separate lease that may include any land described in this offer open to leasing at the time this offer was filed but omitted for any reason from this lease. The offer further agrees that this offer cannot be withdrawn, either in whole or in part

This offer will be rejected and will afford offeror no priority if it is not properly completed and executed in accordance with the regulations, or if it is not accompanied by the required payments. 18 U.S.C. Sec. 1001 makes it a crime for any person knowingly and willfully to make to any Department or agency of the United States any false, fictitious or fraudulent statements or representations as to any matter within its jurisdiction.

## NOTICE

The Privacy Act of 1974 and the regulations at 43 CFR 2.48(d) provide that you be furnished with the following information:

**AUTHORITY:** 50 Stat. 900; 25 U.S.C. 500

**PRINCIPAL PURPOSE:** The primary uses of the records are (1) to determine your qualification to receive an oil and gas lease; and (2) to provide information concerning oil and gas leases for administrative and public use.

**ROUTINE USES:** BLM and the Department of the Interior (DOI) may disclose your information on this form: (1) to members of the public who have a need for the information that is maintained by BLM for public record; (2) to the U.S. Department of Justice, court, or other adjudicative body when DOI determines the information is necessary and relevant to litigation; (3) to appropriate Federal, State, local or foreign agencies responsible for investigating, prosecuting, enforcing or implementing this statute, regulation, or lease; and (4) to a congressional office when you request the assistance of the Member of Congress in writing.

**EFFECT OF NOT PROVIDING THIS INFORMATION:** If you do not furnish all the information required by this form, your application may be rejected.

Duly executed this 10th day of December , 20 08      David W. Brown
                                                      (Signature of Lessee or Attorney-in-fact)

## LEASE TERMS

Sec. 1. Rentals - Rentals must be paid to the proper office of lessor in advance of each lease year. Annual rental rates per acre or fraction thereof are:

(a) Noncompetitive lease, $1.50 for the first 5 years, thereafter $2.00
(b) Competitive lease, $1.50, for the first 5 year; thereafter $2.00
(c) Other, see attachment; or for NPR-A: $5.00 for Area H; $3.00 for Area L, or as specified in the detailed statement of sale

If this lease or a portion thereof is committed to an approved cooperative or unit plan which includes a well capable of producing leased resources, or a well that meets criteria in 43 CFR 3137.82 and the plan contains a provision for allocation of production, royalties shall be paid on the production allocated to this lease. However, annual rentals shall continue to be due at the rate specified in (a), (b), or (c) for those lands not within a participating area.

Failure to pay annual rent, within 30 days after receipt of a Notice of Delinquency shall cause this lease to terminate. Rentals may be waived, reduced, or suspended by the Secretary upon a sufficient showing by lessee.

Sec. 2. Royalties – Royalties shall be paid to the proper office of lessor. Royalties shall be computed in accordance with regulations on production removed or sold. Royalty rates are:

(a) Noncompetitive lease, 12 1/2% ;
(b) Competitive lease, 12 1/2%;
(c) Other, see attachment; or for NPR-A: 16 2/3% for Area H; 12 1/2% for Area L, or as specified in the detailed statement of sale.

Lessor reserves the right to specify whether royalty is to be paid in value or in kind, and the right to establish reasonable minimum values on products after giving lessee notice and an opportunity to be heard. When paid in value, royalties shall be due and payable on the last day of the month following the month in which production occurred. When paid in kind, production shall be delivered, unless otherwise agreed to by lessee, in merchantable condition on the premises where produced without cost to lessor. Lessee shall not be required to hold such production in storage beyond the last day of the month following the month in which production occurred, nor shall lessee be held liable for loss or destruction of royalty oil or other products in storage from causes beyond the reasonable control of the lessee.

Minimum royalty in lieu of rental of not less than the rental which otherwise would be required for that lease year shall be payable at the end of each lease year beginning on or after a discovery in paying quantities. This minimum royalty may be waived, suspended, or reduced and the above royalty rates may be reduced, for all or portions of the lease if the Secretary determines that such action is necessary to encourage the greatest ultimate recovery of the leased resources, or is otherwise justified.

An interest charge shall be assessed on the late royalty payments or underpayments in accordance with the Federal Oil and Gas Royalty Management Act of 1982 (FOGRMA) (30 U.S.C. 1701.) Lessee shall be liable for royalty payments on oil and gas lost or wasted from a lease site when such loss or waste is due to negligence on the part of the operator, or due to the failure to comply with any rules, regulations, orders, or citations issued under FOGRMA or the leasing authority.

Sec. 3. Bonds – A bond shall be filed and maintained for lease operations as required under regulations.

Sec. 4. Diligence, rate of development, unitization, and drainage – Lessee must exercise reasonable diligence in developing and producing, and must prevent unnecessary damage to, loss of, or waste of leased resources. Lessor reserves the right to specify rates of development and production in the public interest and to require lessee to subscribe to a cooperative or unit plan, within 30 days of notice, if deemed necessary for proper development and operation of area, field, or pool embracing these leased lands. Lessee shall drill and produce wells necessary to protect leased lands from drainage or pay compensatory royalty for drainage in amount determined by lessor.

Sec. 5. Documents, evidence, and inspection – Lessee shall file with the proper office of lessor, not later than 30 days after effective date thereof, any contract or evidence of other arrangement for sale or disposal of production. At such times and in such form as lessor may prescribe, lessee shall furnish detailed statements showing amounts and quality of all products removed and sold, proceeds therefrom, and amount used for production purposes or unavoidably lost. Lessee may be required to provide plats and schematic diagrams showing development work and improvements, and reports with respect to parties in interest, expenditures, and depreciation costs. In the form prescribed by lessor, lessee shall keep a daily drilling record, a log, information on well surveys and tests, and a record of subsurface investigations and furnish copies to lessor when required. Lessee shall keep open at all reasonable times for inspection by any authorized officer of lessor, the leased premises and all wells, improvements, machinery, and fixtures thereon, and all books, accounts, maps, and records relative to operations, surveys, or investigations on or in the leased lands. Lessee shall maintain copies of all contracts, sales agreements, accounting records, and documentation such as billings, invoices, or similar documentation that support costs claimed as manufacturing, preparation, and/or transportation costs. All such records shall be maintained in lessee's accounting office for future audit by lessor. Lessee shall maintain required records for 6 years after they are generated or, if an audit or an investigation is underway, until released of the obligation to maintain such records by lessor.

During existence of this lease, information obtained under this section shall be closed to inspection by the public in accordance with the Freedom of Information Act (5 U.S.C. 552)

Sec. 6. Conduct of operations – Lessee shall conduct operations in a manner that minimizes adverse impacts to the land, air, and water; to cultural, biological, visual, and other resources; and to other land uses or users. Lessee shall take reasonable measures deemed necessary by lessor to accomplish the intent of this section. To the extent consistent with lease rights granted, such measures may include, but are not limited to, modification to siting or design of facilities, timing of operations, and specification of interim and final reclamation measures. Lessor reserves the right to continue existing uses and to authorize future uses upon or in the leased lands, including the approval of easements or rights-of-way. Such uses shall be conditioned so as to prevent unnecessary or unreasonable interference with the rights of lessee.

Prior to disturbing the surface of the leased lands, lessee shall contact lessor to be apprised of procedures to be followed and modifications or reclamation measures that may be necessary. Areas to be disturbed may require inventories or special studies to determine the extent of impacts to other resources. Lessee may be required to complete minor inventories or short term special studies under guidelines provided by lessor. If, in the conduct of operations, threatened or endangered species, objects of historic or scientific interest, or substantial unanticipated environmental effects are observed, lessee shall immediately contact lessor. Lessee shall cease any operations that would result in the destruction of such species or objects.

Sec. 7. Mining operations – To the extent that impacts from mining operations would be substantially different or greater than those associated with normal drilling operations, lessor reserves the right to deny approval of such operations.

Sec. 8. Extraction of helium – Lessor reserves the option of extracting or having extracted helium from gas production in a manner specified and by means provided by lessor at no expense or loss to lessee or owner of the gas. Lessor shall include in any amount of value of gas the provision of this section.

Sec. 9. Damages to property – Lessee shall pay lessor for damage to lessor's improvements, and shall save and hold lessor harmless from all claims for damage or harm to persons or property as a result of lease operations.

**Exhibit 7, Page 102 of 137**

**AR400097**

Sec. 10. Protection of diverse interests and equal opportunity – Lessee shall pay when due, all taxes legally assessed and levied under laws of the State or the United States; accord all employees complete freedom of purchase; pay all wages at least twice each month in lawful money of the United States, maintain a safe working environment in accordance with standard industry practices; and take measures necessary to protect the health and safety of the public.

Lessor reserves the right to ensure that production is sold at reasonable prices and to prevent monopoly. If lessee operates a pipeline, or owns controlling interest in a pipeline or a company operating a pipeline, which may be operated accessible to oil derived from these leased lands, lessee shall comply with section 28 of the Mineral Leasing Act of 1920.

Lessee shall comply with Executive Order No. 11246 of September 24, 1965, as amended, and regulations and relevant orders of the Secretary of Labor issued pursuant thereto. Neither lessee nor lessee's subcontractors shall maintain segregated facilities. During the performance of this lease, the lessee must comply fully with paragraphs (1) through (7) of 41 CFR 60-1.4(a) with respect to employment discrimination on the basis of race, color, religion, sex, or national origin, and must incorporate the requirements set forth in those paragraphs in every subcontract or purchase order, as provided by that regulation.

Sec. 11. Transfer of lease interests and relinquishment of lease – As required by regulations, lessee shall file with lessor any assignment or other transfer of an interest in this lease. Lessee may relinquish this lease or any legal subdivision by filing in the proper office, a written relinquishment, which shall be effective as of the date of filing, subject to the continued obligation of the lessee and surety to pay all accrued rentals and royalties.

Sec. 12. Delivery of premises – At such time as all or portions of this lease are returned to lessor, lessee shall place affected wells in condition for suspension or abandonment, reclaim the land as specified by lessor, and within a reasonable period of time, remove equipment and improvements not deemed necessary by lessor for preservation of producible wells.

Sec. 13. Proceedings in case of default – If lessee fails to comply with any provisions of this lease, and the noncompliance continues for 30 days after written notice thereof, this lease shall be subject to cancellation unless or until the leaseholds contain;
(a)  a well capable of production of oil and gas in paying quantities, or
(b)  meets criteria under 43 CFR 3135.1-5, or

The lease is committed to an approved cooperative or unit plan or communitization agreement which;
(a)  contains a well capable of production of unitized substances in paying quantities, or
(b)  meets the criteria under 43 CFR 3137.70 and 43 CFR 3137.82.

This provision shall not be construed to prevent the exercise by lessor of any other legal and equitable remedy, including waiver of the default. As such, remedy or waiver shall prevent later cancellation of the same default occurring at any other time. Lessee shall be subject to applicable provisions and penalties of FOGRMA (30 U.S.C. 1701).

Sec. 14. Heirs and successors-in-interest – Each obligation of this lease shall extend to and be binding upon and every benefit hereof shall inure to the heirs, executors, administrators, successors, beneficiaries, or assignees of the respective parties hereto.

---

## INSTRUCTIONS

A. General

1. The front of this form is to be completed only by parties filing for a noncompetitive lease. The BLM will complete front of the form for all other types of leases.

2. Entries must be typed or printed plainly in ink. Offeror must sign Item 4 in ink.

3. An original and two copies of this offer must be prepared and filed in the proper BLM State Office. See regulations at 43 CFR 1821.2-1 for office locations.

4. If more space is needed, additional sheets must be attached to each copy of the form submitted.

B. Special:

Item 1 - Enter offeror's name and billing address.

Item 2 - A single tract number and Sale Date shall be the only acceptable description

Item 3 - This space will be completed by the United States.

**2008 DEC 11  PM 3: 05**
**BLM AK SO 952**
**ANCHORAGE, AK**

### PAPERWORK REDUCTION ACT STATEMENT

The Paperwork Reduction Act of 1990 (44 U.S.C. 3501 et seq.) requires us to inform you that:

1. This information is being collected pursuant to the law.

2. This information will be used to create and maintain a record of oil and gas lease activity.

3. Response to this request is required to obtain a benefit.

**EFFECT OF NOT PROVIDING INFORMATION - If you do not provide all the information, the offer may be rejected. See regulations at 43 CFR Part 3130.**

Form AK 3130-1 (November 2008)

AR400098

**ACKNOWLEDGMENT PAGE FOR U.S. DEPT. OF INTERIOR B.L.M. OFFER TO LEASE & LEASE FOR OIL & GAS SERIAL NO. AA-090709**

THE UNITED STATES OF AMERICA )
                                                           ) ss.
STATE OF_____ALASKA_____)

BLM AK SO 952
ANCHORAGE, AK
2008 DEC 11 PM 3: 05

This certifies that on the ___10th___ day of December___, 2008, before me, a notary public in and for the State of Alaska, duly commissioned and sworn, personally appeared David W. Brown , to me known and known to me to be the person described in, and who executed the foregoing lease AA-090709, who then after being duly sworn according to law, acknowledged to me under oath that he executed same freely and voluntarily for the uses and purposes therein mentioned. WITNESS my hand and official seal the day and year in this certificate first above written.

_Rebecca Swensen_
Notary Public
My Commission expires: July 4, 2012

NOTARY — · — PUBLIC

**REBECCA SWENSEN**

STATE OF ALASKA

AR400099

**UNITED STATES**
**DEPARTMENT OF THE INTERIOR**
**BUREAU OF LAND MANAGEMENT**
**ALASKA STATE OFFICE**
## OFFER TO LEASE AND LEASE FOR OIL AND GAS

Serial No.

**AA-090710**

The undersigned (reverse) offers to lease all or any of the lands in Item 2 that are available for lease pursuant to the Mineral Leasing Act of 1920, as amended and supplemented (30 U.S.C. 181 et seq.), the Mineral Leasing Act for Acquired Lands of 1947, as amended (30 U.S.C. 351-359), the Attorney General's Opinion of April 2, 1941 (40 Op. Atty. Gen. 41), or the Naval Petroleum Reserve Production Act of 1976 (42 U.S.C. 6501 et seq.), as amended.

READ INSTRUCTIONS BEFORE COMPLETING

| 1. Name | ConocoPhillips Alaska, Inc. |
|---|---|
| Street | P.O. Box 100360 |
| City, State, Zip Code | Anchorage, Alaska 99510-0360 |

2. This application/offer/lease is for Public Domain Lands in the National Petroleum Reserve - Alaska (NPR-A)

Legal description of land requested:      *Tract No.: __2008-H-034__     * Sale Date (m/d/y): __Sept.__ / __24__ / __2008__

| T. | R. | Meridian | State | County |
|---|---|---|---|---|
| SE 1/4 T. 9 N. | R. 1 W. | Umiat Meridian | Alaska | |

Sections 22-27, 34-36

Area-Specific Lease Stipulations and Required Operating Procedures: K-2, K-7
Stipulations and Required Operating Procedures: A-J, L
Colville River Special Area Protection Measures 2-9
Non-discretionary Terms and Conditions 1A thru 3A, 5A

| | | Total acres applied for __5,760__ |
|---|---|---|
| Amount remitted: Filing fee $_____ | Rental fee $ __28,800.00__ | Total $_____ |

### DO NOT WRITE BELOW THIS LINE

3. Land included in lease:

| T. | R. | Meridian | State | County |
|---|---|---|---|---|
| SE 1/4 T. 9 N. | R. 1 W. | Umiat Meridian | Alaska | |

Sections 22-27, 34-36

Area-Specific Lease Stipulations and Required Operating Procedures: K-2, K-7
Stipulations and Required Operating Procedures: A-J, L
Colville River Special Area Protection Measures 2-9
Non-discretionary Terms and Conditions 1A thru 3A, 5A

*(stamp: 2008 DEC 11 PM 3:05 BLM AK SO 952 ANCHORAGE, AK)*

Total acres in lease __5,760__

Rental retained $ __28,800.00__

This lease is issued granting the exclusive right to drill for, mine, extract, remove and dispose of all the oil and gas (except helium) in the lands described in Item 3 together with the right to build and maintain necessary improvements thereupon for the term indicated below, subject to renewal or extension in accordance with the appropriate leasing authority. Rights granted are subject to applicable laws, the terms, conditions, and attached stipulations of this lease, the Secretary of the Interior's regulations and formal orders in effect as of lease issuance, and to regulations and formal orders hereafter promulgated when not inconsistent with lease rights granted or specific provision of this lease.

NOTE: This lease is issued to the high bidder pursuant to his/her duly executed bid or nomination form submitted under 43 CFR Part 3130 and is subject to the provisions of that bid or nomination and those specified on this form.

Type and primary term of lease:

THE UNITED STATES OF AMERICA

[  ] Noncompetitive lease (ten years)

[  ] Competitive lease (ten years)

[ X ] Other __Competitive NPR-A Lease (ten years)__

by _(signature)_

(Signing Officer)

Section Chief, Mineral Law and Solid Minerals Section
(Title)

DEC 1 6 2008

DEC 1 2008 (Date)

EFFECTIVE DATE OF LEASE _____

Form AK 3130-1 (November 2008)

**Exhibit 7, Page 105 of 137**

4. (a) Undersigned certifies that (1) offeror is a citizen of the United States, an association of such citizens, a municipality, or a corporation organized under the laws of the United States or of any State or Territory thereof; (2) all parties holding an interest in the offer are in compliance with 43 CFR Part 3132.1 and the leasing authorities; (3) offeror is not considered a minor under the laws of the State in which the lands covered by this offer are located

(b) Undersigned agrees that his signature to this offer constitutes acceptance of this lease, including all terms, conditions, and stipulations of which offeror has been given notice, and any amendment or separate lease that may include any land described in this offer open to leasing at the time this offer was filed or omitted for any reason from this lease. The offeror further agrees that this offer cannot be withdrawn, either in whole or in part.

This offer will be rejected and will afford offeror no priority if it is not properly completed and executed in accordance with the regulations, or if it is not accompanied by the required payments. 18 U.S.C. Sec. 1001 makes it a crime for any person knowingly and willfully to make to any Department or agency of the United States any false, fictitious or fraudulent statements or representations as to any matter within its jurisdiction.

## NOTICE

The Privacy Act of 1974 and the regulations in 43 CFR 2.48(d) provide that you are furnished with the following information:

**AUTHORITY:** 50 Stat. 900; 25 U.S.C. 500

**PRINCIPAL PURPOSE:** The primary uses of the records are (1) to determine your qualification to receive an oil and gas lease, and (2) to provide information concerning oil and gas leases for administrative and public use.

**ROUTINE USES:** BLM and the Department of the Interior (DOI) may disclose your information on this form: (1) to members of the public who have a need for the information that is maintained by BLM for public record; (2) to the U.S. Department of Justice, court, or other adjudicative body when DOI determines the information is necessary and relevant to litigation; (3) to appropriate Federal, State, local or foreign agencies responsible for investigating, prosecuting violations, enforcing or implementing this statute, regulation, or lease; and (4) to a congressional office when you request the assistance of the Member of Congress in writing.

**EFFECT OF NOT PROVIDING THIS INFORMATION:** If you do not furnish all the information required by this form, your application may be rejected.

Duly executed this _10th_ day of _December_, 20 _08_ _David W. Brown_

(Signature of Lessee or Attorney-in-fact)

## LEASE TERMS

Sec. 1. Rentals - Rentals must be paid to the proper office of lessor in advance of each lease year. Annual rental rates per acre or fraction thereof are:

    (a) Noncompetitive lease, $1.50 for the first 5 years; thereafter $2.00
    (b) Competitive lease, $1.50, for the first 5 year; thereafter $2.00
    (c) Other, see attachment; or for NPR-A: $5.00 for Area II; $3.00 for Area L; or
        as specified in the detailed statement of sale

If this lease or a portion thereof is committed to an approved cooperative or unit plan which includes a well capable of producing leased resources, or a well that meets criteria in 43 CFR 3137.82 and the plan contains a provision for allocation of production, royalties shall be paid on the production allocated to this lease. However, annual rentals shall continue to be due at the rate specified in (a), (b), or (c) for those lands not within a participating area.

Failure to pay annual rental, within 30 days after receipt of a Notice of Delinquency shall cause this lease to terminate. Rentals may be waived, reduced, or suspended by the Secretary upon a sufficient showing by lessee.

Sec. 2. Royalties – Royalties shall be paid to the proper office of lessor. Royalties shall be computed in accordance with regulations on production removed or sold. Royalty rates are:

    (a) Noncompetitive lease, 12 1/2% ;
    (b) Competitive lease, 12 1/2% ;
    (c) Other, see attachment; or for NPR-A: 16 2/3% for Area II, 12 1/2% for Area L; or
        as specified in the detailed statement of sale.

Lessor reserves the right to specify whether royalty is to be paid in value or in kind, and the right to establish reasonable minimum values on products after giving lessee notice and an opportunity to be heard. When paid in value, royalties shall be due and payable on the last day of the month following the month in which production occurred. When paid in kind, production shall be delivered, unless otherwise agreed to by lessor, in merchantable condition on the premises where produced without cost to lessor. Lessee shall not be required to hold such production in storage beyond the last day of the month following the month in which production occurred, nor shall lessee be held liable for loss or destruction of royalty oil or other products in storage from causes beyond the reasonable control of the lessee.

Minimum royalty in lieu of rental of not less than the rental which otherwise would be required for that lease year shall be payable at the end of each lease year beginning on or after a discovery in paying quantities. This minimum royalty may be waived, suspended, or reduced and the above royalty rates may be reduced, for all or portions of the lease if the Secretary determines that such action is necessary to encourage the greatest ultimate recovery of the leased resources, or is otherwise justified.

An interest charge shall be assessed on the late royalty payments or underpayments in accordance with the Federal Oil and Gas Royalty Management Act of 1982 (FOGRMA) (30 U.S.C. 1701). Lessee shall be liable for royalty payments on oil and gas lost or wasted from a lease site when such loss or waste is due to negligence on the part of the operator, or due to the failure to comply with any rules, regulations, orders, or citations issued under FOGRMA or the leasing authority.

Sec. 3. Bonds – A bond shall be filed and maintained for lease operations as required under regulations.

Sec. 4. Diligence, rate of development, unitization, and drainage – Lessee must exercise reasonable diligence in developing and producing, and must prevent unnecessary damage to, loss of, or waste of leased resources. Lessor reserves the right to specify rates of development and production in the public interest and to require lessee to subscribe to a cooperative or unit plan, within 30 days of notice, if deemed necessary for proper development and operation of area, field, or pool embracing these leased lands. Lessee shall drill and produce all wells necessary to protect leased lands from drainage or pay compensatory royalty for drainage in amount determined by lessor.

Sec. 5. Documents, evidence, and inspection – Lessee shall file with the proper office of lessor, not later than 30 days after effective date thereof, any contract or evidence of other arrangement for sale or disposal of production. At such times and in such form as lessor may prescribe, lessee shall furnish detailed statements showing amounts and quality of all products removed and sold, proceeds therefrom, and amount used for production purposes or unavoidably lost. Lessee may be required to provide plats and schematic diagrams showing development work and improvements, and reports with respect to parties in interest, expenditures, and depreciation costs. In the form prescribed by lessor, lessee shall keep a daily drilling record, a log, information on well surveys and tests, and a record of subsurface investigations and furnish copies to lessor when required. Lessee shall keep open at all reasonable times for inspection by any authorized officer of lessor, the leased premises and all wells, improvements, machinery, and fixtures thereon, and all books, accounts, maps, and records relative to operations, surveys, or investigations on or in the leased lands. Lessee shall maintain copies of all contracts, sales agreements, accounting records, and documentation such as billings, invoices, or similar documentation that support costs claimed as manufacturing, preparation, and/or transportation costs. All such records shall be maintained in lessee's accounting office for future audit by lessor. Lessee shall maintain required records for 6 years after they are generated or, if an audit or investigation is underway, until released of the obligation to maintain such records by lessor.

During existence of this lease, information obtained under this section shall be closed to inspection by the public in accordance with the Freedom of Information Act (5 U.S.C. 552).

Sec. 6. Conduct of operations – Lessee shall conduct operations in a manner that minimizes adverse impacts to the land, air, and water, to cultural, biological, visual, and other resources, and to other land uses or users. Lessee shall take reasonable measures deemed necessary by lessor to accomplish the intent of this section. To the extent consistent with lease rights granted, such measures may include, but are not limited to, modification to siting or design of facilities, timing of operations, and specification of interim and final reclamation measures. Lessee reserves the right to continue existing uses and to authorize future uses upon or in the leased lands, including the approval of easements or rights-of-way. Such uses shall be conditioned so as to prevent unnecessary or unreasonable interference with the rights of lessee.

Prior to disturbing the surface of the leased lands, lessee shall contact lessor to be apprised of procedures to be followed and modifications or reclamation measures that may be necessary. Areas to be disturbed may require inventories or special studies to determine the extent of impacts to other resources. Lessee may be required to complete minor inventories or short term special studies under guidelines provided by lessor. If, in the conduct of operations, threatened or endangered species, objects of historic or scientific interest, or substantial unexpected environmental effects are observed, lessee shall immediately contact lessor. Lessee shall cease any operations that would result in the destruction of such species or objects.

Sec. 7. Mining operations – To the extent that impacts from mining operations would be substantially different or greater than those associated with normal drilling operations, lessor reserves the right to deny approval of such operations.

Sec. 8. Extraction of helium – Lessor reserves the option of extracting or having extracted helium from gas production in a manner specified and by means provided by lessor at no expense or loss to lessee or owner of the gas. Lessee shall include in any contract of sale of gas the provision of this section.

Sec. 9. Damages to property – Lessee shall pay lessee for damage to lessor's improvements, and shall save and hold lessor harmless from all claims for damage or harm to persons or property as a result of lease operations.

Form AK 3130-1 (November 2008)

**Exhibit 7, Page 106 of 137**

**AR400101**

Sec. 10. Protection of diverse interests and equal opportunity – Lessee shall pay when due, all taxes legally assessed and levied under laws of the State or the United States; accord all employees complete freedom of purchase; pay all wages at least twice each month in lawful money of the United States; maintain a safe working environment in accordance with standard industry practices; and take measures necessary to protect the health and safety of the public.

Lessee reserves the right to ensure that production is sold at reasonable prices and to prevent monopoly. If lessee operates a pipeline, or owns controlling interest in a pipeline or a company operating a pipeline, which may be operated accessible to oil derived from these leased lands, lessee shall comply with section 28 of the Mineral Leasing Act of 1920.

Lessee shall comply with Executive Order No. 11246 of September 24, 1965, as amended, and regulations and relevant orders of the Secretary of Labor issued pursuant thereto. Neither lessee nor lessee's subcontractors shall maintain segregated facilities. During the performance of this lease, the lessee must comply fully with paragraphs (1) through (7) of 41 CFR 60-1.4(a) with respect to employment discrimination on the basis of race, color, religion, sex, or national origin, and must incorporate the requirements set forth in those paragraphs in every subcontract or purchase order, as provided by that regulation.

Sec. 11. Transfer of lease interests and relinquishment of lease – As required by regulations, lessee shall file with lessor any assignment or other transfer of an interest in this lease. Lessee may relinquish this lease or any legal subdivision by filing in the proper office, a written relinquishment, which shall be effective as of the date of filing, subject to the continued obligation of the lessee and surety to pay all accrued rentals and royalties.

Sec. 12. Delivery of premises – At such time as all or portions of this lease are returned to lessor, lessee shall place affected wells in condition for suspension or abandonment, reclaim the land as specified by lessee, and within a reasonable period of time, remove equipment and improvements not deemed necessary by lessor for preservation of producible wells.

Sec. 13. Proceedings in case of default – If lessee fails to comply with any provisions of this lease, and the noncompliance continues for 30 days after written notice thereof, this lease shall be subject to cancellation unless or until the leasehold contains:

    (a)   a well capable of production of oil and gas in paying quantities, or

    (b)   meets criteria under 43 CFR 3135.1-5, or

The lease is committed to an approved cooperative or unit plan or communitization agreement which;

    (a)   contains a well capable of production of unitized substances in paying quantities, or

    (b)   meets the criteria under 43 CFR 3137.70 and 43 CFR 3137.82.

This provision shall not be construed to prevent the exercise by lessee of any other legal and equitable remedy, including waiver of the default. At such, remedy or waiver shall prevent later cancellation of the same default occurring at any other time. Lessee shall be subject to applicable provisions and penalties of FOGRMA (30 U.S.C. 1701).

Sec. 14. Heirs and successors-in-interest – Each obligation of this lease shall extend to and be binding upon and every benefit hereof shall inure to: the heirs, executors, administrators, successors, beneficiaries, or assignees of the respective parties hereto.

---

## INSTRUCTIONS

A. General

  1.  The front of this form is to be completed only by parties filing for a noncompetitive lease. The BLM will complete front of the form for all other types of leases.

  2.  Entries must be typed or printed plainly in ink. Offeror must sign Item 4 in ink.

  3.  An original and two copies of this offer must be prepared and filed in the proper BLM State Office. See regulations at 43 CFR 1821.2-1 for office locations.

  4.  If more space is needed, additional sheets must be attached to each copy of the form submitted.

B. Special:

  Item 1 - Enter offeror's name and billing address.

  Item 2 - A single tract number and Sale Date shall be the only acceptable description.

  Item 3 - This space will be completed by the United States.

2008 DEC 11 PM 3: 05
BLM AK SO 952
ANCHORAGE, AK

## PAPERWORK REDUCTION ACT STATEMENT

The Paperwork Reduction Act of 1990 (44 U.S.C. 3501 et seq.) requires us to inform you that:

1. This information is being collected pursuant to the law.

2. This information will be used to create and maintain a record of oil and gas lease activity.

3. Response to this request is required to obtain a benefit.

**EFFECT OF NOT PROVIDING INFORMATION -** If you do not provide all the information, the offer may be rejected. See regulations at 43 CFR Part 3130.

Form AK 3130-1 (November 2008)

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF LAND MANAGEMENT
ALASKA STATE OFFICE
## OFFER TO LEASE AND LEASE FOR OIL AND GAS

Serial No.

AA-090711

The undersigned (reverse) offers to lease all or any of the lands in Item 2 that are available for lease pursuant to the Mineral Leasing Act of 1920, as amended and supplemented (30 U.S.C. 181 et seq.), the Mineral Leasing Act for Acquired Lands of 1947, as amended (30 U.S.C. 351-359), the Attorney General's Opinion of April 2, 1941 (40 Op. Atty. Gen. 41), or the Naval Petroleum Reserve Production Act of 1976 (42 U.S.C. 6501 et seq.), as amended.

### READ INSTRUCTIONS BEFORE COMPLETING

| | |
|---|---|
| 1. Name | ConocoPhillips Alaska, Inc. |
| Street | P.O. Box 100360 |
| City, State, Zip Code | Anchorage, Alaska 99510-0360 |

2. This application/offer/lease is for Public Domain Lands in the National Petroleum Reserve - Alaska (NPR-A)

Legal description of land requested:  *Tract No.: 2008-H-038  * Sale Date (m/d/y): Sept. / 24 / 2008

| T. | R. | Meridian | State | County |
|---|---|---|---|---|
| SE 1/4  T. 9 N. | R. 2 W. | Umiat Meridian | Alaska | |

Sections 22-27, 34-36

Area-Specific Lease Stipulations and Required Operating Procedures: K-1(f), K-7
Stipulations and Required Operating Procedures: A-J, L
Colville River Special Area Protection Measures 2-9
Non-discretionary Terms and Conditions 1A thru 3A, 5A

Amount remitted: Filing fee $_____  Rental fee $ 28,800.00

Total acres applied for  5,760
Total $_____

### DO NOT WRITE BELOW THIS LINE

3. Land included in lease:

| T. | R. | Meridian | State | County |
|---|---|---|---|---|
| SE 1/4  T. 9 N. | R. 2 W. | Umiat Meridian | Alaska | |

Sections 22-27, 34-36

Area-Specific Lease Stipulations and Required Operating Procedures: K-1(f), K-7
Stipulations and Required Operating Procedures: A-J, L
Colville River Special Area Protection Measures 2-9
Non-discretionary Terms and Conditions 1A thru 3A, 5A

2008 DEC 11  PM 3: 05
BLM AK SO 952
ANCHORAGE, AK

Total acres in lease  5,760

Rental retained $ 28,800.00

This lease is issued granting the exclusive right to drill for, mine, extract, remove and dispose of all the oil and gas (except helium) in the lands described in Item 3 together with the right to build and maintain necessary improvements thereupon for the term indicated below, subject to renewal or extension in accordance with the appropriate leasing authority. Rights granted are subject to applicable laws, the terms, conditions, and attached stipulations of this lease, the Secretary of the Interior's regulations and formal orders in effect as of lease issuance, and to regulations and formal orders hereafter promulgated when not inconsistent with lease rights granted or specific provision of this lease.

NOTE: This lease is issued to the high bidder pursuant to his/her duly executed bid or nomination form submitted under 43 CFR Part 3130 and is subject to the provisions of that bid or nomination and those specified on this form.

Type and primary term of lease

[   ] Noncompetitive lease (ten years)

[   ] Competitive lease (ten years)

[ X ] Other Competitive NPR-A Lease (ten years)

THE UNITED STATES OF AMERICA

by _Carol Saylor_
(Signing Officer)
Section Chief, Mineral Law and Solid Minerals Section
(Title)

DEC 1 6 2008
(Date)

EFFECTIVE DATE OF LEASE  DEC 1 2008

Form AK 3130-1 (November 2008)

**Exhibit 7, Page 108 of 137**

AK400103

4. (a) Undersigned certifies that (1) offeror is a citizen of the United States; an association of such citizens, a municipality, or a corporation organized under the laws of the United States or of any State or Territory thereof. (2) all parties holding an interest in the offer are in compliance with 43 CFR Part 3132.1 and the leasing authorities; (3) offeror is not considered a minor under the laws of the State in which the lands covered by this offer are located.

(b) Undersigned agrees that signature to this offer constitutes acceptance of this lease, including all terms, conditions, and stipulations of which offeror has been given notice, and any amendment or separate lease that may include any land described in this offer open to leasing at the time this offer was filed but omitted for any reason from this lease. The offeror further agrees that this offer cannot be withdrawn, either in whole or in part.

This offer will be rejected and will afford offeror no priority if it is not properly completed and executed in accordance with the regulations, or if it is not accompanied by the required payments. 18 U.S.C. Sec. 1001 makes it a crime for any person knowingly and willfully to make to any Department or agency of the United States any false, fictitious or fraudulent statements or representations as to any matter within its jurisdiction.

### NOTICE

The Privacy Act of 1974 and the regulations at 43 CFR 2.48(d) provide that you be furnished with the following information:

AUTHORITY: 50 Stat. 900; 25 U.S.C. 500

PRINCIPAL PURPOSE: The primary uses of the records are (1) to determine your qualification to receive an oil and gas lease; and (2) to provide information concerning oil and gas leases for administrative and public use.

ROUTINE USES: BLM and the Department of the Interior (DOI) may disclose your information on this form: (1) to members of the public who have a need for the information that is maintained by BLM for public record; (2) to the U.S. Department of Justice, court, or other adjudicative body when DOI determines the information is necessary and relevant to litigation; (3) to appropriate Federal, State, local or foreign agencies responsible for investigating, prosecuting, violations, enforcing or implementing this statute, regulation, or lease; and (4) to a congressional office when you request the assistance of the Member of Congress in writing.

EFFECT OF NOT PROVIDING THIS INFORMATION: If you do not furnish all the information required by this form, your application may be rejected.

Duly executed this _10th_ day of _December_ , 20 _08_ . _David W. Brown_
(Signature of Lessee or Attorney-in-fact)

2008 DEC 1   PM 3:05   BLM AK SO ANCHORAGE

### LEASE TERMS

Sec. 1. Rentals - Rentals must be paid to the proper office of lessor in advance of each lease year. Annual rental rates per acre or fraction thereof are:

(a) Noncompetitive lease, $1.50 for the first 5 years; thereafter $2.00
(b) Competitive lease, $1.50, for the first 5 year; thereafter $2.00
(c) Other, see attachment, or for NPR-A: $5.00 for Area II, $3.00 for Area L; or as specified in the detailed statement of sale

If this lease or a portion thereof is committed to an approved cooperative or unit plan which includes a well capable of producing leased resources, or a well that meets criteria in 43 CFR 3137.82 and the plan contains a provision for allocation of production, royalties shall be paid on the production allocated to this lease. However, annual rentals shall continue to be due at the rate specified in (a), (b), or (c) for those lands not within a participating area.

Failure to pay annual rent, within 30 days after receipt of a Notice of Delinquency shall cause this lease to terminate. Rentals may be waived, reduced, or suspended by the Secretary upon a sufficient showing by lessee.

Sec. 2. Royalties - Royalties shall be paid to the proper office of lessor. Royalties shall be computed in accordance with regulations on production removed or sold. Royalty rates are:

(a) Noncompetitive lease, 12 1/2%;
(b) Competitive lease, 12 1/2%;
(c) Other, see attachment, or for NPR-A: 16 2/3% for Area II, 12 1/2% for Area L; or as specified in the detailed statement of sale

Lessor reserves the right to specify whether royalty is to be paid in value or in kind, and the right to establish reasonable minimum values on products after giving lessee notice and an opportunity to be heard. When paid in value, royalties shall be due and payable on the last day of the month following the month in which production occurred. When paid in kind, production shall be delivered, unless otherwise agreed to by lessor, in merchantable condition on the premises where produced without cost to lessor. Lessee shall not be required to hold such production in storage beyond the last day of the month following the month in which production occurred, nor shall lessee be held liable for loss or destruction of royalty oil or other products in storage from causes beyond the reasonable control of the lessee.

Minimum royalty in lieu of rental of not less than the rental which otherwise would be required for that lease year shall be payable at the end of each lease year beginning on or after a discovery in paying quantities. This minimum royalty may be waived, suspended, or reduced and the above royalty rates may be reduced, for all or portions of the lease if the Secretary determines that such action is necessary to encourage the greatest ultimate recovery of the leased resources, or is otherwise justified.

An interest charge shall be assessed on the late royalty payments or underpayments in accordance with the Federal Oil and Gas Royalty Management Act of 1982 (FOGRMA) (30 U.S.C. 1701). Lessee shall be liable for royalty payments on oil and gas lost or wasted from a lease site when such loss or waste is due to negligence on the part of the operator, or due to the failure to comply with any rules, regulations, orders, or citations issued under FOGRMA or the leasing authority.

Sec. 3. Bonds - A bond shall be filed and maintained for lease operations as required under regulations.

Sec. 4. Diligence, rate of development, unitization, and drainage - Lessee must exercise reasonable diligence in developing and producing, and must prevent unnecessary damage to, loss of, or waste of leased resources. Lessor reserves the right to specify rates of development and production in the public interest and to require lessee to subscribe to a cooperative or unit plan, within 30 days of notice, if deemed necessary for proper development and operation of area, field, or pool embracing these leased lands. Lessee shall drill and produce wells necessary to protect leased lands from drainage or pay compensatory royalty for drainage in amount determined by lessor.

Sec. 5. Documents, evidence, and inspection - Lessee shall file with the proper office of lessor, not later than 30 days after effective date thereof, any contract or evidence of other arrangement for sale or disposal of production. At such times and in such form as lessor may prescribe, lessee shall furnish detailed statements showing amounts and quality of all products removed and sold, proceeds therefrom, and amount used for production purposes or unavoidably lost. Lessee may be required to provide plats and schematic diagrams showing development work and improvements, and reports with respect to parties in interest, expenditures, and depreciation costs. In the form prescribed by lessor, lessee shall keep a daily drilling record, a log, information on well surveys and tests, and a record of subsurface investigations and furnish copies to lessor when required. Lessee shall keep open at all reasonable times for inspection by any authorized officer of lessor, the leased premises and all wells, improvements, machinery, and fixtures thereon, and all books, accounts, maps, and records relative to operations, surveys, or investigations on or in the leased lands. Lessee shall maintain copies of all contracts, sales agreements, accounting records, and documentation such as billings, invoices, or similar documentation that support costs claimed as manufacturing, preparation, and/or transportation costs. All such records shall be maintained in lessee's accounting office for future audit by lessor. Lessee shall maintain required records for 6 years after they are generated or, if an audit or investigation is underway, until released of the obligation to maintain such records by lessor.

During existence of this lease, information obtained under this section shall be closed to inspection by the public in accordance with the Freedom of Information Act (5 U.S.C. 552)

Sec. 6. Conduct of operations - Lessee shall conduct operations in a manner that minimizes adverse impacts to the land, air, and water, to cultural, biological, visual, and other resources, and to other land uses or users. Lessee shall take reasonable measures deemed necessary by lessor to accomplish the intent of this section. To the extent consistent with lease rights granted, such measures may include, but are not limited to, modification to siting or design of facilities, timing of operations, and specification of interim and final reclamation measures. Lessor reserves the right to continue existing uses and to authorize future uses upon or in the leased lands, including the approval of easements or rights-of-way. Such uses shall be conditioned so as to prevent unnecessary or unreasonable interference with the rights of lessee.

Prior to disturbing the surface of the leased lands, lessee shall contact lessor to be apprised of procedures to be followed and modifications or reclamation measures that may be necessary. Areas to be disturbed may require inventories or special studies to determine the extent of impacts to other resources. Lessee may be required to complete minor inventories or short term special studies under guidelines provided by lessor. If, in the conduct of operations, threatened or endangered species, objects of historic or scientific interest, or substantial unanticipated environmental effects are observed, lessee shall immediately contact lessor. Lessee shall cease any operations that would result in the destruction of such species or objects.

Sec. 7. Mining operations - To the extent that impacts from mining operations would be substantially different or greater than those associated with normal drilling operations, lessor reserves the right to deny approval of such operations.

Sec. 8. Extraction of helium - Lessor reserves the option of extracting or having extracted helium from gas production in a manner specified and by means provided by lessor at no expense or loss to lessee or owner of the gas. Lessee shall include in any contract of sale of gas the provision of this section.

Sec. 9. Damages to property - Lessee shall pay lessor for damage to lessor's improvements, and shall save and hold lessor harmless from all claims for damage or harm to persons or property as a result of lease operations.

Form AK 3130-1 (November 2008)

**Exhibit 7, Page 109 of 137**

**AR400104**

Sec. 10. Protection of diverse interests and equal opportunity – Lessee shall pay when due, all taxes legally assessed and levied under laws of the State or the United States; accord all employees complete freedom of purchase, pay all wages at least twice each month in lawful money of the United States; maintain a safe working environment in accordance with standard industry practices; and take measures necessary to protect the health and safety of the public.

Lessee reserves the right to ensure that production is sold at reasonable prices and to prevent monopoly. If lessee operates a pipeline, or owns controlling interest in a pipeline or a company operating a pipeline, which may be operated accessible to oil derived from these leased lands, lessee shall comply with section 28 of the Mineral Leasing Act of 1920.

Lessee shall comply with Executive Order No. 11246 of September 24, 1965, as amended, and regulations and relevant orders of the Secretary of Labor issued pursuant thereto. Neither lessee nor lessee's subcontractors shall maintain segregated facilities. During the performance of this lease, the lessee must comply fully with paragraphs (1) through (7) of 41 CFR 60-1.4(a) with respect to employment discrimination on the basis of race, color, religion, sex, or national origin, and must incorporate the requirements set forth in those paragraphs in every subcontract or purchase order, as provided by that regulation.

Sec. 11. Transfer of lease interests and relinquishment of lease – As required by regulations, lessee shall file with lessor any assignment or other transfer of an interest in this lease. Lessee may relinquish this lease or any legal subdivision by filing in the proper office, a written relinquishment, which shall be effective as of the date of filing, subject to the continued obligation of the lessee and surety to pay all accrued rentals and royalties.

Sec. 12. Delivery of premises – At such time as all or portions of this lease are returned to lessor, lessee shall place affected wells in condition for suspension or abandonment, reclaim the land as specified by lessor, and within a reasonable period of time, remove equipment and improvements not deemed necessary by lessor for preservation of producible wells.

Sec. 13. Proceedings in case of default – If lessee fails to comply with any provisions of this lease, and the noncompliance continues for 30 days after written notice thereof, this lease shall be subject to cancellation unless or until the leasehold contains;
   (a)  a well capable of production of oil and gas in paying quantities, or
   (b)  meets criteria under 43 CFR 3135.1-5, or

The lease is committed to an approved cooperative or unit plan or communitization agreement which;
   (a)  contains a well capable of production of unitized substances in paying quantities, or
   (b)  meets the criteria under 43 CFR 3137.70 and 43 CFR 3137.82

This provision shall not be construed to prevent the exercise by lessor of any other legal and equitable remedy, including waiver of the default. As such, remedy or waiver shall prevent later cancellation of the same default occurring at any other time. Lessee shall be subject to applicable provisions and penalties of FOGRMA (30 U.S.C. 1701).

Sec. 14. Heirs and successors in interest – Each obligation of this lease shall extend to and be binding upon and every benefit hereof shall inure to: the heirs, executors, administrators, successors, beneficiaries, or assignees of the respective parties hereto.

---

## INSTRUCTIONS

A. General

1. The front of this form is to be completed only by parties filing for a noncompetitive lease. The BLM will complete front of the form for all other types of leases.

2. Entries must be typed or printed plainly in ink. Offeror must sign Item 4 in ink.

3. An original and two copies of this offer must be prepared and filed in the proper BLM State Office. See regulations at 43 CFR 1821.2-1 for office locations.

4. If more space is needed, additional sheets must be attached to each copy of the form submitted.

B. Special:

Item 1 - Enter offeror's name and billing address.

Item 2 - A single tract number and Sale Date shall be the only acceptable description.

Item 3 - This space will be completed by the United States.

**PAPERWORK REDUCTION ACT STATEMENT**

The Paperwork Reduction Act of 1990 (44 U.S.C. 3501 et seq.) requires us to inform you that:

1. This information is being collected pursuant to the law.

2. This information will be used to create and maintain a record of oil and gas lease activity.

3. Response to this request is required to obtain a benefit.

**EFFECT OF NOT PROVIDING INFORMATION - If you do not provide all the information, the offer may be rejected. See regulations at 43 CFR Part 3130.**

2008 DEC 11 PM 3: 05
BLM AK SO 952
ANCHORAGE, AK

AR400105

# UNITED STATES
## DEPARTMENT OF THE INTERIOR
## BUREAU OF LAND MANAGEMENT
## ALASKA STATE OFFICE
# OFFER TO LEASE AND LEASE FOR OIL AND GAS

Serial No.

AA-092672

The undersigned (reverse) offers to lease all or any of the lands in Item 2 that are available for lease pursuant to the Mineral Leasing Act of 1920, as amended and supplemented (30 U.S.C. 181 et seq.), the Mineral Leasing Act for Acquired Lands of 1947, as amended (30 U.S.C. 351-359), the Attorney General's Opinion of April 2, 1941 (40 Op. Atty. Gen. 41), or the Naval Petroleum Reserve Production Act of 1976 (42 U.S.C. 6501 et seq.), as amended.

**READ INSTRUCTIONS BEFORE COMPLETING**

| 1. Name | ConocoPhillips Alaska, Inc. |
|---|---|
| Street | P.O. Box 100360 |
| City, State, Zip Code | Anchorage, Alaska 99510-0360 |

2. This application/offer/lease is for Public Domain Lands in the National Petroleum Reserve - Alaska (NPR-A)

Legal description of land requested:  *Tract No. _2010-H-014_  * Sale Date (m/d/y): _Aug_ / _11_ / _2010_

| T. | R. | Meridian | State | County |
|---|---|---|---|---|
| T. 8 N. | R. 1 E. | Umiat Meridian | Alaska | |

Sections 4-9, 16-18.

All Stipulations, Area-Specific Lease Stipulations and Required Operating Procedures: K-1(g), and Non-discretionary Terms and Conditions 1A thru 3A, 5A.

| Amount remitted: Filing fee $_____ | Rental fee $27,915.00 | Total acres applied for 5,583 Total $_____ |
|---|---|---|

**DO NOT WRITE BELOW THIS LINE**

3. Land included in lease:

| T. | R. | Meridian | State | County |
|---|---|---|---|---|
| T. 8 N. | R. 1 E. | Umiat Meridian | Alaska | |

Sections 4-9, 16-18.

All Stipulations, Area-Specific Lease Stipulations and Required Operating Procedures: K-1(g), and Non-discretionary Terms and Conditions 1A thru 3A, 5A.

2010 OCT 28 PM 3: 26
BLM AK SO 954
ANCHORAGE, AK

Total acres in lease 5,583

Rental retained $27,915.00

This lease is issued granting the exclusive right to drill for, mine, extract, remove and dispose of all the oil and gas (except helium) in the lands described in Item 3 together with the right to build and maintain necessary improvements thereupon for the term indicated below, subject to renewal or extension in accordance with the appropriate leasing authority. Rights granted are subject to applicable laws, the terms, conditions, and attached stipulations of this lease, the Secretary of the Interior's regulations and formal orders in effect as of lease issuance, and to regulations and formal orders hereafter promulgated when not inconsistent with lease rights granted or specific provision of this lease.

NOTE: This lease is issued to the high bidder pursuant to his/her duly executed bid or nomination form submitted under 43 CFR Part 3130 and is subject to the provisions of that bid or nomination and those specified on this form.

Type and primary term of lease:

**THE UNITED STATES OF AMERICA**

[  ] Noncompetitive lease (ten years)

[  ] Competitive lease (ten years)

[ X ] Other Competitive NPR-A Lease (ten years)

by _(signature)_  (Signing Officer)  11/1/10

Branch Chief, Energy and Minerals (Title)  (Date)

NOV 01 2010

EFFECTIVE DATE OF LEASE _____

Form AK 3130-1 (November 2008)

4. (a) Undersigned certifies that (1) offeror is a citizen of ... ted States; an association of such citizens; a municipality; or a corp.......a organized under the laws of the United States or of any State or Territory thereof; (2) all parties holding an interest in the offer are in compliance with 43 CFR Part 3132.1 and the leasing authorities; (3) offeror is not considered a minor under the laws of the State in which the lands covered by this offer are located.

(b) Undersigned agrees that signature to this offer constitutes acceptance of this lease, including all terms, conditions, and stipulations of which offeror has been given notice, and any amendment or separate lease that may include any land described in this offer open to leasing at the time this offer was filed but omitted for any reason from this lease. The offeror further agrees that this offer cannot be withdrawn, either in whole or in part.

This offer will be rejected and will afford offeror no priority if it is not properly completed and executed in accordance with the regulations, or if it is not accompanied by the required payments. 18 U.S.C. Sec. 1001 makes it a crime for any person knowingly and willfully to make to any Department or agency of the United States any false, fictitious or fraudulent statements or representations as to any matter within its jurisdiction.

## NOTICE

The Privacy Act of 1974 and the regulations at 43 CFR 2.48(d) provide that you be furnished with the following information:

**AUTHORITY:** 50 Stat. 900; 25 U.S.C. 500

**PRINCIPAL PURPOSE:** The primary uses of the records are (1) to determine your qualification to receive an oil and gas lease; and (2) to provide information concerning oil and gas leases for administrative and public use.

**ROUTINE USES:** BLM and the Department of the Interior (DOI) may disclose your information on this form: (1) to members of the public who have a need for the information that is maintained by BLM for public record; (2) to the U.S. Department of Justice, court, or other adjudicative body when DOI determines the information is necessary and relevant to litigation; (3) to appropriate Federal, State, local or foreign agencies responsible for investigating, prosecuting violations, enforcing or implementing this statute, regulation, or lease; and (4) to a congressional office when you request the assistance of the Member of Congress in writing.

**EFFECT OF NOT PROVIDING THIS INFORMATION:** If you do not furnish all the information required by this form, your application may be rejected.

Duly executed this **28th** day of **OCTOBER** , 20 **10** .

(Signature of Lessee or Attorney-in-fact)

## LEASE TERMS

Sec. 1. Rentals - Rentals must be paid to the proper office of lessor in advance of each lease year. Annual rental rates per acre or fraction thereof are:

(a) Noncompetitive lease, $1.50 for the first 5 years; thereafter $2.00
(b) Competitive lease, $1.50, for the first 5 year; thereafter $2.00
(c) Other, see attachment; or for NPR-A: $5.00 for Area H; $3.00 for Area L; or
as specified in the detailed statement of sale

If this lease or a portion thereof is committed to an approved cooperative or unit plan which includes a well capable of producing leased resources, or a well that meets criteria in 43 CFR 3137.82 and the plan contains a provision for allocation of production, royalties shall be paid on the production allocated to this lease. However, annual rentals shall continue to be due at the rate specified in (a), (b), or (c) for those lands not within a participating area.

Failure to pay annual rent, within 30 days after receipt of a Notice of Delinquency shall cause this lease to terminate. Rentals may be waived, reduced, or suspended by the Secretary upon a sufficient showing by lessee.

Sec. 2. Royalties – Royalties shall be paid to the proper office of lessor. Royalties shall be computed in accordance with regulations on production removed or sold. Royalty rates are:

(a) Noncompetitive lease, 12½%;
(b) Competitive lease, 12½%;
(c) Other, see attachment; or for NPR-A: 16 2/3% for Area H; 12½% for Area L; or
as specified in the detailed statement of sale.

Lessor reserves the right to specify whether royalty is to be paid in value or in kind, and the right to establish reasonable minimum values on products after giving lessee notice and an opportunity to be heard. When paid in value, royalties shall be due and payable on the last day of the month following the month in which production occurred. When paid in kind, production shall be delivered, unless otherwise agreed to by lessor, in merchantable condition on the premises where produced without cost to lessor. Lessee shall not be required to hold such production in storage beyond the last day of the month following the month in which production occurred, nor shall lessee be held liable for loss or destruction of royalty oil or other products in storage from causes beyond the reasonable control of the lessee.

Minimum royalty in lieu of rental of not less than the rental which otherwise would be required for that lease year shall be payable at the end of each lease year beginning on or after a discovery in paying quantities. This minimum royalty may be waived, suspended, or reduced and the above royalty rates may be reduced, for all or portions of the lease if the Secretary determines that such action is necessary to encourage the greatest ultimate recovery of the leased resources, or is otherwise justified.

An interest charge shall be assessed on the late royalty payments or underpayments in accordance with the Federal Oil and Gas Royalty Management Act of 1982 (FOGRMA) (30 U.S.C. 1701). Lessee shall be liable for royalty payments on oil and gas lost or wasted from a lease site when such loss or waste is due to negligence on the part of the operator, or due to the failure to comply with any rules, regulations, orders, or citations issued under FOGRMA or the leasing authority.

Sec. 3. Bonds – A bond shall be filed and maintained for lease operations as required under regulations.

Sec. 4. Diligence, rate of development, unitization, and drainage – Lessee must exercise reasonable diligence in developing and producing, and must prevent unnecessary damage to, loss of, or waste of leased resources. Lessor reserves the right to specify rates of development and production in the public interest and to require lessee to subscribe to a cooperative or unit plan, within 30 days of notice, if deemed necessary for proper development and operation of area, field, or pool embracing these leased lands. Lessee shall drill and produce wells necessary to protect leased lands from drainage or pay compensatory royalty for drainage in amount determined by lessor.

Sec. 5. Documents, evidence, and inspection – Lessee shall file with the proper office of lessor, not later than 30 days after effective date thereof, any contract or evidence of other arrangement for sale or disposal of production. At such times and in such form as lessor may prescribe, lessee shall furnish detailed statements showing amounts and quality of all products removed and sold, proceeds therefrom, and amount used for production purposes or unavoidably lost. Lessee may be required to provide plats and schematic diagrams showing development work and improvements, and reports with respect to parties in interest, expenditures, and depreciation costs. In the form prescribed by lessor, lessee shall keep a daily drilling record, a log, information on well surveys and tests, and a record of subsurface investigations and furnish copies to lessor when required. Lessee shall keep open at all reasonable times for inspection by any authorized officer of lessor, the leased premises and all wells, improvements, machinery, and fixtures thereon, and all books, accounts, maps, and records relative to operations, surveys, or investigations on or in the leased lands. Lessee shall maintain copies of all contracts, sales agreements, accounting records, and documentation such as billings, invoices, or similar documentation that support costs claimed as manufacturing, preparation, and/or transportation costs. All such records shall be maintained in lessee's accounting office for future audit by lessor. Lessee shall maintain required records for 6 years after they are generated, or if an audit or investigation is underway, until released of the obligation to maintain such records by lessor.

During existence of this lease, information obtained under this section shall be closed to inspection by the public in accordance with the Freedom of Information Act (5 U.S.C. 552)

Sec. 6. Conduct of operations – Lessee shall conduct operations in a manner that minimizes adverse impacts to the land, air, and water, to cultural, biological, visual, and other resources, and to other land uses or users. Lessee shall take reasonable measures deemed necessary by lessor to accomplish the intent of this section. To the extent consistent with lease rights granted, such measures may include, but are not limited to, modification to siting or design of facilities, timing of operations, and specification of interim and final reclamation measures. Lessor reserves the right to continue existing uses and to authorize future uses upon or in the leased lands, including the approval of easements or rights-of-way. Such uses shall be conditioned so as to prevent unnecessary or unreasonable interference with the rights of lessee.

Prior to disturbing the surface of the leased lands, lessee shall contact lessor to be apprised of procedures to be followed and modifications or reclamation measures that may be necessary. Areas to be disturbed may require inventories or special studies to determine the extent of impacts to other resources. Lessee may be required to complete minor inventories or short term special studies under guidelines provided by lessor. If, in the conduct of operations, threatened or endangered species, objects of historic or scientific interest, or substantial unanticipated environmental effects are observed, lessee shall immediately contact lessor. Lessee shall cease any operations that would result in the destruction of such species or objects.

Sec. 7. Mining operations – To the extent that impacts from mining operations would be substantially different or greater than those associated with normal drilling operations, lessor reserves the right to deny approval of such operations.

Sec. 8. Extraction of helium – Lessor reserves the option of extracting or having extracted helium from gas production in a manner specified and by means provided by lessor at no expense or loss to lessor or owner of the gas. Lessee shall include in any contract of sale of gas the provision of this section.

Sec. 9. Damages to property – Lessee shall pay lessor for damage to lessee's improvements, and shall save and hold lessor harmless from all claims for damage or harm to persons or property as a result of lease operations.

Form AK 3130-I (November 2008)

**Exhibit 7, Page 112 of 137**

AR400107

Sec. 10. Protection of diverse interests and equal opportunity - Lessee shall pay when due, all taxes legally assessed and levied under laws of the State or the United States; accord all measures complete freedom of purchase; pay all wages at least twice each month in lawful money of the United States; maintain a safe working environment in accordance with standard industry practices; and take measures necessary to protect the health and safety of the public.

Lessee reserves the right to ensure that production is sold at reasonable prices and to prevent monopoly. If lessee operates a pipeline, or owns controlling interest in a pipeline or a company operating a pipeline, which may be operated accessible to oil derived from these leased lands, lessee shall comply with section 28 of the Mineral Leasing Act of 1920.

Lessee shall comply with Executive Order No. 11246 of September 24, 1965, as amended, and regulations and relevant orders of the Secretary of Labor issued pursuant thereto. Neither lessee nor lessee's subcontractors shall maintain segregated facilities. During the performance of this lease, the lessee must comply fully with paragraphs (1) through (7) of 41 CFR 60-1.4(a) with respect to employment discrimination on the basis of race, color, religion, sex, or national origin, and must incorporate the requirements set forth in those paragraphs in every subcontract or purchase order, as provided by that regulation.

Sec. 11. Transfer of lease interests and relinquishment of lease - As required by regulations, lessee shall file with lessor any assignment or other transfer of an interest in this lease. Lessee may relinquish this lease or any legal subdivision by filing in the proper office, a written relinquishment, which shall be effective as of the date of filing, subject to the continued obligation of the lessee and surety to pay all accrued rentals and royalties.

Sec. 12. Delivery of premises - At such time as all or portions of this lease are returned to lessor, lessee shall place affected wells in condition for suspension or abandonment, reclaim the land as specified by lessor, and within a reasonable period of time, remove equipment and improvements not deemed necessary by lessor for preservation of producible wells.

Sec. 13. Proceedings in case of default - If lessee fails to comply with any provisions of this lease, and the noncompliance continues for 30 days after written notice thereof, this lease shall be subject to cancellation unless or until the leasehold contains;

    (a)  a well capable of production of oil and gas in paying quantities or
    (b)  meets criteria under 43 CFR 3135.1-5 or

The lease is committed to an approved cooperative or unit plan or communitization agreement which;
    (a)  contains a well capable of production of unitized substances in paying quantities or
    (b)  meets the criteria under 43 CFR 3137.70 and 43 CFR 3137.82

This provision shall not be construed to prevent the exercise by lessor of any other legal and equitable remedy, including waiver of the default. As such, remedy or waiver shall prevent later cancellation of the same default occurring at any other time. Lessee shall be subject to applicable provisions and penalties of FOGRMA (30 U.S.C. 1701).

Sec. 14. Heirs and successors-in-interest - Each obligation of this lease shall extend to and be binding upon and every benefit hereof shall inure to the heirs, executors, administrators, successors, beneficiaries, or assignees of the respective parties hereto.

2010 OCT 28  PM 3: 56

BLM AK SO 954
ANCHORAGE, AK

---

## INSTRUCTIONS

### A. General

1. The front of this form is to be completed only by parties filing for a noncompetitive lease. The BLM will complete front of the form for all other types of leases.

2. Entries must be typed or printed plainly in ink. Offeror must sign Item 4 in ink.

3. An original and two copies of this offer must be prepared and filed in the proper BLM State Office. See regulations at 43 CFR 1821.2-1 for office locations.

4. If more space is needed, additional sheets must be attached to each copy of the form submitted.

### B. Special:

Item 1 - Enter offeror's name and billing address.

Item 2 - A single tract number and Sale Date shall be the only acceptable description.

Item 3 - This space will be completed by the United States.

### PAPERWORK REDUCTION ACT STATEMENT

The Paperwork Reduction Act of 1990 (44 U.S.C. 3501 et seq.) requires us to inform you that:

1. This information is being collected pursuant to the law.

2. This information will be used to create and maintain a record of oil and gas lease activity.

3. Response to this request is required to obtain a benefit.

**EFFECT OF NOT PROVIDING INFORMATION - If you do not provide all the information, the offer may be rejected. See regulations at 43 CFR Part 3130.**

Form AK 3130-1 (November 2008)

**Exhibit 7, Page 113 of 137**

**AR400108**

NITED STATES
DEPA1      NT OF THE INTERIOR
**BUREAU OF LAND MANAGEMENT**
**ALASKA STATE OFFICE**
**OFFER TO LEASE AND LEASE FOR OIL AND GAS**

| Serial No. |
| --- |
| AA-092673 |

The undersigned (reverse) offers to lease all or any of the lands in Item 2 that are available for lease pursuant to the Mineral Leasing Act of 1920, as amended and supplemented (30 U.S.C. 181 et seq.), the Mineral Leasing Act for Acquired Lands of 1947, as amended (30 U.S.C. 351-359), the Attorney General's Opinion of April 2, 1941 (40 Op. Atty. Gen. 41), or the Naval Petroleum Reserve Production Act of 1976 (42 U.S.C. 6501 et seq.), as amended.

**READ INSTRUCTIONS BEFORE COMPLETING**

1. Name              ConocoPhillips Alaska, Inc.

   Street            P.O. Box 100360

   City, State, Zip Code     Anchorage, Alaska 99510-0360

2. This application/offer/lease is for Public Domain Lands in the National Petroleum Reserve - Alaska (NPR-A)

Legal description of land requested:          *Tract No:  2010-H-037          * Sale Date (m/d/y): Aug  /  11  /  2010

| T. | R. | Meridian | State | County |
| --- | --- | --- | --- | --- |
| T. 9 N. | R. 1 W. | Umiat Meridian | Alaska | |

Sections 4-9, 16-18.

All Stipulations, Area-Specific Lease Stipulations and Required Operating Procedures: K-1(f), and Non-discretionary Terms and Conditions 1A thru 3A, 5A.

Amount remitted: Filing fee $_____          Rental fee $28,625.00

Total acres applied for  5,725
Total $_____

**DO NOT WRITE BELOW THIS LINE**

3. Land included in lease:

| T. | R. | Meridian | State | County |
| --- | --- | --- | --- | --- |
| T. 9 N. | R. 1 W. | Umiat Meridian | Alaska | |

Sections 4-9, 16-18.

All Stipulations, Area-Specific Lease Stipulations and Required Operating Procedures: K-1(f), and Non-discretionary Terms and Conditions 1A thru 3A, 5A.

2010 OCT 28  PH 3: 56   BLM AK SO 954  ANCHORAGE, AK

Total acres in lease 5725
Rental retained $28,625.00

This lease is issued granting the exclusive right to drill for, mine, extract, remove and dispose of all the oil and gas (except helium) in the lands described in Item 3 together with the right to build and maintain necessary improvements thereupon for the term indicated below, subject to renewal or extension in accordance with the appropriate leasing authority. Rights granted are subject to applicable laws, the terms, conditions, and attached stipulations of this lease, the Secretary of the Interior's regulations and formal orders in effect as of lease issuance, and to regulations and formal orders hereafter promulgated when not inconsistent with lease rights granted or specific provision of this lease.

NOTE: This lease is issued to the high bidder pursuant to his/her duly executed bid or nomination form submitted under 43 CFR Part 3130 and is subject to the provisions of that bid or nomination and those specified on this form.

Type and primary term of lease.

{    } Noncompetitive lease (ten years)

{    } Competitive lease (ten years)

{ X } Other Competitive NPR-A Lease (ten years)

**THE UNITED STATES OF AMERICA**

by _Wayne M Svejy_     11/1/10

Branch Chief, Energy and Minerals     (Signing Officer)     (Date)
(Title)

EFFECTIVE DATE OF LEASE  NOV 0 1 2010

Form AK 3130-1 (November 2008)

Case 3:20-cv-00308-SLG   Document 118-4   Filed 07/16/21   Page 21 of 44

**Exhibit 7, Page 114 of 137**

Case 3:23-cv-00061-SLG   Document 24-8   Filed 03/16/23   Page 21 of 44



4  (a) Undersigned certifies that (1) offeror is a citizen of the U_____ ates, an association of such citizens, a municipality, or a corporat_____ nized under the laws of the United States of any State or Territory thereof. (2) all parties holding an interest in the offer are in compliance with 43 CFR Part 3132.1 and the leasing authorities, (3) offeror is not considered a minor under the laws of the State in which the lands covered by this offer are located

(b) Undersigned agrees that signature to this offer constitutes acceptance of this lease, including all terms, conditions, and stipulations of which offeror has been given notice, and any amendment or separate lease that may include any land described in this offer open to leasing at the time this offer was filed but omitted for any reason from this lease. The offeror further agrees that this offer cannot be withdrawn, either in whole or in part

This offer will be rejected and will afford offeror no priority if it is not properly completed and executed in accordance with the regulations, or if it is not accompanied by the required payments. 18 U.S.C. Sec. 1001 makes it a crime for any person knowingly and willfully to make to any Department or agency of the United States any false, fictitious or fraudulent statements or representations as to any matter within its jurisdiction

### NOTICE

The Privacy Act of 1974 and the regulations in 43 CFR 2.48(d) provide that you be furnished with the following information:

**AUTHORITY:** 50 Stat. 900; 25 U.S.C 500

**PRINCIPAL PURPOSE:** The primary uses of the records are (1) to determine your qualification to receive an oil and gas lease; and (2) to provide information concerning oil and gas leases for administrative and public use.

**ROUTINE USES:** BLM and the Department of the Interior (DOI) may disclose your information on this form: (1) to members of the public who have a need for the information that is maintained by BLM for public record, (2) to the U.S. Department of Justice, court, or other adjudicative body when DOI determines the information is necessary and relevant to litigation; (3) to appropriate Federal, State, local or foreign agencies responsible for investigating, prosecuting violations, enforcing or implementing this statute, regulation, or lease; and (4) to a congressional office when you request the assistance of the Member of Congress in writing.

**EFFECT OF NOT PROVIDING THIS INFORMATION:** If you do not furnish all the information required by this form, your application may be rejected.

Duly executed this ___28th___ day of ___OCTOBER___ , 20 __10__    _David W. Brown_
(Signature of Lessee or Attorney-in-fact)

### LEASE TERMS

Sec. 1 Rentals - Rentals must be paid to the proper office of lessor in advance of each lease year. Annual rental rates per acre or fraction thereof are

(a) Noncompetitive lease, $1.50 for the first 5 years, thereafter $2.00
(b) Competitive lease, $1.50, for the first 5 year, thereafter $2.00
(c) Other, see attachment, or for NPR-A $5.00 for Area H, $3.00 for Area L, or as specified in the detailed statement of sale

If this lease or a portion thereof is committed to an approved cooperative or unit plan which includes a well capable of producing leased resources, or a well that meets criteria in 43 CFR 3137.82 and the plan contains a provision for allocation of production, royalties shall be paid on the production allocated to this lease. However, annual rentals shall continue to be due at the rate specified in (a), (b), or (c) for those lands not within a participating area.

Failure to pay annual rent, within 30 days after receipt of a Notice of Delinquency shall cause this lease to terminate. Rentals may be waived, reduced, or suspended by the Secretary upon a sufficient showing by lessee.

Sec. 2 Royalties – Royalties shall be paid to the proper office of lessor. Royalties shall be computed in accordance with regulations on production removed or sold. Royalty rates are:

(a) Noncompetitive lease, 12 1/2%
(b) Competitive lease, 12 1/2%
(c) Other, see attachment, or for NPR-A, 16 2/3% for Area H, 12 1/2% for Area L, or as specified in the detailed statement of sale

Lessor reserves the right to specify whether royalty is to be paid in value or in kind, and the right to establish reasonable minimum values on products after giving lessee notice and an opportunity to be heard. When paid in value, royalties shall be due and payable on the last day of the month following the month in which production occurred. When paid in kind, production shall be delivered unless otherwise agreed to by lessor, in merchantable condition on the premises where produced without cost to lessor. Lessee shall not be required to hold such production in storage beyond the last day of the month following the month in which production occurred, nor shall lessee be held liable for loss or destruction of royalty oil or other products in storage from causes beyond the reasonable control of the lessee.

Minimum royalty in lieu of rental of not less than the rental which otherwise would be required for that lease year shall be payable at the end of each lease year beginning on or after a discovery in paying quantities. This minimum royalty may be waived, suspended, or reduced and the above royalty rates may be reduced, for all or portions of the lease, if the Secretary determines that such action is necessary to encourage the greatest ultimate recovery of the leased resources, or is otherwise justified.

An interest charge shall be assessed on the late royalty payments or underpayments in accordance with the Federal Oil and Gas Royalty Management Act of 1982 (FOGRMA) (30 U.S.C. 1701). Lessee shall be liable for royalty payments on oil and gas lost or wasted from a lease site when such loss or waste is due to negligence on the part of the operator, or due to the failure to comply with any rules, regulations, orders, or citations issued under FOGRMA or the leasing authority.

Sec. 3 Bonds – A bond shall be filed and maintained for lease operations as required under regulations

Sec. 4 Diligence, rate of development, unitization, and drainage – Lessee must exercise reasonable diligence in developing and producing, and must prevent unnecessary damage to, loss of, or waste of leased resources. Lessor reserves the right to specify rates of development and production in the public interest and to require lessee to subscribe to a cooperative or unit plan, within 30 days of notice, if deemed necessary for proper development and operation of area, field, or pool embracing these leased lands. Lessee shall drill and produce wells necessary to protect leased lands from drainage or pay compensatory royalty for drainage in amount determined by lessor.

Sec. 5 Documents, evidence, and inspection – Lessee shall file with the proper office of lessor, not later than 30 days after effective date thereof, any contract or evidence of other arrangement for sale or disposal of production. At such times and at such terms as lessor may prescribe, lessee shall furnish detailed statements showing amounts and quality of all products removed and sold, proceeds therefrom, and amount used for production purposes or unavoidably lost. Lessee may be required to provide plats and schematic diagrams showing development work and improvements, and reports with respect to parties in interest, expenditures, and depreciation costs. In the form prescribed by lessor, lessee shall keep a daily drilling record, a log, information on well surveys and tests, and a record of subsurface investigations, and furnish copies to lessor when required. Lessee shall keep open to all reasonable times for inspection by any authorized officer of lessor, the leased premises and all wells, improvements, machinery, and fixtures thereon, and all books, accounts, maps, and records relative to operations, surveys, or investigations on or in the leased lands. Lessee shall maintain copies of all contracts, sales agreements, accounting records, and documentation such as billings, invoices, or similar documentation that support costs claimed as manufacturing, preparation, and/or transportation costs. All such records shall be maintained in lessee's accounting office for future audit by lessor. Lessee shall maintain required records for 6 years after they are generated or, if an audit or investigation is underway, until released of the obligation to maintain such records by lessor.

During pendency of this lease, information obtained under this section shall be closed to inspection by the public in accordance with the Freedom of Information Act (5 U.S.C. 552).

Sec. 6 Conduct of operations – Lessee shall conduct operations in a manner that minimizes adverse impacts to the land, air, and water, to cultural, biological, visual, and other resources, and to other land uses or users. Lessee shall take reasonable measures deemed necessary by lessor to accomplish the intent of this section. To the extent consistent with lease rights granted, such measures may include, but are not limited to, modification to siting or design of facilities, timing of operations, and specification of interim and final reclamation measures. Lessor reserves the right to continue existing uses and to authorize future uses upon or in the leased lands, including the approval of easements or rights-of-way. Such uses shall be conditioned so as to prevent unnecessary or unreasonable interference with the rights of lessee.

Prior to disturbing the surface of the leased lands, lessee shall contact lessor to be apprised of procedures to be followed and modifications or reclamation measures that may be necessary. Areas to be disturbed may require inventories or special studies to determine the extent of impacts to other resources. Lessee may be required to complete minor inventories or short term special studies under guidance provided by lessor. If, in the conduct of operations, threatened or endangered species, objects of historic or scientific interest, or substantial unanticipated environmental effects are observed, lessee shall immediately contact lessor. Lessee shall cease any operations that would result in the destruction of such species or objects.

Sec. 7 Mining operations – To the extent that impacts from mining operations would be substantially different or greater than those associated with normal drilling operations, lessor reserves the right to deny approval of such operations.

Sec. 8 Extraction of helium – Lessor reserves the option of extracting or having extracted helium from gas production in a manner specified and by means provided by lessee at no expense or loss to lessee or owner of the gas. Lessee shall include in any contract of sale of gas the provision of this section.

Sec. 9 Damages to property – Lessee shall pay lessor for damage to lessee's improvements, and shall save and hold lessor harmless from all claims for damage or harm to persons or property as a result of lease operations

Form AK 3130-1 (November 2008)

Sec. 10. Protection of diverse interests and equal opportunity – Lessee shall pay ___ ue, all taxes legally assessed and levied under laws of the State or the United States; accord all employees complete freedom of purchase; pay all wages at least twice each month in lawful money of the United States; maintain a safe working environment in accordance with standard industry practices; and take measures necessary to protect the health and safety of the public.

Lessee reserves the right to ensure that production is sold at reasonable prices and to prevent monopoly. If lessee operates a pipeline, or owns controlling interest in a pipeline or a company operating a pipeline, which may be operated accessible to oil derived from these leased lands, lessee shall comply with section 28 of the Mineral Leasing Act of 1920.

Lessee shall comply with Executive Order No. 11246 of September 24, 1965, as amended, and regulations and relevant orders of the Secretary of Labor issued pursuant thereto. Neither lessee nor lessee's subcontractors shall maintain segregated facilities. During the performance of this lease, the lessee must comply fully with paragraphs (1) through (7) of 41 CFR 60-1.4(a) with respect to employment discrimination on the basis of race, color, religion, sex, or national origin, and must incorporate the requirements set forth in those paragraphs in every subcontract or purchase order, as provided by that regulation.

Sec. 11. Transfer of lease interests and relinquishment of lease – As required by regulations, lessee shall file with lessor any assignment or other transfer of an interest in this lease. Lessee may relinquish this lease or any legal subdivision by filing in the proper office, a written relinquishment, which shall be effective as of the date of filing, subject to the continued obligation of the lessee and surety to pay all accrued rentals and royalties.

Sec. 12. Delivery of premises – At such time as all or portions of this lease are returned to lessor, lessee shall place affected wells in condition for suspension or abandonment, reclaim the land as specified by lessor, and, within a reasonable period of time, remove equipment and improvements not deemed necessary by lessor for preservation of producible wells.

Sec. 13. Proceedings in case of ___ – If lessee fails to comply with any provisions of this lease, and the noncompliance continues for 30 days after written notice thereof, this lease shall be subject to cancellation unless or until the leasehold contains:
   (a)  a well capable of production of oil and gas in paying quantities or
   (b)  meets criteria under 43 CFR 3135.1-5 or
The lease is committed to an approved cooperative or unit plan or communitization agreement which;
   (a)  contains a well capable of production of unitized substances in paying quantities or
   (b)  meets the criteria under 43 CFR 3137.70 and 43 CFR 3137.82.
This provision shall not be construed to prevent the exercise by lessor of any other legal and equitable remedy, including waiver of the default. As such, remedy or waiver shall prevent later cancellation of the same default occurring at any other time. Lessee shall be subject to applicable provisions and penalties of FOGRMA (30 U.S.C. 1701).

Sec. 14. Heirs and successors-in-interest – Each obligation of this lease shall extend to and be binding upon and every benefit hereof shall inure to: the heirs, executors, administrators, successors, beneficiaries, or assignees of the respective parties hereto.

2010 OCT 28 PM 3: 56
BLM AK SO 934
ANCHORAGE, AK

---

## INSTRUCTIONS

A. General

1. The front of this form is to be completed only by parties filing for a noncompetitive lease. The BLM will complete front of the form for all other types of leases.

2. Entries must be typed or printed plainly in ink. Offeror must sign Item 4 in ink.

3. An original and two copies of this offer must be prepared and filed in the proper BLM State Office. See regulations at 43 CFR 1821.2-1 for office locations.

4. If more space is needed, additional sheets must be attached to each copy of the form submitted.

B. Special:

Item 1 - Enter offeror's name and billing address.

Item 2 - A single tract number and Sale Date shall be the only acceptable description.

Item 3 - This space will be completed by the United States.


**PAPERWORK REDUCTION ACT STATEMENT**

The Paperwork Reduction Act of 1990 (44 U.S.C. 3501 et seq.) requires us to inform you that:

1. This information is being collected pursuant to the law.

2. This information will be used to create and maintain a record of oil and gas lease activity.

3. Response to this request is required to obtain a benefit.

**EFFECT OF NOT PROVIDING INFORMATION - If you do not provide all the information, the offer may be rejected. See regulations at 43 CFR Part 3130.**

Form AK 3130-1 (November 2008)

**AR400111**

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF LAND MANAGEMENT
ALASKA STATE OFFICE
## OFFER TO LEASE AND LEASE FOR OIL AND GAS

Serial No.

AA-092674

The undersigned (reverse) offers to lease all or any of the lands in Item 2 that are available for lease pursuant to the Mineral Leasing Act of 1920, as amended and supplemented (30 U.S.C. 181 et seq.), the Mineral Leasing Act for Acquired Lands of 1947, as amended (30 U.S.C. 351-359), the Attorney General's Opinion of April 2, 1941 (40 Op. Atty. Gen. 41), or the Naval Petroleum Reserve Production Act of 1976 (42 U.S.C. 6501 et seq.), as amended.

**READ INSTRUCTIONS BEFORE COMPLETING**

| | |
|---|---|
| 1. Name | ConocoPhillips Alaska, Inc. |
| Street | P.O. Box 100360 |
| City, State, Zip Code | Anchorage, Alaska 99510-0360 |

2. This application/offer/lease is for Public Domain Lands in the National Petroleum Reserve - Alaska (NPR-A)

Legal description of land requested:     *Tract No.: __2010-H-040__     * Sale Date (m/d/y): __Aug__ / __11__ / __2010__

| T. | R. | Meridian | State | County |
|---|---|---|---|---|
| T. 9 N. | R. 2 W. | Umiat Meridian | Alaska | |

Sections 1-3, 10-15.

All Stipulations, Area-Specific Lease Stipulations and Required Operating Procedures: K-1(f), K-2, and Non-discretionary Terms and Conditions 1A thru 3A, 5A.

Amount remitted: Filing fee $_____     Rental fee $28,800.00

Total acres applied for __5,760__
Total $_____

**DO NOT WRITE BELOW THIS LINE**

3. Land included in lease:

| T. | R. | Meridian | State | County |
|---|---|---|---|---|
| T. 9 N. | R. 2 W. | Umiat Meridian | Alaska | |

Sections 1-3, 10-15.

All Stipulations, Area-Specific Lease Stipulations and Required Operating Procedures: K-1(f), K-2, and Non-discretionary Terms and Conditions 1A thru 3A, 5A.

2010 OCT 28 PM 3: 56
BLM AK SO 954
ANCHORAGE, AK

Total acres in lease __5,760__
Rental retained $28,800.00

This lease is issued granting the exclusive right to drill for, mine, extract, remove and dispose of all the oil and gas (except helium) in the lands described in Item 3 together with the right to build and maintain necessary improvements thereupon for the term indicated below, subject to renewal or extension in accordance with the appropriate leasing authority. Rights granted are subject to applicable laws, the terms, conditions, and attached stipulations of this lease, the Secretary of the Interior's regulations and formal orders in effect as of lease issuance, and to regulations and formal orders hereafter promulgated when not inconsistent with lease rights granted or specific provision of this lease.

NOTE: This lease is issued to the high bidder pursuant to his/her duly executed bid or nomination form submitted under 43 CFR Part 3130 and is subject to the provisions of that bid or nomination and those specified on this form.

Type and primary term of lease

[   ] Noncompetitive lease (ten years)

[   ] Competitive lease (ten years)

[ X ] Other Competitive NPR-A Lease (ten years)

THE UNITED STATES OF AMERICA

by _Wayne M. Svejcara_ (Signing Officer)

Branch Chief, Energy and Minerals
(Title)

NOV 0 1 2010 (Date)

EFFECTIVE DATE OF LEASE _____

Form AK 3130-1 (November 2008)

**Exhibit 7, Page 117 of 137**

AR300112

4. (a) Undersigned certifies that (1) offeror is a citizen of the United States; an association of such citizens; a municipality; or a corporation organized under the laws of the United States or of any State or Territory thereof. (2) all parties holding an interest in the offer are in compliance with 43 CFR Part 3132.1 and the leasing authorities; (3) offeror is not considered a minor under the laws of the State in which the lands covered by this offer are located.

(b) Undersigned agrees that signature to this offer constitutes acceptance of this lease, including all terms, conditions, and stipulations of which offeror has been given notice, and any amendment or separate lease that may include any land described in this offer open to leasing at the time this offer was filed but omitted for any reason from this lease. The offeror further agrees that this offer cannot be withdrawn, either in whole or in part.

This offer will be rejected and will afford offeror no priority if it is not properly completed and executed in accordance with the regulations, or if it is not accompanied by the required payments. 18 U.S.C. Sec. 1001 makes it a crime for any person knowingly and willfully to make to any Department or agency of the United States any false, fictitious or fraudulent statements or representations as to any matter within its jurisdiction.

## NOTICE

The Privacy Act of 1974 and the regulations at 43 CFR 2-48(d) provide that you be furnished with the following information:

**AUTHORITY:** 50 Stat. 900; 25 U.S.C. 500

**PRINCIPAL PURPOSE:** The primary uses of the records are (1) to determine your qualification to receive an oil and gas lease; and (2) to provide information concerning oil and gas leases for administrative and public use.

**ROUTINE USES:** BLM and the Department of the Interior (DOI) may disclose your information on this form: (1) to members of the public who have a need for the information that is maintained by BLM for public record, (2) to the U.S. Department of Justice, court, or other adjudicative body when DOI determines the information is necessary and relevant to litigation; (3) to appropriate Federal, State, local or foreign agencies responsible for investigating, prosecuting violations, enforcing or implementing this statute, regulation, or lease; and (4) to a congressional office when you request the assistance of the Member of Congress in writing.

**EFFECT OF NOT PROVIDING THIS INFORMATION:** If you do not furnish all the information required by this form, your application may be rejected.

Duly executed this 28ᵗʰ day of OCTOBER , 20 10 .

_David W. Brown_
(Signature of Lessee or Attorney-in-fact)

## LEASE TERMS

Sec. 1. Rentals - Rentals must be paid to the proper office or lessor in advance of each lease year. Annual rental rates per acre or fraction thereof are:

    (a) Noncompetitive lease, $1.50 for the first 5 years, thereafter $2.00
    (b) Competitive lease, $1.50, for the first 5 year; thereafter $2.00
    (c) Other, see attachment, or for NPR-A, $5.00 for Area II, $3.00 for Area I; or
        as specified in the detailed statement of sale

If this lease or a portion thereof is committed to an approved cooperative or unit plan which includes a well capable of producing leased resources, or a well that meets criteria in 43 CFR 3137.82 and the plan contains a provision for allocation of production, royalties shall be paid on the production allocated to this lease. However, annual rentals shall continue to be due at the rate specified in (a), (b), or (c) for those lands not within a participating area.

Failure to pay annual rent, within 30 days after receipt of a Notice of Delinquency shall cause this lease to terminate. Rentals may be waived, reduced, or suspended by the Secretary upon a sufficient showing by lessee.

Sec. 2. Royalties - Royalties shall be paid to the proper office of lessor. Royalties shall be computed in accordance with regulations on production removed or sold. Royalty rates are:

    (a) Noncompetitive lease, 12 1/2 %;
    (b) Competitive lease, 12 1/2 %;
    (c) Other, see attachment, or for NPR-A, 16 2/3% for Area II, 12 1/2% for Area I; or
        as specified in the detailed statement of sale.

Lessor reserves the right to specify whether royalty is to be paid in value or in kind, and the right to establish reasonable minimum values on products after giving lessee notice and an opportunity to be heard. When paid in value, royalties shall be due and payable on the last day of the month following the month in which production occurred. When paid in kind, production shall be delivered, unless otherwise agreed to by lessor, in merchantable condition on the premises where produced without cost to lessor. Lessee shall not be required to hold such production in storage beyond the last day of the month following the month in which production occurred, nor shall lessee be held liable for loss or destruction of royalty oil or other products in storage from causes beyond the reasonable control of the lessee.

Minimum royalty in lieu of rental on not less than the rental which otherwise would be required for that lease year shall be payable at the end of each lease year beginning on or after a discovery in paying quantities. This minimum royalty may be waived, suspended, or reduced and the above royalty rates may be reduced, for all or portions of the lease if the Secretary determines that such action is necessary to encourage the greatest ultimate recovery of the leased resources, or is otherwise justified.

An interest charge shall be assessed on the late royalty payments or underpayments in accordance with the Federal Oil and Gas Royalty Management Act of 1982 (FOGRMA) (30 U.S.C. 1701). Lessee shall be liable for royalty payments on oil and gas loss or wasted from a lease site when such loss or waste is due to negligence on the part of the operator, or due to the failure to comply with any rules, regulations, orders, or citations issued under FOGRMA or the leasing authority.

Sec. 3. Bonds - A bond shall be filed and maintained for lease operations as required under regulations.

Sec. 4. Diligence, rate of development, unitization, and drainage – Lessee must exercise reasonable diligence in developing and producing, and must prevent unnecessary damage to, loss of, or waste of leased resources. Lessor reserves the right to specify rates of development and production in the public interest and to require lessee to subscribe to a cooperative or unit plan, within 30 days of notice, if deemed necessary for proper development and operation of area, field, or pool embracing these leased lands. Lessee shall drill and produce wells necessary to protect leased lands from drainage or pay compensatory royalty for drainage in amount determined by lessor.

Sec. 5. Documents, evidence, and inspection – Lessee shall file with the proper office or lessor, not later than 30 days after effective date thereof, any contract or evidence of other arrangement for sale or disposal of production. At such times and in such form as lessor may prescribe, lessee shall furnish detailed statements showing amounts and quality of all products removed and sold, proceeds therefrom, and amount used for production purposes or unavoidably lost. Lessee may be required to provide plats and schematic diagrams showing development work and improvements, and reports with respect to parties in interest, expenditures, and depreciation costs. In the form prescribed by lessor, lessee shall keep a daily drilling record, a log, information on well surveys and tests, and a record of subsurface investigations and furnish copies to lessor when required. Lessee shall keep open at all reasonable times for inspection by any authorized officer of lessor, the leased premises and all wells, improvements, machinery, and fixtures thereon, and all books, accounts, maps, and records relative to operations, surveys, or investigations on or in the leased lands. Lessee shall maintain copies of all contracts, sales agreements, accounting records, and documentation such as billings, invoices, or similar documentation that support costs claimed as manufacturing, preparation, and/or transportation costs. All such records shall be maintained in lessee's accounting office for future audit by lessor. Lessee shall maintain required records for 6 years after they are generated or, if an audit or investigation is underway, until released of the obligation to maintain such records by lessor.

During existence of this lease, information obtained under this section shall be closed to inspection by the public in accordance with the Freedom of Information Act (5 U.S.C. 552)

Sec. 6. Conduct of operations – Lessee shall conduct operations in a manner that minimizes adverse impacts to the land, air, and water, to cultural, biological, visual, and other resources, and to other land uses or users. Lessee shall take reasonable measures deemed necessary by lessor to accomplish the intent of this section. To the extent consistent with lease rights granted, such measures may include, but are not limited to, modification to siting or design of facilities, timing of operations, and specification of interim and final reclamation measures. Lessor reserves the right to continue existing uses and to authorize future uses upon or in the leased lands, including the approval of easements or rights-of-way. Such uses shall be conditioned so as to prevent unnecessary or unreasonable interference with the rights of lessee.

Prior to disturbing the surface of the leased lands, lessee shall contact lessor to be apprised of procedures to be followed and modifications or reclamation measures that may be necessary. Areas to be disturbed may require inventories or special studies to determine the extent of impacts to other resources. Lessee may be required to complete minor inventories or short term special studies under guidelines provided by lessor. If, in the conduct of operations, threatened or endangered species, objects of historic or scientific interest, or substantial unanticipated environmental effects are observed, lessee shall immediately contact lessor. Lessee shall cease any operations that would result in the destruction of such species or objects.

Sec. 7. Mining operations – To the extent that impacts from mining operations would be substantially different or greater than those associated with normal drilling operations, lessor reserves the right to deny approval of such operations.

Sec. 8. Extraction of helium – Lessor reserves the option of extracting or having extracted helium from gas production in a manner specified and by means provided by lessor at no expense or loss to lessee or owner of the gas. Lessee shall include in any contract of sale of gas the provision of this section.

Sec. 9. Damages to property – Lessee shall pay lessor for damage to lessor's improvements, and shall save and hold lessor harmless from all claims for damage or harm to persons or property as a result of lease operations.

Form AK 3130-1 (November 2008)

**AR400113**

Sec. 10. Protection of diverse interests and equal opportunity – Lessee shall pay when due; all taxes legally assessed and levied under laws of the State or the United States; accord all employees complete freedom of purchase; pay all wages at least twice each month in lawful money of the United States; maintain a safe working environment in accordance with standard industry practices; and take measures necessary to protect the health and safety of the public.

Lessor reserves the right to ensure that production is sold at reasonable prices and to prevent monopoly. If lessee operates a pipeline, or owns controlling interest in a pipeline or a company operating a pipeline, which may be operated accessible to oil derived from these leased lands, lessee shall comply with section 28 of the Mineral Leasing Act of 1920.

Lessee shall comply with Executive Order No. 11246 of September 24, 1965, as amended, and regulations and relevant orders of the Secretary of Labor issued pursuant thereto. Neither lessee nor lessee's subcontractors shall maintain segregated facilities. During the performance of this lease, the lessee must comply fully with paragraphs (1) through (7) of 41 CFR 60-1.4(a) with respect to employment discrimination on the basis of race, color, religion, sex, or national origin, and must incorporate the requirements set forth in these paragraphs in every subcontract or purchase order, as provided by that regulation.

Sec. 11. Transfer of lease interests and relinquishment of lease – As required by regulations, lessee shall file with lessor any assignment or other transfer of an interest in this lease. Lessee may relinquish this lease or any legal subdivision by filing in the proper office, a written relinquishment, which shall be effective as of the date of filing, subject to the continued obligation of the lessee and surety to pay all accrued rentals and royalties.

Sec. 12. Delivery of premises – At such time as all or portions of this lease are returned to lessor, lessee shall place affected wells in condition for suspension or abandonment, reclaim the land as specified by lessor, and within a reasonable period of time, remove equipment and improvements not deemed necessary by lessor for preservation of producible wells.

Sec. 13. Proceedings in case of default – If lessee fails to comply with any provisions of the lease, and the noncompliance continues for 30 days after written notice thereof, this lease shall be subject to cancellation unless or until the leasehold contains
  (a)  a well capable of production of oil and gas in paying quantities or
  (b)  meets criteria under 43 CFR 3135.1-5 or
The lease is committed to an approved cooperative or unit plan or communitization agreement which:
  (a)  contains a well capable of production of unitized substances in paying quantities or
  (b)  meets the criteria under 43 CFR 3137.70 and 43 CFR 3137.82.
This provision shall not be construed to prevent the exercise by lessor of any other legal and equitable remedy, including waiver of the default. As such, remedy or waiver shall prevent later cancellation of the same default occurring at any other time. Lessee shall be subject to applicable provisions and penalties of 1OGRMA (30 U.S.C. 17011.

Sec. 14. Heirs and successors-in-interest – Each obligation of this lease shall extend to and be binding upon and every benefit hereof shall inure to the heirs, executors, administrators, successors, beneficiaries, or assignees of the respective parties hereto.

2010 OCT 29 PM 3:56
BLM AK SO C.C.
ANCHORAGE AK

---

## INSTRUCTIONS

A. General

1. The front of this form is to be completed only by parties filing for a noncompetitive lease. The BLM will complete front of the form for all other types of leases.

2. Entries must be typed or printed plainly in ink. Offeror must sign Item 4 in ink.

3. An original and two copies of this offer must be prepared and filed in the proper BLM State Office. See regulations at 43 CFR 1821.2-1 for office locations.

4. If more space is needed, additional sheets must be attached to each copy of the form submitted.

B. Special:

Item 1 - Enter offeror's name and billing address.

Item 2 - A single tract number and Sale Date shall be the only acceptable description.

Item 3 - This space will be completed by the United States.

**PAPERWORK REDUCTION ACT STATEMENT**

The Paperwork Reduction Act of 1990 (44 U.S.C. 3501 et seq.) requires us to inform you that:

1. This information is being collected pursuant to the law.

2. This information will be used to create and maintain a record of oil and gas lease activity.

3. Response to this request is required to obtain a benefit.

**EFFECT OF NOT PROVIDING INFORMATION - If you do not provide all the information, the offer may be rejected. See regulations at 43 CFR Part 3130.**

Form AK 3130-1 (November 2008)

**AR400114**

**UNITED STATES**
**DEPARTMENT OF THE INTERIOR**
**BUREAU OF LAND MANAGEMENT**
**ALASKA STATE OFFICE**
## OFFER TO LEASE AND LEASE FOR OIL AND GAS

Serial No.

AA-093931

The undersigned (reverse) offers to lease all or any of the lands in Item 2 that are available for lease pursuant to the Mineral Leasing Act of 1920, as amended and supplemented (30 U.S.C. 181 et seq.), the Mineral Leasing Act for Acquired Lands of 1947, as amended (30 U.S.C. 351-359), the Attorney General's Opinion of April 2, 1941 (40 Op. Atty. Gen. 41), or the Naval Petroleum Reserve Production Act of 1976 (42 U.S.C. 6501 et seq.), as amended.

**READ INSTRUCTIONS BEFORE COMPLETING**

1. Name          ConocoPhillips Alaska Inc.

   Street          P.O. Box 100360

   City, State, Zip Code          Anchorage, AK 99510-0360

---

2. This application/offer/lease is for Public Domain Lands in the National Petroleum Reserve - Alaska (NPR-A)

Legal description of land requested:          *Tract No.: 2014-H-015          * Sale Date (m/d/y): Nov / 19 / 2014

| T. | R. | Meridian | State | County |
|----|----|----|----|----|
| T. 8 N. | R. 1 W. | Umiat Meridian | Alaska | |

Sections 22-27, 34-36

Stipulations: D, E, G, K
Best Management Practices

Amount remitted: Filing fee $155.00          Rental fee $28,815.00          Total acres applied for 5,763
Total $28,970.00

**DO NOT WRITE BELOW THIS LINE**

---

3. Land included in lease:

| T. | R. | Meridian | State | County |
|----|----|----|----|----|
| T. 8 N. | R. 1 W. | Umiat Meridian | Alaska | |

Sections 22-27, 34-36

Stipulations: D, E, G, K
Best Management Practices

Total acres in lease 5,763

Rental retained $28,815.00

This lease is issued granting the exclusive right to drill for, mine, extract, remove and dispose of all the oil and gas (except helium) in the lands described in Item 3 together with the right to build and maintain necessary improvements thereupon for the term indicated below, subject to renewal or extension in accordance with the appropriate leasing authority. Rights granted are subject to applicable laws, the terms, conditions, and attached stipulations of this lease, the Secretary of the Interior's regulations and formal orders in effect as of lease issuance, and to regulations and formal orders hereafter promulgated when not inconsistent with lease rights granted or specific provision of this lease.

NOTE: This lease is issued to the high bidder pursuant to his/her duly executed bid or nomination form submitted under 43 CFR Part 3130 and is subject to the provisions of that bid or nomination and those specified on this form.

Type and primary term of lease:          THE UNITED STATES OF AMERICA

[   ] Noncompetitive lease (ten years)

[   ] Competitive lease (ten years)          by _____
                                                    (Signing Officer)

[ X ] Other Competitive NPR-A Lease (ten years)          Acting for State Director          2/11/2015
                                                    (Title)          (Date)

                                                    MAR 0 1 2015
EFFECTIVE DATE OF LEASE

Form 3130-1 (November 2008)

**Exhibit 7, Page 120 of 137**

AR400115

4. (a) Undersigned certifies that (1) offeror is a citizen of the United States; an association of such citizens; a municipality; or a corporation organized under the laws of the United States or of any State or Territory thereof; (2) all parties holding an interest in the offer are in compliance with 43 CFR Part 3132.1 and the leasing authorities; (3) offeror is not considered a minor under the laws of the State in which the lands covered by this offer are located.

(b) Undersigned agrees that signature to this offer constitutes acceptance of this lease, including all terms, conditions, and stipulations of which offeror has been given notice, and any amendment or separate lease that may include any land described in this offer open to leasing at the time this offer was filed but omitted for any reason from this lease. The offeror further agrees that this offer cannot be withdrawn, either in whole or in part.

This offer will be rejected and will afford offeror no priority if it is not properly completed and executed in accordance with the regulations, or if it is not accompanied by the required payments. 18 U.S.C. Sec. 1001 makes it a crime for any person knowingly and willfully to make to any Department or agency of the United States any false, fictitious or fraudulent statements or representations as to any matter within its jurisdiction.

**NOTICE**

The Privacy Act of 1974 and the regulations at 43 CFR 2.48(d) provide that you are furnished with the following information:

**AUTHORITY:** 50 Stat. 900; 25 U.S.C. 500

**PRINCIPAL PURPOSE:** The primary uses of the records are (1) to determine your qualification to receive an oil and gas lease; and (2) to provide information concerning oil and gas leases for administrative and public use.

**ROUTINE USES:** BLM and the Department of the Interior (DOI) may disclose your information on this form: (1) to members of the public who have a need for the information that is maintained by BLM for public record; (2) to the U.S. Department of Justice, court, or other adjudicative body when DOI determines the information is necessary and relevant to litigation; (3) to appropriate Federal, State, local or foreign agencies responsible for investigating, prosecuting, enforcing or implementing this statute, regulation, or lease; and (4) to a congressional office when you request the assistance of the Member of Congress in writing.

**EFFECT OF NOT PROVIDING THIS INFORMATION:** If you do not furnish all the information required by this form, your application may be rejected.

Duly executed this ___2nd___ day of ___February___ , 20 _15_ . _____David W. Brown_____
(Signature of Lessee or Attorney-in-fact)

---

**LEASE TERMS**

Sec. 1. Rentals – Rentals must be paid to the proper office of lessor in advance of each lease year. Annual rental rates per acre or fraction thereof are:

(a) Noncompetitive lease, $1.50 for the first 5 years; thereafter $2.00
(b) Competitive lease, $1.50, for the first 5 year; thereafter $2.00
(c) Other, see attachment; or for NPR-A: $5.00 for Area H; $3.00 for Area L; or as specified in the detailed statement of sale

If this lease or a portion thereof is committed to an approved cooperative or unit plan which includes a well capable of producing leased resources, or a well that meets criteria in 43 CFR 3137.82 and the plan contains a provision for allocation of production, royalties shall be paid on the production allocated to this lease. However, annual rentals shall continue to be due at the rate specified in (a), (b), or (c) for those lands not within a participating area.

Failure to pay annual rent, within 30 days after receipt of a Notice of Delinquency shall cause this lease to terminate. Rentals may be waived, reduced, or suspended by the Secretary upon a sufficient showing by lessee.

Sec. 2. Royalties – Royalties shall be paid to the proper office of lessor. Royalties shall be computed in accordance with regulations on production removed or sold. Royalty rates are:

(a) Noncompetitive lease, 12 ½%;
(b) Competitive lease, 12 ½%;
(c) Other, see attachment; or for NPR-A: 16 2/3% for Area H; 12 ½% for Area L; or as specified in the detailed statement of sale

Lessor reserves the right to specify whether royalty is to be paid in value or in kind, and the right to establish reasonable minimum values on products after giving lessee notice and an opportunity to be heard. When paid in value, royalties shall be due and payable on the last day of the month following the month in which production occurred. When paid in kind, production shall be delivered, unless otherwise agreed to by lessor, in merchantable condition on the premises where produced without cost to lessor. Lessee shall not be required to hold such production in storage beyond the last day of the month following the month in which production occurred, nor shall lessee be held liable for loss or destruction of royalty oil or other products in storage from causes beyond the reasonable control of the lessee.

Minimum royalty in lieu of rental of not less than the rental which otherwise would be required for that lease year shall be payable at the end of each lease year beginning on or after a discovery in paying quantities. This minimum royalty may be waived, suspended, or reduced and the above royalty rates may be reduced, for all or portions of the lease if the Secretary determines that such action is necessary to encourage the greatest ultimate recovery of the leased resources, or is otherwise justified.

An interest charge shall be assessed on the late royalty payments or underpayments in accordance with the Federal Oil and Gas Royalty Management Act of 1982 (FOGRMA) (30 U.S.C. 1701). Lessee shall be liable for royalty payments on oil and gas lost or wasted from a lease site when such loss or waste is due to negligence on the part of the operator, or due to the failure to comply with any rules, regulations, orders, or citations issued under FOGRMA or the leasing authority.

Sec. 3. Bonds – A bond shall be filed and maintained for lease operations as required under regulations.

Sec. 4. Diligence, rate of development, unitization, and drainage – Lessee must exercise reasonable diligence in developing and producing, and must prevent unnecessary damage to, loss of, or waste of leased resources. Lessor reserves the right to specify rates of development and production in the public interest and to require lessee to subscribe to a cooperative or unit plan, within 30 days of notice, if deemed necessary for proper development and operation of area, field, or pool embracing these leased lands. Lessee shall drill and produce wells necessary to protect leased lands from drainage or pay compensatory royalty for drainage in amount determined by lessor.

Sec. 5. Documents, evidence, and inspection – Lessee shall file with the proper office of lessor, not later than 30 days after effective date thereof, any contract or evidence of other arrangement for sale or disposal of production. At such times and in such form as lessor may prescribe, lessee shall furnish detailed statements showing amounts and quality

of all products removed and sold, proceeds therefrom, and amount used for production purposes or unavoidably lost. Lessee may be required to provide plats and schematic diagrams showing development work and improvements, and reports with respect to parties in interest, expenditures, and depreciation costs. In the form prescribed by lessor, lessee shall keep a daily drilling record, a log, information on well surveys and tests, and a record of subsurface investigations and furnish copies to lessor when required. Lessee shall keep open at all reasonable times for inspection by any authorized officer of lessor, the leased premises and all wells, improvements, machinery, and fixtures thereon, and all books, accounts, maps, and records relative to operations, surveys, or investigations on or in the leased lands. Lessee shall maintain copies of all contracts, sales agreements, accounting records, and documentation such as billings, invoices, or similar documentation that support costs claimed as manufacturing, preparation, and/or transportation costs. All such records shall be maintained in lessee's accounting office for future audit by lessor. Lessee shall maintain required records for 6 years after they are generated or, if an audit or investigation is underway, until released of the obligation to maintain such records by lessor.

During existence of this lease, information obtained under this section shall be closed to inspection by the public in accordance with the Freedom of Information Act (5 U.S.C. 552)

Sec. 6. Conduct of operations – Lessee shall conduct operations in a manner that minimizes adverse impacts to the land, air, and water, to cultural, biological, visual, and other resources, and to other land uses or users. Lessee shall take reasonable measures deemed necessary by lessor to accomplish the intent of this section. To the extent consistent with lease rights granted, such measures may include, but are not limited to, modification to siting or design of facilities, timing of operations, and specification of interim and final reclamation measures. Lessor reserves the right to continue existing uses and to authorize future uses upon or in the leased lands, including the approval of easements or rights-of-way. Such uses shall be conditioned so as to prevent unnecessary or unreasonable interference with the rights of lessee.

Prior to disturbing the surface of the leased lands, lessee shall contact lessor to be apprised of procedures to be followed and modifications or reclamation measures that may be necessary. Areas to be disturbed may require inventories or special studies to determine the extent of impacts to other resources. Lessee may be required to complete minor inventories or short term special studies under guidelines provided by lessor. If, in the conduct of operations, threatened or endangered species, objects of historic or scientific interest, or substantial unanticipated environmental effects are observed, lessee shall immediately contact lessor. Lessee shall cease any operations that would result in the destruction of such species or objects.

Sec. 7. Mining operations – To the extent that impacts from mining operations would be substantially different or greater than those associated with normal drilling operations, lessor reserves the right to deny approval of such operations.

Sec. 8. Extraction of helium – Lessor reserves the option of extracting or having extracted helium from gas production in a manner specified and by means provided by lessor at no expense or loss to lessee or owner of the gas. Lessee shall include in any contract of sale of gas the provision of this section.

Sec. 9. Damages to property – Lessee shall pay lessor for damage to lessor's improvements, and shall save and hold lessor harmless from all claims for damage or harm to persons or property as a result of lease operations.

Sec. 10. Protection of diverse interests and equal opportunity – Lessee shall pay when due, all taxes legally assessed and levied under laws of the State or the United States; accord all employees complete freedom of purchase; pay all wages at least twice each month in lawful money of the United States; maintain a safe working environment in accordance with standard industry practices; and take measures necessary to protect the health and safety of the public.

Lessor reserves the right to ensure that production is sold at reasonable prices and to prevent monopoly. If lessee operates a pipeline, or owns controlling interest in a pipeline or a company operating a pipeline, which may be operated accessible to oil derived from these leased lands, lessee shall comply with section 28 of the Mineral Leasing Act of 1920.

Lessee shall comply with Executive Order No. 11246 of September 24, 1965, as amended, and regulations and relevant orders of the Secretary of Labor issued pursuant thereto. Neither lessee nor lessee's subcontractors shall maintain segregated facilities. During the performance of this lease, the lessee must comply fully with paragraphs (1) through (7) of 41 CFR 60-1.4(a) with respect to employment discrimination on the basis of race, color, religion, sex, or national

Form 3130-1 (November 2008)

**Exhibit 7, Page 121 of 137**

AR400116

SIGNATORY PAGE FOR U.S. DEPT. OF INTERIOR B.L.M. OFFER TO
LEASE & LEASE FOR OIL & GAS
SERIAL NO. AA-093931

THE UNITED STATES OF AMERICA )
                              ) ss.
STATE OF _____ALASKA_____ )

This certifies that on the __2nd__ day of February, 2015, before me, a notary public in and for the State of Alaska, duly commissioned and sworn, personally appeared David W. Brown, to me known and known to me to be the person described in, and who executed the foregoing lease, who then after being duly sworn according to law, acknowledged to me under oath that he executed same freely and voluntarily for the uses and purposes therein mentioned. WITNESS my hand and official seal the day and year in this certificate first above written.



STATE OF ALASKA
NOTARY PUBLIC
REBECCA SWENSEN
My Commission Expires Aug. 27, 2016

Notary Public in and for the State of Alaska
My Commission expires: August 27, 2016

origin, and must incorporate the requirements set forth in those paragraphs in every subcontract or purchase order, as provided by that regulation.

Sec. 11. Transfer of lease interests and relinquishment of lease – As required by regulations, lessee shall file with lessor any assignment or other transfer of an interest in this lease. Lessee may relinquish this lease or any legal subdivision by filing in the proper office, a written relinquishment, which shall be effective as of the date of filing, subject to the continued obligation of the lessee and surety to pay all accrued rentals and royalties.

Sec. 12. Delivery of premises – At such time as all or portions of this lease are returned to lessor, lessee shall place affected wells in condition for suspension or abandonment, reclaim the land as specified by lessor, and within a reasonable period of time, remove equipment and improvements not deemed necessary by lessor for preservation of producible wells.

Sec. 13. Proceedings in case of default – If lessee fails to comply with any provisions of this lease, and the noncompliance continues for 30 days after written notice thereof, this lease shall be subject to cancellation unless or until the leasehold contains;
    (a)  a well capable of production of oil and gas in paying quantities or
    (b)  meets criteria under 43 CFR 3135.1-5 or

The lease is committed to an approved cooperative or unit plan or communitization agreement which;
    (a)  contains a well capable of production of unitized substances in paying quantities or
    (b)  meets the criteria under 43 CFR 3137.70 and 43 CFR 3137.82 .
This provision shall not be construed to prevent the exercise by lessor of any other legal and equitable remedy, including waiver of the default. As such, remedy or waiver shall prevent later cancellation of the same default occurring at any other time. Lessee shall be subject to applicable provisions and penalties of FOGRMA (30 U.S.C. 1701).

Sec. 14. Heirs and successors-in-interest – Each obligation of this lease shall extend to and be binding upon and every benefit hereof shall inure to: the heirs, executors, administrators, successors, beneficiaries, or assignees of the respective parties hereto.

---

## INSTRUCTIONS

A. General

  1. The front of this form is to be completed only by parties filing for a noncompetitive lease. The BLM will complete front of the form for all other types of leases.

  2. Entries must be typed or printed plainly in ink. Offeror must sign Item 4 in ink.

  3. An original and two copies of this offer must be prepared and filed in the proper BLM State Office. See regulations at 43 CFR 1821.2-1 for office locations.

  4. If more space is needed, additional sheets must be attached to each copy of the form submitted.

B. Special:

  Item 1 - Enter offeror's name and billing address.

  Item 2 - A single tract number and Sale Date shall be the only acceptable description.

  Item 3 - This space will be completed by the United States.

**PAPERWORK REDUCTION ACT STATEMENT**

The Paperwork Reduction Act of 1990 (44 U.S.C. 3501 et seq.) requires us to inform you that:

1. This information is being collected pursuant to the law.

2. This information will be used to create and maintain a record of oil and gas lease activity.

3. Response to this request is required to obtain a benefit.

**EFFECT OF NOT PROVIDING INFORMATION - If you do not provide all the information, the offer may be rejected. See regulations at 43 CFR Part 3130.**

2015 FEB -2 PH 3: 55

AR400118

**UNITED STATES**
**DEPARTMENT OF THE INTERIOR**
**BUREAU OF LAND MANAGEMENT**
**ALASKA STATE OFFICE**
**OFFER TO LEASE AND LEASE FOR OIL AND GAS**

Serial No.

AA-093932

The undersigned (reverse) offers to lease all or any of the lands in Item 2 that are available for lease pursuant to the Mineral Leasing Act of 1920, as amended and supplemented (30 U.S.C. 181 et seq.), the Mineral Leasing Act for Acquired Lands of 1947, as amended (30 U.S.C. 351-359), the Attorney General's Opinion of April 2, 1941 (40 Op. Atty. Gen. 41), or the Naval Petroleum Reserve Production Act of 1976 (42 U.S.C. 6501 et seq.), as amended.

**READ INSTRUCTIONS BEFORE COMPLETING**

| | | | |
|---|---|---|---|
| 1. Name | ConocoPhillips Alaska Inc.        and | | Anadarko E&P Onshore, LLC. |
| Street | P.O. Box 100360 | | 1201 Lake Robbins Drive, Room 14005 |
| City, State, Zip Code | Anchorage, AK 99510-0360 | | The Woodlands, Texas 77380 |

2. This application/offer/lease is for Public Domain Lands in the National Petroleum Reserve - Alaska (NPR-A)

Legal description of land requested         *Tract No.:  2014-H-161         * Sale Date (m/d/y):  Nov  / 19  / 2014

| T. | R. | Meridian | State | County |
|---|---|---|---|---|
| T. 9 N. | R. 1 W. | Umiat Meridian | Alaska | |

Sections 2, 3, 10, 11, 14, and 15

K-1
Stipulations: D, E, G, K
Best Management Practices

Amount remitted: Filing fee $155.00         Rental fee $19,210.00

Total acres applied for  3,842
Total $19,365.00

**DO NOT WRITE BELOW THIS LINE**

3. Land included in lease:

| T. | R. | Meridian | State | County |
|---|---|---|---|---|
| T. 9 N. | R. 1 W. | Umiat Meridian | Alaska | |

Sections 2, 3, 10, 11, 14, and 15

K-1
Stipulations: D, E, G, K
Best Management Practices

Total acres in lease  3,842
Rental retained $19,210.00

This lease is issued granting the exclusive right to drill for, mine, extract, remove and dispose of all the oil and gas (except helium) in the lands described in Item 3 together with the right to build and maintain necessary improvements thereupon for the term indicated below, subject to renewal or extension in accordance with the appropriate leasing authority. Rights granted are subject to applicable law s, the terms, conditions, and attached stipulations of this lease, the Secretary of the Interior's regulations and formal orders in effect as of lease issuance, and to regulations and formal orders hereafter promulgated when not inconsistent with lease rights granted or specific provision of this lease.

NOTE: This lease is issued to the high bidder pursuant to his/her duly executed bid or nomination form submitted under 43 CFR Part 3130 and is subject to the provisions of that bid or nomination and those specified on this form.

Type and primary term of lease:

THE UNITED STATES OF AMERICA

[   ] Noncompetitive lease (ten years)

[   ] Competitive lease (ten years)

[ X ] Other Competitive NPR-A Lease (ten years)

by _____ (Signing Officer)

State Director
(Title)                                    3/1/15
(Date)

EFFECTIVE DATE OF LEASE:    MAR 0 1 2015

Form AK 4130-1 (November 2008)

**Exhibit 7, Page 124 of 137**

AR400119

4. (a) Undersigned certifies that (1) offeror is a citizen of the United States; an association of such citizens; a municipality; or a corporation organized under the laws of the United States or of any State or Territory thereof; (2) all parties holding an interest in the offer are in compliance with 43 CFR Part 3132.1 and the leasing authorities; (3) offeror is not considered a minor under the laws of the State in which the lands covered by this offer are located.

(b) Undersigned agrees that signature to this offer constitutes acceptance of this lease, including all terms, conditions, and stipulations of which offeror has been given notice, and any amendment or separate lease that may include any land described in this offer open to leasing at the time this offer was filed but omitted for any reason from this lease. The offeror further agrees that this offer cannot be withdrawn, either in whole or in part.

This offer will be rejected and will afford offeror no priority if it is not properly completed and executed in accordance with the regulations, or if it is not accompanied by the required payments. 18 U.S.C. Sec. 1001 makes it a crime for any person knowingly and willfully to make to any Department or agency of the United States any false, fictitious or fraudulent statements or representations as to any matter within its jurisdiction.

NOTICE

The Privacy Act of 1974 and the regulations at 43 CFR 2.48(d) provide that you be furnished with the following information:

AUTHORITY: 50 Stat. 900; 25 U.S.C. 500

PRINCIPAL PURPOSE: The primary uses of the records are (1) to determine your qualification to receive an oil and gas lease; and (2) to provide information concerning oil and gas leases for administrative and public use.

ROUTINE USES: BLM and the Department of the Interior (DOI) may disclose your information on this form: (1) to members of the public who have a need for the information that is maintained by BLM for public record; (2) to the U.S. Department of Justice, court, or other adjudicative body when DOI determines the information is necessary and relevant to litigation; (3) to appropriate Federal, State, local or foreign agencies responsible for investigating, prosecuting violations, enforcing or implementing this statute, regulation, or lease; and (4) to a congressional office when you request the assistance of the Member of Congress in writing.

EFFECT OF NOT PROVIDING THIS INFORMATION: If you furnish all the information required by this form, your application may be rejected.

Duly executed this _____ day of _____, 20 _____

SEE ATTACHED SIGNATURE PAGES

(Signature of Lessee or Attorney-in-fact)

LEASE TERMS

Sec. 1. Rentals - Rentals must be paid to the proper office of lessor in advance of each lease year. Annual rental rates per acre or fraction thereof are:

(a) Noncompetitive lease, $1.50 for the first 5 years; thereafter $2.00
(b) Competitive lease, $1.50, for the first 5 year; thereafter $2.00
(c) Other, see attachment; or for NPR-A: $5.00 for Area H; $3.00 for Area L; or
as specified in the detailed statement of sale

If this lease or a portion thereof is committed to an approved cooperative or unit plan which includes a well capable of producing leased resources, or a well that meets criteria in 43 CFR 3137.82 and the plan contains a provision for allocation of production, royalties shall be paid on the production allocated to this lease. However, annual rentals shall continue to be due at the rate specified in (a), (b), or (c) for those lands not within a participating area.

Failure to pay annual rent, within 30 days after receipt of a Notice of Delinquency shall cause this lease to terminate. Rentals may be waived, reduced, or suspended by the Secretary upon a sufficient showing by lessee.

Sec. 2. Royalties – Royalties shall be paid to the proper office of lessor. Royalties shall be computed in accordance with regulations on production removed or sold. Royalty rates are:

(a) Noncompetitive lease, 12 ½%;
(b) Competitive lease, 12 ½%;
(c) Other, see attachment, or for NPR-A: 16 2/3% for Area H; 12 ½% for Area L; or
as specified in the detailed statement of sale.

Lessor reserves the right to specify whether royalty is to be paid in value or in kind, and the right to establish reasonable minimum values on products after giving lessee notice and an opportunity to be heard. When paid in value, royalties shall be due and payable on the last day of the month following the month in which production occurred. When paid in kind, production shall be delivered, unless otherwise agreed to by lessor, in merchantable condition on the premises where produced without cost to lessor. Lessee shall not be required to hold such production in storage beyond the last day of the month following the month in which production occurred, nor shall lessee be held liable for loss or destruction of royalty oil or other products in storage from causes beyond the reasonable control of the lessee.

Minimum royalty in lieu of rental of not less than the rental which otherwise would be required for that lease year shall be payable at the end of each lease year beginning on or after a discovery in paying quantities. This minimum royalty may be waived, suspended, or reduced and the above royalty rates may be reduced, for all or portions of the lease if the Secretary determines that such action is necessary to encourage the greatest ultimate recovery of the leased resources, or is otherwise justified.

An interest charge shall be assessed on the late royalty payments or underpayments in accordance with the Federal Oil and Gas Royalty Management Act of 1982 (FOGRMA) (30 U.S.C. 1701). Lessee shall be liable for royalty payments on oil and gas loss or wasted from a lease site when such loss or waste is due to negligence on the part of the operator, or due to the failure to comply with any rules, regulations, orders, or citations issued under FOGRMA or the leasing authority.

Sec. 3. Bonds – A bond shall be filed and maintained for lease operations as required under regulations.

Sec. 4. Diligence, rate of development, unitization, and drainage – Lessee must exercise reasonable diligence in developing and producing, and must prevent unnecessary damage to, loss of, or waste of leased resources. Lessor reserves the right to specify rates of development and production in the public interest and to require lessee to subscribe to a cooperative or unit plan, within 30 days of notice, if deemed necessary for proper development and operation of area, field, or pool embracing these leased lands. Lessee shall drill and produce wells necessary to protect leased lands from drainage or pay compensatory royalty for drainage in amount determined by lessor.

Sec. 5. Documents, evidence, and inspection – Lessee shall file with the proper office of lessor, not later than 30 days after effective date thereof, any contract or evidence of other arrangement for sale or disposal of production. At such times and in such form as lessor may prescribe, lessee shall furnish detailed statements showing amounts and quality of all products removed and sold, proceeds therefrom, and amount used for production purposes or unavoidably lost. Lessee may be required to provide plats and schematic diagrams showing development work and improvements, and reports with respect to parties in interest, expenditures, and depreciation costs. In the form prescribed by lessor, lessee shall keep a daily drilling record, a log, information on well surveys and tests, and a record of subsurface investigations and furnish copies to lessor when required. Lessee shall keep open at all reasonable times for inspection by any authorized officer of lessor, the leased premises and all wells, improvements, machinery, and fixtures thereon, and all books, accounts, maps, and records relative to operations, surveys, or investigations on or in the leased lands. Lessee shall maintain copies of all contracts, sales agreements, accounting records, and documentation such as billings, invoices, or similar documentation that support costs claimed as manufacturing, preparation, and/or transportation costs. All such records shall be maintained in lessee's accounting office for future audit by lessor. Lessee shall maintain required records for 6 years after they are generated or, if an audit or investigation is underway, until released of the obligation to maintain such records by lessor.

During existence of this lease, information obtained under this section shall be closed to inspection by the public in accordance with the Freedom of Information Act (5 U.S.C. 552)

Sec. 6. Conduct of operations – Lessee shall conduct operations in a manner that minimizes adverse impacts to the land, air, and water, to cultural, biological, visual, and other resources, and to other land uses or users. Lessee shall take reasonable measures deemed necessary by lessor to accomplish the intent of this section. To the extent consistent with lease rights granted, such measures may include, but are not limited to, modification to siting or design of facilities, timing of operations, and specification of interim and final reclamation measures. Lessor reserves the right to continue existing uses and to authorize future uses upon or in the leased lands, including the approval of easements or rights-of-way. Such uses shall be conditioned so as to prevent unnecessary or unreasonable interference with the rights of lessee.

Prior to disturbing the surface of the leased lands, lessee shall contact lessor to be apprised of procedures to be followed and modifications or reclamation measures that may be necessary. Areas to be disturbed may require inventories or special studies to determine the extent of impacts to other resources. Lessee may be required to complete minor inventories or short term special studies under guidelines provided by lessor. If, in the conduct of operations, threatened or endangered species, objects of historic or scientific interest, or substantial unanticipated environmental effects are observed, lessee shall immediately contact lessor. Lessee shall cease any operation that would result in the destruction of such species or objects.

Sec. 7. Mining operations – To the extent that impacts from mining operations would be substantially different or greater than those associated with normal drilling operations, lessor reserves the right to deny approval of such operations.

Sec. 8. Extraction of helium – Lessor reserves the option of extracting or having extracted helium from gas production in a manner specified and by means provided by lessor at no expense or loss to lessee or owner of the gas. Lessee shall include in any contract of sale of gas the provision of this section.

Sec. 9. Damages to property – Lessee shall pay lessor for damage to lessor's improvements, and shall save and hold lessor harmless from all claims for damage or harm to persons or property as a result of lease operations.

Form 3100-1 (November 2008)

**AR400120**

Sec. 10 Protection of diverse interests and equal opportunity – Lessee shall, when due, all taxes legally assessed and levied under laws of the State or the United States; accord all employees complete freedom of purchase; pay all wages at least twice each month in lawful money of the United States; maintain a safe working environment in accordance with standard industry practices; and take measures necessary to protect the health and safety of the public.

Lessor reserves the right to ensure that production is sold at reasonable prices and to prevent monopoly. If lessee operates a pipeline, or owns controlling interest in a pipeline or a company operating a pipeline, which may be operated accessible to oil derived from these leased lands, lessee shall comply with section 28 of the Mineral Leasing Act of 1920.

Lessee shall comply with Executive Order No. 11246 of September 24, 1965, as amended, and regulations and relevant orders of the Secretary of Labor issued pursuant thereto. Neither lessee nor lessee's subcontractors shall maintain segregated facilities. During the performance of this lease, the lessee must comply fully with paragraphs (1) through (7) of 41 CFR 60-1.4(a) with respect to employment discrimination on the basis of race, color, religion, sex, or national origin, and must incorporate the requirements set forth in those paragraphs in every subcontract or purchase order, as provided by that regulation.

Sec. 11. Transfer of lease interests and relinquishment of lease – As required by regulations, lessee shall file with lessor any assignment or other transfer of an interest in this lease. Lessee may relinquish this lease or any legal subdivision by filing in the proper office a written relinquishment, which shall be effective as of the date of filing, subject to the continued obligation of the lessee and surety to pay all accrued rentals and royalties.

Sec. 12. Delivery of premises – At such time as all or portions of this lease are returned to lessor, lessee shall place affected wells in condition for suspension or abandonment, reclaim the land as specified by lessor, and within a reasonable period of time, remove equipment and improvements not deemed necessary by lessor for preservation of producible wells.

Sec. 13. Proceedings in case of default – If lessee fails to comply with any provisions of this lease, and the noncompliance continues for 30 days after written notice thereof, this lease shall be subject to cancellation unless or until the leasehold contains:
  (a)  a well capable of production of oil and gas in paying quantities or
  (b)  meets criteria under 43 CFR 3135.1-5 or
The lease is committed to an approved cooperative or unit plan or communitization agreement which:
  (a)  contains a well capable of production of unitized substances in paying quantities or
  (b)  meets the criteria under 43 CFR 3137.70 and 43 CFR 3137.82
This provision shall not be construed to prevent the exercise by lessor of any other legal and equitable remedy, including waiver of the default. As such, remedy or waiver shall prevent later cancellation of the same default occurring at any other time. Lessee shall be subject to applicable provisions and penalties of FOGRMA (30 U.S.C. 1701).

Sec. 14. Heirs and successors-in-interest – Each obligation of this lease shall extend to and be binding upon and every benefit hereof shall inure to: the heirs, executors, administrators, successors, beneficiaries, or assignees of the respective parties hereto.

2015 FEB -2 PM 3:55

---

## INSTRUCTIONS

A. General

1. The front of this form is to be completed only by parties filing for a noncompetitive lease. The BLM will complete front of the form for all other types of leases.

2. Entries must be typed or printed plainly in ink. Offeror must sign Item 4 in ink.

3. An original and two copies of this offer must be prepared and filed in the proper BLM State Office. See regulations at 43 CFR 1821.2-1 for office locations.

4. If more space is needed, additional sheets must be attached to each copy of the form submitted.

B. Special:

Item 1 - Enter offeror's name and billing address.

Item 2 - A single tract number and Sale Date shall be the only acceptable description.

Item 3 - This space will be completed by the United States.

## PAPERWORK REDUCTION ACT STATEMENT

The Paperwork Reduction Act of 1990 (44 U.S.C. 3501 et seq.) requires us to inform you that:

1. This information is being collected pursuant to the law.

2. This information will be used to create and maintain a record of oil and gas lease activity.

3. Response to this request is required to obtain a benefit.

**EFFECT OF NOT PROVIDING INFORMATION - If you do not provide all the information, the offer may be rejected. See regulations at 43 CFR Part 3130.**

Form 3130-1 (November 2008)

**Exhibit 7, Page 126 of 137**

**AR400121**

# UNITED STATES
## DEPARTMENT OF THE INTERIOR
### BUREAU OF LAND MANAGEMENT
### ALASKA STATE OFFICE
## OFFER TO LEASE AND LEASE FOR OIL AND GAS

Serial No.

AA-094163

The undersigned (reverse) offers to lease all or any of the lands in Item 2 that are available for lease pursuant to the Mineral Leasing Act of 1920, as amended and supplemented (30 U.S.C. 181 et seq.), the Mineral Leasing Act for Acquired Lands of 1947, as amended (30 U.S.C. 351-359), the Attorney General's Opinion of April 2, 1941 (40 Op. Atty. Gen. 41), or the Naval Petroleum Reserve Production Act of 1976 (42 U.S.C. 6501 et seq.), as amended.

#### READ INSTRUCTIONS BEFORE COMPLETING

1. Name      ConocoPhillips Alaska, Inc.

   Street      P.O. Box 100360

   City, State, Zip Code      Anchorage, AK 99510-0360

2. This application/offer/lease is for Public Domain Lands in the National Petroleum Reserve - Alaska (NPR-A)

Legal description of land requested:      *Tract No.: 2015-H-059      * Sale Date (m/d/y) Nov / 18 / 2015

| T. | R. | Meridian | State | County |
|---|---|---|---|---|
| T. 10 N. | R. 2 W. | Umiat Meridian | Alaska | |

Sections 22 thru 27 and 34 thru 36

K-1(e), K-2
Stipulations: D, E, G, K
Best Management Practices
Boundary Risk Assessment Stipulation

Amount remitted: Filing fee $160.00      Rental fee $28,845.00      Total acres applied for 5,769
Total $29,005.00

### DO NOT WRITE BELOW THIS LINE

3. Land included in lease:

| T. | R. | Meridian | State | County |
|---|---|---|---|---|
| T. 10 N. | R. 2 W. | Umiat Meridian | Alaska | |

Sections 22 thru 27 and 34 thru 36
K-1(e), K-2
Stipulations: D, E, G, K
Best Management Practices
Boundary Risk Assessment Stipulation

2016 FEB 26 PM 1: [  ]  BLM AK SO 954
ANCHORAGE. A

Total acres in lease 5,769

Rental retained $28,845.00

This lease is issued granting the exclusive right to drill for, mine, extract, remove and dispose of all the oil and gas (except helium) in the lands described in Item 3 together with the right to build and maintain necessary improvements thereupon for the term indicated below, subject to renewal or extension in accordance with the appropriate leasing authority. Rights granted are subject to applicable laws, the terms, conditions, and attached stipulations of this lease; the Secretary of the Interior's regulations and formal orders in effect as of lease issuance, and to regulations and formal orders hereafter promulgated when not inconsistent with lease rights granted or specific provision of this lease.

NOTE: This lease is issued to the high bidder pursuant to his/her duly executed bid or nomination form submitted under 43 CFR Part 3130 and is subject to the provisions of that bid or nomination and those specified on this form.

Type and primary term of lease:      THE UNITED STATES OF AMERICA

[  ] Noncompetitive lease (ten years)

[  ] Competitive lease (ten years)

[ X ] Other Competitive NPR-A Lease (ten years)

by _____ (Signing Officer)

State Director Alaska (Title)      3/01/16 (Date)

EFFECTIVE DATE OF LEASE      APR 0 1 2016

**Exhibit 7, Page 127 of 137**

AR400122

4. (a) Undersigned certifies that (1) offeror is a citizen of the United States, an association of such citizens, a municipality, or a corporation organized under the laws of the United States or of any State or Territory thereof. (2) all parties holding an interest in the offer are in compliance with 43 CFR Part 3132.1 and the leasing authorities; (3) offeror is not considered a minor under the laws of the State in which the lands covered by this offer are located.

(b) Undersigned agrees that signature to this offer constitutes acceptance of this lease, including all terms, conditions, and stipulations of which offeror has been given notice, and any amendment or separate lease that may include any land described in this offer open to leasing at the time this offer was filed but omitted for any reason from this lease. The offeror further agrees that this offer cannot be withdrawn, either in whole or in part.

This offer will be rejected and will afford offeror no priority if it is not properly completed and executed in accordance with the regulations, or if it is not accompanied by the required payments. 18 U.S.C. Sec. 1001 makes it a crime for any person knowingly and willfully to make to any Department or agency of the United States any false, fictitious or fraudulent statements or representations as to any matter within its jurisdiction.

### NOTICE

The Privacy Act of 1974 and the regulations at 43 CFR 2.48(d) provide that you be furnished with the following information:

**AUTHORITY:** 50 Stat. 900; 25 U.S.C. 500

**PRINCIPAL PURPOSE:** The primary uses of the records are (1) to determine your qualification to receive an oil and gas lease; and (2) to provide information concerning oil and gas leases for administrative and public use.

**ROUTINE USES:** BLM and the Department of the Interior (DOI) may disclose your information on this form: (1) to members of the public who have a need for the information that is maintained by BLM for public record; (2) to the U.S. Department of Justice, court, or other adjudicative body when DOI determines the information is necessary and relevant to litigation; (3) to appropriate Federal, State, local or foreign agencies responsible for investigating, prosecuting violations, enforcing or implementing this statute, regulation, or lease; and (4) to a congressional office when you request the assistance of the Member of Congress in writing.

**EFFECT OF NOT PROVIDING THIS INFORMATION:** If you do not furnish all the information required by this form, your application may be rejected.

Duly executed this  22  day of  February  , 20  16  .  David W. Brown
(Signature of Lessee or Attorney-in-fact)

---

## LEASE TERMS

Sec. 1. Rentals - Rentals must be paid to the proper office of lessor in advance of each lease year. Annual rentals per acre or fraction thereof are:

(a) Noncompetitive lease: $1.50 for the first 5 years, thereafter $2.00
(b) Competitive lease: $1.50, for the first 5 year, thereafter $2.00
(c) Other, see attachment; or for NPR-A, $5.00 for Area II, $3.00 for Area L; or
as specified in the detailed statement of lease

If this lease or a portion thereof is committed to an approved cooperative or unit plan which includes a well capable of producing leased resources, or a well that meets criteria in 43 CFR 3137.82 and the plan contains a provision for allocation of production, royalties shall be paid on the production allocated to this lease. However, annual rentals shall continue to be due at the rate specified in (a), (b), or (c) for those lands not within a participating area.

Failure to pay annual rent, within 30 days after receipt of a Notice of Delinquency shall cause this lease to terminate. Rentals may be waived, reduced, or suspended by the Secretary upon a sufficient showing by lessee.

Sec. 2. Royalties - Royalties shall be paid to the proper office of lessor. Royalties shall be computed in accordance with regulations on production removed or sold. Royalty rates are:

(a) Noncompetitive lease: 12 1/2%
(b) Competitive lease: 12 1/2%
(c) Other, see attachment; or for NPR-A, 16 2/3% for Area II, 12 1/2% for Area L; or
as specified in the detailed statement of sale

Lessor reserves the right to specify whether royalty is to be paid in value or in kind, and the right to establish reasonable minimum values on products after giving lessee notice and an opportunity to be heard. When paid in value, royalties shall be due and payable on the last day of the month following the month in which production occurred. When paid in kind, production shall be delivered, unless otherwise agreed to by lessor, in merchantable condition on the premises where produced without cost to lessor. Lessee shall not be required to hold such production in storage beyond the last day of the month following the month in which production occurred, nor shall lessee be held liable for loss or destruction of royalty oil or other products in storage from causes beyond the reasonable control of the lessee.

Minimum royalty in lieu of rental of not less than the rental which otherwise would be required for that lease year shall be payable at the end of each lease year beginning on or after a discovery in paying quantities. This minimum royalty may be waived, suspended, or reduced and the above royalty rates may be reduced, for all or portions of the lease if the Secretary determines that such action is necessary to encourage the greatest ultimate recovery of the leased resources, or is otherwise justified.

An interest charge shall be assessed on the late royalty payments or underpayments in accordance with the Federal Oil and Gas Royalty Management Act of 1982 (FOGRMA) (30 U.S.C. 1701). Lessee shall be liable for royalty payments on oil and gas loss or wasted from a lease site when such loss or waste is due to negligence on the part of the operator or due to the failure to comply with any rules, regulations, orders, or citations issued under FOGRMA or the leasing authority.

Sec. 3. Bonds - A bond shall be filed and maintained for lease operations as required under regulations.

Sec. 4. Diligence, rate of development, unitization, and drainage - Lessee must exercise reasonable diligence in developing and producing, and must prevent unnecessary damage to, loss of, or waste of leased resources. Lessor reserves the right to specify rates of development and production in the public interest and to require lessee to subscribe to a cooperative or unit plan, within 30 days of notice, if deemed necessary for proper development and operation of area, field, or pool embracing these leased lands. Lessee shall drill and produce wells necessary to protect leased lands from drainage or pay compensatory royalty for drainage in amount determined by lessor.

Sec. 5. Documents, evidence, and inspection - Lessee shall file with the proper office of lessor, not later than 30 days after effective date thereof, any contract or evidence of other arrangement for sale or disposal of production. At such times and in such form as lessor may prescribe, lessee shall furnish detailed statements showing amounts and quality of all products removed and sold, proceeds therefrom, and amount used for production purposes or unavoidably lost. Lessee may be required to provide plats and schematic diagrams showing development work and improvements, and reports with respect to parties in interest, expenditures, and depreciation costs. In the form prescribed by lessor, lessee shall keep a daily drilling record, a log, information on well surveys and tests, and a record of subsurface investigations and furnish copies to lessor when required. Lessee shall keep open at all reasonable times for inspection by any authorized officer of lessor, the leased premises and all wells, improvements, machinery, and fixtures thereon, and all books, accounts, maps, and records relative to operations, surveys, or investigations on or of the leased lands. Lessee shall maintain copies of all contracts, sales agreements, accounting records, and documentation such as billings, invoices, or similar documentation that support costs claimed as manufacturing, preparation, and or transportation costs. All such records shall be maintained in lessee's accounting office for future audit by lessor. Lessee shall maintain required records for 6 years after they are generated or if an audit or investigation is underway, until released of the obligation to maintain such records by lessor.

During existence of lease, information obtained under this section shall be closed to inspection by the public in accordance with the Freedom of Information Act (5 U.S.C. 552)

Sec. 6. Conduct of operations - Lessee shall conduct operations in a manner that minimizes adverse impacts to the land, air, and water; to cultural, biological, visual, and other resources, and to other land uses or users. Lessee shall take reasonable measures deemed necessary by lessor to accomplish the intent of this section. To the extent consistent with lease rights granted, such measures may include, but are not limited to: modification to siting or design of facilities, timing of operations, and specification of interim and final reclamation measures. Lessor reserves the right to continue existing uses and to authorize future uses upon or in the leased lands, including the approval of easements or rights-of-way. Such uses shall be conditioned so as to prevent unnecessary or unreasonable interference with the rights of lessee.

Prior to disturbing the surface of the leased lands, lessee shall contact lessor to be apprised of procedures to be followed and modifications or reclamation measures that may be necessary. Areas to be disturbed may require inventories or special studies to determine the extent of impacts to other resources. Lessee may be required to complete minor inventories or short term special studies under guidelines provided by lessor. If in the conduct of operations, threatened or endangered species, objects of historic or scientific interest, or substantial unanticipated environmental effects are observed, lessee shall immediately contact lessor. Lessee shall cease any operations that would result in the destruction of such species or objects.

Sec. 7. Mining operations - To the extent that impacts from mining operations would be substantially different or greater than those associated with normal drilling operations, lessor reserves the right to deny approval of such operations.

Sec. 8. Extraction of helium - Lessor reserves the option of extracting or having extracted helium from gas production in a manner specified and by means provided by lessor at no expense or loss to lessee or owner of the gas. Lessee shall include in any contract of sale of gas the provision of this section.

Sec. 9. Damages to property - Lessee shall pay lessor for damage to lessor's improvements, and shall save and hold lessor harmless from all claims for damage or harm to persons or property as a result of lease operations.

Sec. 10. Protection of diverse interests and equal opportunity - Lessee shall pay when due, all taxes legally assessed and levied under laws of the State or the United States, accord all employees complete freedom of purchase; pay all wages at lease rates each month in lawful money of the United States; maintain a safe working environment in accordance with standard industry practices; and take measures necessary to protect the health and safety of the public.

Lessee reserves the right to ensure that production is sold at reasonable prices and to prevent monopoly. If lessee

Form 3100-11 (November 2008)

**AR400123**

operates a pipeline or owns controlling interest in a pipeline or a company operating a pipeline which may be operated accessible to oil derived from these leased lands, lessee shall comply with section 28 of the Mineral Leasing Act of 1920.

Lessee shall comply with Executive Order No. 11246 of September 24, 1965, as amended, and regulations and relevant orders of the Secretary of Labor issued pursuant thereto. Neither lessee nor lessee's subcontractors shall maintain segregated facilities. During the performance of this lease, the lessee must comply fully with paragraphs (1) through (7) of 41 CFR 60-1.4(a) with respect to employment discrimination on the basis of race, color, religion, sex, or national origin, and must incorporate the requirements set forth in those paragraphs in every subcontract or purchase order, as provided by that regulation.

Sec. 11. Transfer of lease interests and relinquishment of lease – As required by regulations, lessee shall file with lessor any assignment or other transfer of an interest in this lease. Lessee may relinquish this lease or any legal subdivision by filing in the proper office, a written relinquishment, which shall be effective as of the date of filing, subject to the continued obligation of the lessee and surety to pay all accrued rentals and royalties.

Sec. 12. Delivery of premises – At such time as all or portions of this lease are returned to lessor, lessee shall place affected wells in condition for suspension or abandonment, reclaim the land as specified by lessor, and within a reasonable period of time, remove equipment and improvements not deemed necessary by lessor for preservation of producible wells.

(a) a well capable of production of oil and gas in paying quantities or
(b) meets criteria under 43 CFR 3135.1-5 or

The lease is committed to an approved cooperative or unit plan or communization agreement which,
(a) contains a well capable of production of unitized substances in paying quantities or
(b) meets the criteria under 43 CFR 3137.70 and 43 CFR 3137.82

This provision shall not be construed to prevent the exercise by lessor of any other legal and equitable remedy, including waiver of the default. As such, remedy or waiver shall prevent later cancellation of the same default occurring at any other time. Lessee shall be subject to applicable provisions and penalties of FOGRMA (30 U.S.C. 1701).

Sec. 14. Heirs and successors-in-interest – Each obligation of this lease shall extend to and be binding upon and every benefit hereof shall inure to the heirs, executors, administrators, successors, beneficiaries, or assignees of the respective parties hereto.

Sec. 13. Proceedings in case of default – If lessee fails to comply with any provisions of this lease, and the noncompliance continues for 30 days after written notice thereof, this lease shall be subject to cancellation unless or until the leasehold contains.

2016 FEB 26 PM 1:01
BLM AK SO 954
ANCHORAGE, AK

---

## INSTRUCTIONS

A. General

1. The front of this form is to be completed only by parties filing for a noncompetitive lease. The BLM will complete front of the form for all other types of leases.

2. Entries must be typed or printed plainly in ink. Offeror must sign Item 4 in ink.

3. An original and two copies of this offer must be prepared and filed in the proper BLM State Office. See regulations at 43 CFR 1821.2-1 for office locations.

4. If more space is needed, additional sheets must be attached to each copy of the form submitted.

B. Special:

Item 1 - Enter offeror's name and billing address.

Item 2 - A single tract number and Sale Date shall be the only acceptable description.

Item 3 - This space will be completed by the United States.

## PAPERWORK REDUCTION ACT STATEMENT

The Paperwork Reduction Act of 1990 (44 U.S.C. 3501 et seq.) requires us to inform you that:

1. This information is being collected pursuant to the law.

2. This information will be used to create and maintain a record of oil and gas lease activity.

3. Response to this request is required to obtain a benefit.

**EFFECT OF NOT PROVIDING INFORMATION - If you do not provide all the information, the offer may be rejected. See regulations at 43 CFR Part 3130.**

**AR400124**

UNITED STATES
DEP..TMENT OF THE INTERIOR
BUREAU OF LAND MANAGEMENT
ALASKA STATE OFFICE

Serial No.

AA-094166

# OFFER TO LEASE AND LEASE FOR OIL AND GAS

The undersigned (reverse) offers to lease all or any of the lands in Item 2 that are available for lease pursuant to the Mineral Leasing Act of 1920, as amended and supplemented (30 U.S.C. 181 et seq.), the Mineral Leasing Act for Acquired Lands of 1947, as amended (30 U.S.C. 351-359), the Attorney General's Opinion of April 2, 1941 (40 Op. Atty. Gen 41), or the Naval Petroleum Reserve Production Act of 1976 (42 U.S.C. 6501 et seq.), as amended

**READ INSTRUCTIONS BEFORE COMPLETING**

| | |
|---|---|
| 1. Name | ConocoPhillips Alaska, Inc. |
| Street | P.O. Box 100360 |
| City, State, Zip Code | Anchorage, AK 99510-0360 |

2. This application/offer/lease is for Public Domain Lands in the National Petroleum Reserve - Alaska (NPR-A)

Legal description of land requested:     *Tract No.   2015-H-165      * Sale Date (m/d/y)  Nov   / 18   / 2015

| T. | R. | Meridian | State | County |
|---|---|---|---|---|
| T. 10 N.<br>Sections 1 thru 3 and 10 thru 15 | R. 2 W. | Umiat Meridian | Alaska | |
| T. 11 N.<br>Sections 34 thru 36 | R. 2 W. | Umiat Meridian | Alaska | |

K-1(e)
Stipulations: D, E, G, K
Best Management Practices
Boundary Risk Assessment Stipulation

| | | |
|---|---|---|
| Amount remitted: Filing fee $160.00 | Rental fee $38,405.00 | Total acres applied for 7,681<br>Total $38,565.00 |

**DO NOT WRITE BELOW THIS LINE**

3. Land included in lease:

| T. | R. | Meridian | State | County |
|---|---|---|---|---|
| T. 10 N.<br>Sections 1 thru 3 and 10 thru 15 | R. 2 W. | Umiat Meridian | Alaska | |
| T. 11 N.<br>Sections 34 thru 36 | R. 2 W. | Umiat Meridian | Alaska | |

K-1(e)
Stipulations: D, E, G, K
Best Management Practices
Boundary Risk Assessment Stipulation

Total acres in lease 7,681

Rental fee $38,405.00

This lease is issued granting the exclusive right to drill for, mine, extract, remove and dispose of all the oil and gas (except helium) in the lands described in Item 3 together with the right to build and maintain necessary improvements thereupon for the term indicated below, subject to renewal or extension in accordance with the appropriate leasing authority. Rights granted are subject to applicable laws, the terms, conditions, and attached stipulations of this lease, the Secretary of the Interior's regulations and formal orders in effect as of lease issuance, and to regulations and formal orders hereafter promulgated when not inconsistent with lease rights granted or specific provision of this lease.

NOTE: This lease is issued to the high bidder pursuant to his/her duly executed bid or nomination form submitted under 43 CFR Part 3130 and is subject to the provisions of that bid or nomination and those specified on this form.

Type and primary term of lease:

[   ] Noncompetitive lease (ten years)

[   ] Competitive lease (ten years)

[ X ] Other Competitive NPR-A Lease (ten years)

THE UNITED STATES OF AMERICA

by _____ (Signing Officer)

State Director, Alaska   (Title)     3/07/16  (Date)

EFFECTIVE DATE OF LEASE     APR 0 1 2016

Form AK-3130-1 (November 2008)

AR400125

4. (a) Undersigned certifies that (1) offeror is a citizen of the United States, an association of such citizens; a municipality; or a corporation organized under the laws of the United States or of any State or Territory thereof. (2) all parties holding an interest in the offer are in compliance with 43 CFR Part 3132.1 and the leasing authorities; (3) offeror is not considered a minor under the laws of the State in which the lands covered by this offer are located.

(b) Undersigned agrees that signature to this offer constitutes acceptance of this lease, including all terms, conditions, and stipulations of which offeror has been given notice, and any amendment or separate lease that may include any land described in this offer open to leasing at the time this offer was filed but omitted for any reason from this lease. The offeror further agrees that this offer cannot be withdrawn, either in whole or in part.

This offer will be rejected and will afford offeror no priority if it is not properly completed and executed in accordance with the regulations, or if it is not accompanied by the required payments. 18 U.S.C. Sec. 1001 makes it a crime for any person knowingly and willfully to make to any Department or agency of the United States any false, fictitious or fraudulent statements or representations as to any matter within its jurisdiction.

### NOTICE

The Privacy Act of 1974 and the regulations at 43 CFR 2.48(d) provide that you be furnished with the following information:

**AUTHORITY:** 50 Stat. 900; 25 U.S.C. 500

**PRINCIPAL PURPOSE:** The primary uses of the records are (1) to determine your qualification to receive an oil and gas lease; and (2) to provide information concerning oil and gas leases for administrative and public use.

**ROUTINE USES:** BLM and the Department of the Interior (DOI) may disclose your information on this form: (1) to members of the public who have a need for the information that is maintained by BLM for public record; (2) to the U.S. Department of Justice, court, or other adjudicative body when DOI determines the information is necessary and relevant to litigation; (3) to appropriate Federal, State, local or foreign agencies responsible for investigating, prosecuting violations, enforcing or implementing this statute, regulation, or lease; and (4) to a congressional office when you request the assistance of the Member of Congress in writing.

**EFFECT OF NOT PROVIDING THIS INFORMATION:** If you do not furnish all the information required by this form, your application may be rejected.

Duly executed this __22__ day of __February__ , 20 __16__ .      _David W. Brown_
                                                          (Signature of Lessee or Attorney-in-fact)



---

### LEASE TERMS

Sec. 1 Rentals - Rentals must be paid to the proper office of lessor in advance of each lease year. Annual rental rates per acre or fraction thereof are:

(a) Noncompetitive lease: $1.50 for the first 5 years, thereafter $2.00
(b) Competitive lease: $1.50, for the first 5 year, thereafter $2.00
(c) Other, see attachment, or for NPR-A: $5.00 for Area H, $3.00 for Area L, or as specified in the detailed statement of sale

If this lease or a portion thereof is committed to an approved cooperative or unit plan which includes a well capable of producing leased resources, or a well that meets criteria in 43 CFR 3137.82 and the plan contains a provision for allocation of production, royalties shall be paid on the production allocated to this lease. However, annual rentals shall continue to be due at the rate specified in (a), (b), or (c) for those lands not within a participating area.

Failure to pay annual rent, within 30 days after receipt of a Notice of Delinquency shall cause this lease to terminate. Rentals may be waived, reduced, or suspended by the Secretary upon a sufficient showing by lessee.

Sec. 2 Royalties - Royalties shall be paid to the proper office of lessor. Royalties shall be computed in accordance with regulations on production removed or sold. Royalty rates are:

(a) Noncompetitive lease, 12 1/2%.
(b) Competitive lease, 12 1/2%.
(c) Other, see attachment, or for NPR-A: 16 2 3% for Area H, 12 1/2% for Area L; or as specified in the detailed statement of sale

Lessor reserves the right to specify whether royalty is to be paid in value or in kind, and the right to establish minimum values on production after giving lessee notice and an opportunity to be heard. When paid in value, royalties shall be due and payable on the last day of the month following the month in which production occurred. When paid in kind, production shall be delivered, unless otherwise agreed to by lessor, in merchantable condition on the premises where produced without cost to lessor. Lessee shall not be required to hold such production in storage beyond the last day of the month following the month in which production occurred, nor shall lessee be held liable for loss or destruction of royalty oil or other products in storage from causes beyond the reasonable control of the lessee.

Minimum royalty in lieu of rental of not less than the rental which otherwise would be required for that lease year shall be payable at the end of each lease year beginning on or after a discovery in paying quantities. This minimum royalty may be waived, suspended, or reduced and the above royalty rates may be reduced, for all or portions of the lease if the Secretary determines that such action is necessary to encourage the greatest ultimate recovery of the leased resources, or is otherwise justified.

An interest charge shall be assessed on the late royalty payments or underpayments in accordance with the Federal Oil and Gas Royalty Management Act of 1982 (FOGRMA) (30 U.S.C. 1701). Lessee shall be liable for royalty payments on oil and gas lost or wasted from a lease site when such loss or waste is due to negligence on the part of the operator, or due to the failure to comply with any rules, regulations, orders, or citations issued under FOGRMA or the leasing authority.

Sec. 3 Bonds - A bond shall be filed and maintained for lease operations as required under regulations.

Sec. 4 Diligence, rate of development, unitization, and drainage - Lessee must exercise reasonable diligence in developing and producing, and must prevent unnecessary damage to, loss of, or waste of leased resources. Lessee reserves the right to specify rates of development and production in the public interest and to require lessee to subscribe to a cooperative or unit plan, within 30 days of notice, if deemed necessary for proper development and operation of area, field, or pool embracing these leased lands. Lessee shall drill and produce wells necessary to protect leased lands from drainage or pay compensatory royalty for drainage in amount determined by lessor.

Sec. 5 Documents, evidence, and inspection - Lessee shall file with the proper office of lessor, not later than 30 days after effective date thereof, any contract or evidence of other arrangement for sale or disposal of production. At such times and in such form as lessor may prescribe, lessee shall furnish detailed statements showing amounts and quality of all products removed and sold, proceeds therefrom, and amount used for production purposes or unavoidably lost. Lessee may be required to provide plats and schematic diagrams showing development work and improvements, and reports with respect to parties in interest, expenditures, and depreciation costs. In the form prescribed by lessor, lessee shall keep a daily drilling record, a log, information on well surveys and tests, and a record of subsurface investigations and furnish copies to lessor when required. Lessee shall keep open at all reasonable times for inspection by any authorized officer of lessor, the leased premises and all wells, improvements, machinery, and fixtures thereon, and all books, accounts, maps, and records relative to operations, surveys, or investigations on or in the leased lands. Lessee shall maintain copies of all contracts, sales agreements, accounting records, and documentation such as billings, invoices, or similar documentation that support costs claimed as manufacturing, preparation, and or transportation costs. All such records shall be maintained in lessee's accounting office for future audit by lessor. Lessee shall maintain required records for 6 years after they are generated or, if an audit or investigation is underway, until released of the obligation to maintain such records by lessor.

During existence of this lease, information obtained under this section shall be closed to inspection by the public in accordance with the Freedom of Information Act (5 U.S.C. 552).

Sec. 6 Conduct of operations - Lessee shall conduct operations in a manner that minimizes adverse impacts to the land, air, and water, to cultural, biological, visual, and other resources, and to other land uses or users. Lessee shall take reasonable measures deemed necessary by lessor to accomplish the intent of this section. To the extent consistent with lease rights granted, such measures may include, but are not limited to, modification to siting or design of facilities, timing of operations, and specification of interim and final reclamation measures. Lessee reserves the right to continue existing uses and to authorize future uses upon or in the leased lands, including the approval of easements or rights-of-way. Such uses shall be conditioned so as to prevent unnecessary or unreasonable interference with the rights of lessee.

Prior to disturbing the surface of the leased lands, lessee shall contact lessor to be apprised of procedures to be followed and modifications or reclamation measures that may be necessary. Areas to be disturbed may require inventories or special studies to determine the extent of impacts to other resources. Lessee may be required to complete minor in intensive or short term special studies under guidelines provided by lessor. If, in the conduct of operations, threatened or endangered species, objects of historic or scientific interest, or substantial unanticipated environmental effects are observed, lessee shall immediately contact lessor. Lessee shall cease any operations that would result in the destruction of such species or objects.

Sec. 7 Mining operations - To the extent that impacts from mining operations would be substantially different or greater than those associated with normal drilling operations, lessor reserves the right to deny approval of such operations.

Sec. 8 Extraction of helium - Lessor reserves the option of extracting or having extracted helium from gas production in a manner specified and by means provided by lessor at no expense or loss to lessee or owner of the gas. Lessee shall include in any contract of sale of gas the provision of this section.

Sec. 9 Damages to property - Lessee shall pay lessor for damage to lessee's improvements, and shall save and hold lessor harmless from all claims for damage or harm to persons or property as a result of lease operations.

Form 3130-1 (November 2008)

**AR400126**

Sec. 10. Protection of diverse interests and equal opportunity – Lessee shall ...... when due, all taxes legally assessed and levied under laws of the State or the United States; accord all employees complete freedom of purchase; pay all wages at least twice each month in lawful money of the United States; maintain a safe working environment in accordance with standard industry practices; and take measures necessary to protect the health and safety of the public

Lessor reserves the right to ensure that production is sold at reasonable prices and to prevent monopoly. If lessee operates a pipeline, or owns controlling interest in a pipeline or a company operating a pipeline, which may be operated accessible to oil derived from these leased lands, lessee shall comply with section 28 of the Mineral Leasing Act of 1920

Lessee shall comply with Executive Order No. 11246 of September 24, 1965, as amended, and regulations and relevant orders of the Secretary of Labor issued pursuant thereto. Neither lessee nor lessee's subcontractors shall maintain segregated facilities. During the performance of this lease, the lessee must comply fully with paragraphs (1) through (7) of 41 CFR 60-1.4(a) with respect to employment discrimination on the basis of race, color, religion, sex, or national origin, and must incorporate the requirements set forth in those paragraphs in every subcontract or purchase order, as provided by that regulation.

Sec. 11. Transfer of lease interests and relinquishment of lease – As required by regulations, lessee shall file with lessor any assignment or other transfer of an interest in this lease. Lessee may relinquish this lease or any legal subdivision by filing in the proper office, a written relinquishment, which shall be effective as of the date of filing, subject to the continued obligation of the lessee and surety to pay all accrued rentals and royalties.

Sec. 12. Delivery of premises – At such time as all or portions of this lease are returned to lessor, lessee shall place affected wells in condition for suspension or abandonment, reclaim the land as specified by lessor, and within a reasonable period of time, remove equipment and improvements not deemed necessary by lessor for preservation of producible wells

Sec. 13. Proceedings in case ...... fault – If lessee fails to comply with any provisions of this lease, and the noncompliance continues for 30 days after written notice thereof, this lease shall be subject to cancellation unless or until the leasehold contains:

    (a)  a well capable of production of oil and gas in paying quantities or
    (b)  meets the criteria under 43 CFR 3135.1-5 or

The lease is committed to an approved cooperative or unit plan or communization agreement which:

    (a)  contains a well capable of production of unitized substances in paying quantities or
    (b)  meets the criteria under 43 CFR 3137.70 and 43 CFR 3137.82

This provision shall not be construed to prevent the exercise by lessor of any other legal and equitable remedy, including waiver of the default. As such, remedy or waiver shall prevent later cancellation of the same default occurring at any other time. Lessee shall be subject to applicable provisions and penalties of FOGRMA (30 U S C 1701)

Sec. 14. Heirs and successors-in-interest – Each obligation of this lease shall extend to and be binding upon and every benefit hereof shall inure to ... the heirs, executors, administrators, successors, beneficiaries, or assignees of the respective parties hereto

**2016 FEB 26 PM 1:01**

BLM AK SLO BLM
ANCHORAGE, AK

---

## INSTRUCTIONS

A. General

  1. The front of this form is to be completed only by parties filing for a noncompetitive lease. The BLM will complete front of the form for all other types of leases.

  2. Entries must be typed or printed plainly in ink. Offeror must sign Item 4 in ink.

  3. An original and two copies of this offer must be prepared and filed in the proper BLM State Office. See regulations at 43 CFR 1821.2-1 for office locations.

  4. If more space is needed, additional sheets must be attached to each copy of the form submitted.

B. Special:

  Item 1 - Enter offeror's name and billing address.

  Item 2 - A single tract number and Sale Date shall be the only acceptable description.

  Item 3 - This space will be completed by the United States.

### PAPERWORK REDUCTION ACT STATEMENT

The Paperwork Reduction Act of 1990 (44 U.S.C. 3501 et seq.) requires us to inform you that:

1. This information is being collected pursuant to the law.

2. This information will be used to create and maintain a record of oil and gas lease activity.

3. Response to this request is required to obtain a benefit.

**EFFECT OF NOT PROVIDING INFORMATION - If you do not provide all the information, the offer may be rejected. See regulations at 43 CFR Part 3130.**

Form AK 3130-1 (November 2008)

**Exhibit 7, Page 132 of 137**

**UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF LAND MANAGEMENT
ALASKA STATE OFFICE**
## OFFER TO LEASE AND LEASE FOR OIL AND GAS

Serial No.

AA-094402

The undersigned (reverse) offers to lease all or any of the lands in Item 2 that are available for lease pursuant to the Mineral Leasing Act of 1920, as amended and supplemented (30 U.S.C. 181 et seq.), the Mineral Leasing Act for Acquired Lands of 1947, as amended (30 U.S.C. 351-359), the Attorney General's Opinion of April 2, 1941 (40 Op. Atty. Gen. 41), or the Naval Petroleum Reserve Production Act of 1976 (42 U.S.C. 6501 et seq.), as amended.

**READ INSTRUCTIONS BEFORE COMPLETING**

| 1. Name | ConocoPhillips Alaska, Inc. | and | Anadarko E&P Onshore, LLC. |
|---|---|---|---|
| Street | P.O. Box 100360 | | 1099 18th Street, Suite 1800 |
| City, State, Zip Code | Anchorage, AK 99510-0360 | | Denver, CO 80202 |

2. This application/offer/lease is for Public Domain Lands in the National Petroleum Reserve - Alaska (NPR-A)

Legal description of land requested:          *Tract No.:  2016-H-016          * Sale Date (m/d/y):  Dec  /  14  /  2016

| T. | R. | Meridian | State | County |
|---|---|---|---|---|
| T. 8 N. | R. 1 W. | Umiat Meridian | Alaska | |

Sections 19, 20, 21, 28 to 33

Stipulations: D, E, G, K
Best Management Practices

Total acres applied for  5,608

Amount remitted: Filing fee $160.00          Rental fee $28,040.00          Total $28,200.00

**DO NOT WRITE BELOW THIS LINE**

3. Land included in lease:

| T. | R. | Meridian | State | County |
|---|---|---|---|---|
| T. 8 N. | R. 1 W. | Umiat Meridian | Alaska | |

Sections 19, 20, 21, 28 to 33

Stipulations: D, E, G, K
Best Management Practices

U.S.A. ALASKA STATE OFFICE
PUBLIC INFO CENTER
AK-954

2017 MAR 24 AM 10: 16

RECEIVED

Total acres in lease  5,608

Rental retained $28,040.00

This lease is issued granting the exclusive right to drill for, mine, extract, remove and dispose of all the oil and gas (except helium) in the lands described in Item 3 together with the right to build and maintain necessary improvements thereupon for the term indicated below, subject to renewal or extension in accordance with the appropriate leasing authority. Rights granted are subject to applicable laws, the terms, conditions, and attached stipulations of this lease, the Secretary of the Interior's regulations and formal orders in effect as of lease issuance, and to regulations and formal orders hereafter promulgated when not inconsistent with lease rights granted or specific provision of this lease.

NOTE: This lease is issued to the high bidder pursuant to his/her duly executed bid or nomination form submitted under 43 CFR Part 3130 and is subject to the provisions of that bid or nomination and those specified on this form.

Type and primary term of lease:

THE UNITED STATES OF AMERICA

[    ] Noncompetitive lease (ten years)

[    ] Competitive lease (ten years)

[ X ] Other Competitive NPR-A Lease (ten years)

by _____ (Signing Officer)

State Director          MAR 2 9 2017
(Title)          (Date)

EFFECTIVE DATE OF LEASE          APR - 1 2017

4. (a) Undersigned certifies that (1) offeror is a citizen of the United States; an association of such citizens; a municipality; or a corporation organized under the laws of the United States or any State or Territory thereof; (2) all parties holding an interest in the offer are in compliance with 43 CFR Part 3132.1 and the leasing authorities; (3) offeror is not considered a minor under the laws of the State in which the lands covered by this offer are located.

(b) Undersigned agrees that signature to this offer constitutes acceptance of this lease, including all terms, conditions, and stipulations of which offeror has been given notice, and any amendment or separate lease that may include any land described in this offer open to leasing at the time this offer was filed but omitted for any reason from this lease. The offeror further agrees that this offer cannot be withdrawn, either in whole or in part.

This offer will be rejected and will afford offeror no priority if it is not properly completed and executed in accordance with the regulations, or if it is not accompanied by the required payments. 18 U.S.C. Sec. 1001 makes it a crime for any person knowingly and willfully to make to any Department or agency of the United States any false, fictitious or fraudulent statements or representations as to any matter within its jurisdiction.

NOTICE

The Privacy Act of 1974 and the regulations at 43 CFR 2.48(d) provide that you be furnished with the following information:

AUTHORITY: 50 Stat. 900; 25 U.S.C. 500

PRINCIPAL PURPOSE: The primary uses of the records are (1) to determine your qualification to receive an oil and gas lease; and (2) to provide information concerning oil and gas leases for administrative and public use.

ROUTINE USES: BLM and the Department of the Interior (DOI) may disclose your information on this form: (1) to members of the public who have a need for the information that is maintained by BLM for public record; (2) to the U.S. Department of Justice, court, or other adjudicative body when DOI determines the information is necessary and relevant to litigation; (3) to appropriate Federal, State, local or foreign agencies responsible for investigating, prosecuting, enforcing or implementing this statute, regulation, or lease; and (4) to a congressional office when you request the assistance of the Member of Congress in writing.

EFFECT OF NOT PROVIDING THIS INFORMATION: If you do not furnish all the information required by this form, your application may be rejected.

Duly executed this _____ day of _____, 20 _____.    SEE ATTACHED SIGNATURE PAGES

(Signature of Lessee or Attorney-in-fact)

LEASE TERMS

Sec. 1. Rentals - Rentals must be paid to the proper office of lessor in advance of each lease year. Annual rental rates per acre or fraction thereof are:

(a) Noncompetitive lease, $1.50 for the first 5 years; thereafter $2.00
(b) Competitive lease, $1.50, for the first 5 year; thereafter $2.00
(c) Other, see attachment; or for NPR-A:  $5.00 for Area H; $3.00 for Area L; or
     as specified in the detailed statement of sale

If this lease is a portion thereof is committed to an approved cooperative or unit plan which includes a well capable of producing leased resources, or a well that meets criteria in 43 CFR 3137.82 and the plan contains a provision for allocation of production, royalties shall be paid on the production allocated to this lease. However, annual rentals shall continue to be due at the rate specified in (a), (b), or (c) for those lands not within a participating area.

Failure to pay annual rent, within 30 days after receipt of a Notice of Delinquency shall cause this lease to terminate. Rentals may be waived, reduced, or suspended by the Secretary upon a sufficient showing by lessee.

Sec. 2. Royalties – Royalties must be paid to the proper office of lessor. Royalties shall be computed in accordance with regulations on production removed or sold. Royalty rates are:

(a) Noncompetitive lease, 12 ½%;
(b) Competitive lease, 12 ½%;
(c) Other, see attachment; or for NPR-A: 16 2/3% for Area H; 12 ½% for Area L; or
     as specified in the detailed statement of sale.

Lessor reserves the right to specify whether royalty is to be paid in value or in kind, and the right to establish reasonable minimum values on products after giving lessee notice and an opportunity to be heard. When paid in value, royalties shall be due and payable on the last day of the month following the month in which production occurred. When paid in kind, production shall be delivered, unless otherwise agreed to by lessor, in merchantable condition on the premises where produced without cost to lessor. Lessee shall not be required to hold such production in storage beyond the last day of the month following the month in which production occurred, nor shall lessee be held liable for loss or destruction of royalty oil or other products in storage from causes beyond the reasonable control of the lessee.

Minimum royalty in lieu of rental of not less than the rental which otherwise would be required for that lease year shall be payable at the end of each lease year beginning on or after a discovery in paying quantities. This minimum royalty may be waived, suspended, or reduced and the above royalty rates may be reduced, for all or portions of the lease if the Secretary determines that such action is necessary to encourage the greatest ultimate recovery of the leased resources, or is otherwise justified.

An interest charge shall be assessed on the late royalty payments or underpayments in accordance with the Federal Oil and Gas Royalty Management Act of 1982 (FOGRMA) (30 U.S.C. 1701). Lessee shall be liable for royalty payments on oil and gas loss or wasted from a lease site when such loss or waste is due to negligence on the part of the operator, or due to the failure to comply with any rules, regulations, orders, or citations issued under FOGRMA or the leasing authority.

Sec. 3. Bonds – A bond shall be filed and maintained for lease operations as required under regulations.

Sec. 4. Diligence, rate of development, unitization, and drainage – Lessee must exercise reasonable diligence in developing and producing, and must prevent unnecessary damage to, loss of, or waste of leased resources. Lessor reserves the right to specify rates of development and production in the public interest and to require lessee to subscribe to a cooperative or unit plan, within 30 days of notice, if deemed necessary for proper development and operation of area, field, or pool embracing these leased lands. Lessee shall drill and produce wells necessary to protect leased lands from drainage or pay compensatory royalty for drainage in amount determined by lessor.

Sec. 5. Documents, evidence, and inspection – Lessee shall file with the proper office of lessor, not later than 30 days after effective date thereof, any contract or evidence of other arrangement for sale or disposal of production. At such times and in such form as lessor may prescribe, lessee shall furnish detailed statements showing amounts and quality of all products removed and sold, proceeds therefrom, and amount used for production purposes or unavoidably lost. Lessee may be required to provide plats and schematic diagrams showing development work and improvements, and furnish reports with respect to parties in interest, expenditures, and depreciation costs. In the form prescribed by lessor, lessee shall keep a daily drilling record, a log, information on well surveys and tests, and a record of subsurface investigations and furnish copies to lessor when required. Lessee shall keep open at all reasonable times for inspection by any authorized officer of lessor, the leased premises and all wells, improvements, machinery, and fixtures thereon, and all books, accounts, maps, and records relative to operations, surveys, or investigations on or in the leased lands. Lessee shall maintain copies of all contracts, sales agreements, accounting records, and documentation such as billings, invoices, or similar documentation that support costs claimed as manufacturing, preparation, and/or transportation costs. All such records shall be maintained at lessee's accounting office for future audit by lessor. Lessee shall maintain required records for 6 years after they are generated or, if an audit or investigation is underway, until released of the obligation to maintain such records by lessor.

During existence of this lease, information obtained under this section shall be closed to inspection by the public in accordance with the Freedom of Information Act (5 U.S.C. 552)

Sec. 6. Conduct of operations – Lessee shall conduct operations in a manner that minimizes adverse impacts to the land, air, and water, to cultural, biological, visual, and other resources, and to other land uses or users. Lessee shall take reasonable measures deemed necessary by lessor to accomplish the intent of this section. To the extent consistent with lease rights granted, such measures may include, but are not limited to, modification to siting or design of facilities, timing of operations, and specification of interim and final reclamation measures. Lessor reserves the right to continue existing uses and to authorize future uses upon or in the leased lands, including the approval of easements or rights-of-way. Such uses shall be conditioned so as to prevent unnecessary or unreasonable interference with the rights of lessee.

Prior to disturbing the surface of the leased lands, lessee shall contact lessor to be apprised of procedures to be followed and modifications or reclamation measures that may be necessary. Areas to be disturbed may require inventories or special studies to determine the extent of impacts to other resources. Lessee may be required to complete minor inventories or short term special studies under guidelines provided by lessor. If, in the conduct of operations, threatened or endangered species, objects of historic or scientific interest, or substantial unanticipated environmental effects are observed, lessee shall immediately contact lessor. Lessee shall cease any operations that would result in the destruction of such species or objects.

Sec. 7. Mining operations – To the extent that impacts from mining operations would be substantially different or greater than those associated with normal drilling operations, lessor reserves the right to deny approval of such operations.

Sec. 8. Extraction of helium – Lessor reserves the option of extracting or having extracted helium from gas production in a manner specified and by means provided by lessor at no expense or loss to lessee or owner of the gas. Lessee shall include in any contract of sale of gas the provision of this section.

Sec. 9. Damages to property – Lessee shall pay lessor for damage to lessee's improvements, and shall save and hold lessor harmless from all claims for damage or harm to persons or property as a result of lease operations.

Sec. 10. Protection of diverse interests and equal opportunity – Lessee shall pay when due, all taxes legally assessed and levied under laws of the State or the United States; accord all employees complete freedom of purchase; pay all wages at least twice each month in lawful money of the United States, maintain a safe working environment in accordance with standard industry practices; and take measures necessary to protect the health and safety of the public.

Lessee reserves the right to ensure that production is sold at reasonable prices and to prevent monopoly. If lessee operates a pipeline, or owns controlling interest in a pipeline or a company operating a pipeline, which may be operated accessible to oil derived from these leased lands, lessee shall comply with section 28 of the Mineral Leasing Act of 1920.

Form AK 3130-1 (November 2008)

AR400129

segregated facilities. During the performance of this lease, the lessee must comply fully with paragraphs (1) through (7) of 41 CFR 60-1.4(a) with respect to employment discrimination on the basis of race, color, religion, sex, or national origin, and must incorporate the requirements set forth in those paragraphs in every subcontract or purchase order, as provided by that regulation.

Sec. 11. Transfer of lease interests and relinquishment of lease – As required by regulations, lessee shall file with lessor any assignment or other transfer of an interest in this lease. Lessee may relinquish this lease or any legal subdivision by filing in the proper office, a written relinquishment, which shall be effective as of the date of filing, subject to the continued obligation of the lessee and surety to pay all accrued rentals and royalties.

Sec. 12. Delivery of premises – At such time as all or portions of this lease are returned to lessor, lessee shall place affected wells in condition for suspension or abandonment, reclaim the land as specified by lessor, and within a reasonable period of time, remove equipment and improvements not deemed necessary by lessor for preservation of producible wells.

Sec. 13. Proceedings in case of default – If lessee fails to comply with any provisions of this lease, and the noncompliance continues for 30 days after written notice thereof, this lease shall be subject to cancellation unless or until the leasehold contains;
    (a)  a well capable of production of oil and gas in paying quantities or
    (b)  meets criteria under 43 CFR 3135.1-5 or
The lease is committed to an approved cooperative or unit plan or communitization agreement which,
    (a)  contains a well capable of production of unitized substances in paying quantities or
    (b)  meets the criteria under 43 CFR 3137.70 and 43 CFR 3137.82 .

This provision shall not be construed to prevent the exercise by lessor of any other legal and equitable

remedy, including waiver of the default. As such, remedy or waiver shall prevent later cancellation of the same default occurring at any other time. Lessee shall be subject to applicable provisions and penalties of FOGRMA (30 U.S.C. 1701).

Sec. 14. Heirs and successors-in-interest – Each obligation of this lease shall extend to and be binding upon and every benefit hereof shall inure to:  the heirs, executors, administrators, successors, beneficiaries, or assignees of the respective parties hereto.

---

INSTRUCTIONS

A. General

1. The front of this form is to be completed only by parties filing for a noncompetitive lease. The BLM will complete front of the form for all other types of leases.

2. Entries must be typed or printed plainly in ink. Offeror must sign Item 4 in ink.

3. An original and two copies of this offer must be prepared and filed in the proper BLM State Office. See regulations at 43 CFR 1821.2-1 for office locations.

4. If more space is needed, additional sheets must be attached to each copy of the form submitted.

B. Special:

Item 1 - Enter offeror's name and billing address.

Item 2 - A single tract number and Sale Date shall be the only acceptable description.

Item 3 - This space will be completed by the United States.

**PAPERWORK REDUCTION ACT STATEMENT**

The Paperwork Reduction Act of 1990 (44 U.S.C. 3501 et seq.) requires us to inform you that:

1. This information is being collected pursuant to the law.

2. This information will be used to create and maintain a record of oil and gas lease activity.

3. Response to this request is required to obtain a benefit.

**EFFECT OF NOT PROVIDING INFORMATION - If you do not provide all the information, the offer may be rejected. See regulations at 43 CFR Part 3130.**

BLM ALASKA STATE OFFICE
PUBLIC INFO CENTER
AK-954
2017 MAR 24  AM 10: 16
RECEIVED

Form AK 3130-1 (November 2008)

**Exhibit 7, Page 135 of 137**

AR400130

SIGNATORY PAGE FOR U.S. DEPT. OF INTERIOR B.L.M. OFFER TO

LEASE & LEASE FOR OIL & GAS

SERIAL NO. <u>AA-094402</u>

**CONOCOPHILLIPS ALASKA, INC.**

Lessee's Signature
John F. Schell, Jr.
Attorney-in-Fact
Lessee's Name (Print or Type) & Title

<u>March 15, 2017</u>
Date

<u>ConocoPhillips Alaska, Inc.</u>
Company Name

THE UNITED STATES OF AMERICA )
) ss.
STATE OF_____ALASKA_____ )

This certifies that on the <u>15th</u> day of <u>March</u>, <u>2017,</u> before me, a notary public in and for the State of <u>Alaska</u>, duly commissioned and sworn, personally appeared <u>John F. Schell, Jr.</u>, to me known and known to me to be the person described in, and who executed the foregoing lease, who then after being duly sworn according to law, acknowledged to me under oath that he executed same freely and voluntarily for the uses and purposes therein mentioned. WITNESS my hand and official seal the day and year in this certificate first above written.

STATE OF ALASKA
NOTARY PUBLIC
REBECCA SWENSEN
My Commission Expires Aug. 27, 2020

Notary Public in and for the State of Alaska
My Commission expires: August 27,2020

AR-954
PUBLIC INFO CENTER
BLM ALASKA STATE OFFICE
2017 MAR 24 AM 10:16

RECEIVED

AR400131

SIGNATORY PAGE FOR U.S. DEPT. OF INTERIOR B.L.M. OFFER TO

LEASE & LEASE FOR OIL & GAS

SERIAL NO. AA-094402

**Anadarko E&P Onshore, LLC.**

_____
Lessee's Signature

Michael A. Nixson
    Agent and Attorney – in – Fact
Lessee's Name (Print or Type) & Title

March 21 2017
Date

Anadarko E&P Onshore, LLC
Company Name

THE UNITED STATES OF AMERICA )
                                                          ) ss.
STATE OF COLORADO                     )

This certifies that on the 21 day of March , 2017, before me, a notary public in and for the State of Colorado, duly commissioned and sworn, personally appeared Michael A. Nixson to me known and known to me to be the person described in, and who executed the foregoing lease, who then after being duly sworn according to law, acknowledged to me under oath that he executed same freely and voluntarily for the uses and purposes therein mentioned. WITNESS my hand and official seal the day and year in this certificate first above written.

CORRINA M. SCHERBARTH
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20114010340
MY COMMISSION EXPIRES 02/17/2019

Notary Public in and for the State of Colorado
My Commission expires: 2/17/2019

RECEIVED

2017 MAR 24 AM 10:17

BLM ALASKA STATE OFFICE
PUBLIC INFO CENTER
AK-954