Jeremy C. Lieb
Erik Grafe
Ian S. Dooley
Carole A. Holley
EARTHJUSTICE
441 W 5th Avenue, Suite 301
Anchorage, AK 99501
T: 907.277.2500
E: jlieb@earthjustice.org
E: egrafe@earthjustice.org
E: idooley@earthjustice.org
E: cholley@earthjustice.org

Eric P. Jorgensen
EARTHJUSTICE
325 Fourth Street
Juneau, AK 99801
T: 907.586.2751
E: ejorgensen@earthjustice.org

*Attorneys for Plaintiffs Center for Biological Diversity, Defenders of Wildlife, Friends of the Earth, and Greenpeace, Inc.*

Kristen Monsell (*pro hac vice*)
CENTER FOR BIOLOGICAL DIVERSITY
1212 Broadway, St. #800
Oakland, CA 94612
T: 510.844.7100
E: kmonsell@biologicaldiversity.org

*Attorneys for Plaintiff Center for Biological Diversity*

Cecilia Segal (*pro hac vice*)
Ann Alexander (*pro hac vice*)
NATURAL RESOURCES DEFENSE COUNCIL
111 Sutter St., 21st floor
San Francisco, CA 94104
T: 415.875.6100 / 415.875.6190
E: csegal@nrdc.org
E: aalexander@nrdc.org

*Attorneys for Plaintiff Natural Resources Defense Council*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

CENTER FOR BIOLOGICAL DIVERSITY *et al.*,

    *Plaintiffs*,

    v.

BUREAU OF LAND MANAGEMENT *et al.*,

    *Defendants*,

CONOCOPHILLIPS ALASKA, INC.; ARCTIC
SLOPE REGIONAL CORPORATION; NORTH
SLOPE BOROUGH; KUUKPIK CORPORATION;
and STATE OF ALASKA,

    *Intervenor-Defendants.*

Case No. 3:23-cv-00061-SLG

**PLAINTIFFS' RULE 62(d) MOTION FOR INJUNCTION PENDING APPEAL**

Pursuant to Rule 62(d) of the Federal Rules of Civil Procedure, Plaintiffs move for an injunction pending appeal of the Court's order denying Plaintiffs' motion for preliminary injunction. Doc. 82. The Bureau of Land Management (BLM) has issued permits necessary for ConocoPhillips Alaska, Inc. (ConocoPhillips) to proceed with construction of the Willow Master Development Plan ("Willow Project" or "Project"), ConocoPhillips has begun ice road construction and plans to break ground at the mine site today, April 4, 2023. Doc. 23, ¶7. An injunction pending appeal is necessary to maintain the status quo and to preserve the possibility for Plaintiffs to obtain effective and complete relief. Plaintiffs respectfully request that the Court enjoin implementation of Defendants' approval of the Willow Project, including authorization of construction activities planned for this winter while the appeal is pending. In the alternative, Plaintiffs request that the Court grant a short-term injunction, until April 14, 2023, to preserve the status quo while Plaintiffs seek an emergency injunction from the Ninth Circuit Court of Appeals.

The standard for an injunction pending appeal is similar to the standard for issuance of a preliminary injunction. *See Se. Alaska Conservation Council v. U.S. Army Corps of Eng'rs*, 472 F.3d 1097, 1100 (9th Cir. 2006). However, even when a district court denies a request for preliminary injunction, the same court may enter an injunction pending appeal given the importance of preserving the status quo when the plaintiffs have raised serious legal questions and will suffer irreparable harm absent injunctive relief while the matter is pending on appeal. *See Sovereign Iñupiat for a Living Arctic v.*

*Bureau of Land Mgmt.*, Case Nos. 3:20-cv-00290-SLG & 3:20-cv-00308-SLG, 2021 WL 454280, at *4 (Feb. 6, 2021) (granting two-week injunction pending appeal due in part to a likelihood of irreparable harm in the absence of an injunction); *Conservation Cong. v. U.S. Forest Serv.*, 803 F. Supp. 2d 1126, 1134 (E.D. Cal. 2011) (granting plaintiff a limited injunction of ten days to seek a stay from the Ninth Circuit, "because of the potential for irreparable harm," despite not raising serious questions on the merits); *W. Land Exch. Project v. Dombeck*, 47 F. Supp. 2d 1216, 1218-19 (D. Or. 1999) (denying injunction pending appeal but ordering 60-day delay in land exchange to permit groups to move to the Ninth Circuit for an injunction pending appeal).

Plaintiffs believe, respectfully, that the Court's denial of Plaintiffs' preliminary injunction motion is based on several consequential errors.

The Court's conclusion that Plaintiffs failed to demonstrate irreparable harm from this winter's construction activities is predicated on three key errors. First, the Court erred in its conclusion that Plaintiffs' declarant Dr. Rosemary Ahtuangaruak provided evidence different than that which the Court credited as demonstrating irreparable harm from the first Willow approval. Doc. 82 at 26-27. The Court cited Dr. Ahtuangaruak's prior testimony that the mine would harm her ability to "'hunt caribou where the mine is going to be located,'" Doc. 82 at 26 (quoting *Sovereign Iñupiat for a Living Arctic*, 2021 WL 454280, at *3), but then concluded that her current testimony had changed, indicating that she no longer uses the area for caribou hunting, citing an separate statement about different harm relating to boat access to the Tiŋmiaqsiuġvik River where

it meets the Colville River.  *Id.* at 26-27.  However, Dr. Ahtuangaruak's current declaration contains the very same evidence of use of the mining area as her prior declaration.  It describes that "[w]e hunt caribou where the mine is going to be located," that the "area, like the whole Willow Project area, is part of our traditional use areas," and that she "worr[ies] about the impacts that gravel mine will have on caribou."  Doc. 24-23, ¶54; *compare* Case 3:20-cv-00308-JWS, Doc. 9-13, ¶36.  This is evidence of irreparable harm.

Second, the Court faults Dr. Ahtuangaruak for failing to show that she would not be able to obtain caribou for subsistence use if unable to do so at the mine site.  Doc. 82 at 27.  But, as the Ninth Circuit has held, "[t]his argument proves too much."  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  Were this the standard, "a plaintiff c[ould] never suffer irreparable injury resulting from environmental harm in a[n] . . . area as long as there are other areas . . . that are not harmed."  *Id.*  Thus, the focus of the inquiry is on harm to the plaintiffs' use of the area at issue, not on the availability of different areas to use.  *See Sierra Club v. Trump*, 963 F.3d 874, 895 (9th Cir. 2020), *vacated and remanded sub nom. Biden v. Sierra Club*, 142 S. Ct. 46 (2021) (rejecting argument that harm was not irreparable because "members have plenty of other spaces to enjoy").

Third, the Court also erred in rejecting Plaintiffs' evidence of irreparable harm to their members' caribou hunting because they failed to demonstrate "a likelihood of irreparable harm to subsistence caribou hunters" generally.  Doc. 82 at 23 (citing

"competing narratives from subsistence hunters").  As described above, Dr. Ahtuangaruak has provided evidence that this winter's activities will harm *her* subsistence hunting of caribou.  This evidence of individual harm suffices to support an injunction.  *See Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008) (a plaintiff must establish "that *he* is likely to suffer irreparable harm" (emphasis added)).  The fact that other subsistence users may find roads useful for *their* subsistence activities does not rebut Dr. Ahtuangaruak's specific evidence of harm to her interests.

Plaintiffs have also established that the balance of equities and public interest factors favor relief.  The Court made three errors in concluding otherwise.

First, the Court's conclusion that Plaintiffs would not likely suffer irreparable harm infected the Court's balancing of the equities.  Because the Court mistakenly concluded that Dr. Ahtuangaruak would not likely be harmed by the construction of the mine, it did not properly balance the likely permanent harm resulting from mine construction against the temporary effects of a preliminary injunction.  While the Court is correct that economic harm may be considered, it overlooked that the primary economic harm at issue here—the unavailability of seasonal jobs associated with winter construction activities—though real, is temporary.  If Plaintiffs' suit is unsuccessful, then the Willow Project will proceed and the seasonal jobs "will be realized."  *League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 765-66 (9th Cir. 2014) (reversing district court's denial of preliminary injunction).  In contrast, many of the harms to Plaintiffs' members, including Dr. Ahtuangaruak, and to

the environment from this winter's construction activities are both immediate *and permanent*. *See* Doc. 24 at 22-24 & Doc. 69 at 19-23 (detailing the long-term impacts mining and roadbuilding activities would have on the area, and on the members and wildlife who use it); Doc. 54 at 47 (citing Mr. Nukapigak's statement that "[i]n fifty or a hundred years," the roads "will still be there"); *see also Sovereign Iñupiat for a Living Arctic,* 2021 WL 454280, at *3 (decision granting injunction pending appeal based in part on a conclusion that "once ConocoPhillips begins blasting to remove the overburden at the mine site … the landscape will be irreparably altered"). Plaintiffs' irreparable, permanent injuries "outweigh the temporary delay intervenors face in receiving a part of the economic benefits of the project." *Connaughton*, 752 F.3d at 766.

Second, despite finding unpersuasive ConocoPhillips' argument that a temporary injunction would risk the viability of the whole Project, Doc. 82 at 36 n.144, the Court credited certain allegations of harm that would occur only if the Project as a whole were not built. For example, the Court stated that a preliminary injunction would negatively affect workforce development and training programs, tax revenues, grant-making capabilities, and dividend income. *Id.* at 35-6. But neither the Court nor Defendants established that those economic harms would result from an injunction halting only this winter's construction activities. Doc. 50 at 4 (describing harm as the "*delaying* of the Project's many benefits" (emphasis added)). Similarly, the Court noted that some subsistence hunters believe the road extension from GMT2 would be beneficial for both hunting and search and rescue. Doc. 82 at 39. But those benefits would be only partly

realized this winter if construction were to proceed. *See* Doc. 58-2, ¶¶9-10 (discussing benefits of "a road all the way out to Willow"); *but see id.*, ¶10 (stating that "[e]ven if just the first part of the road was built, I would use that"). The Court erred to the extent it relied on this evidence without "proportionally diminish[ing] total harms to reflect only the time when a preliminary injunction would be in place." *Connaughton*, 752 F.3d at 767.

Third, the Court placed too much weight on the Alaska legislature's and congressional delegation's support for the Project. To begin, those officials' support is overwhelmingly based on the benefits of the Project as a whole, which are not relevant to the motion. For example, while the state legislature's resolution declares that construction delay "undermines the values and benefits of the project," the benefits cited include royalties, energy security, and long-term community benefits. Doc. 55-3 at 3-4. The officials' amicus brief likewise touts Willow's purported energy security benefits and the revenue that would be generated "over the life of the Project." Doc. 55-1 at 12-15. And though it references jobs and other economic opportunities, the brief assumes that they will be "los[t]" or "kill[ed]" by an injunction. *See id.* at 14. As explained above, however, immediate economic benefits such as seasonal jobs "will not be completely foregone," only temporarily delayed. *Connaughton*, 752 F.3d at 767. Finally, the Court's reliance on *Stormans v. Selecky*, 586 F.3d 1109 (9th Cir. 2009), and *Golden Gate Rest. Ass'n v. City & County of San Francisco*, 512 F.3d 1112 (9th Cir. 2008), is misplaced. Those cases involved state-enacted rules and ordinances that were

the subject of the appeals; the Alaska legislature's resolution is not being litigated and has no legal effect. *See Golden Gate*, 512 F.3d at 1126-27 ("The public interest may be declared in the form of *a statute*." (quoting Charles Alan Wright et al., *Federal Practice and Procedure* § 2948.4 (2d ed. 1995)) (emphasis added)).[1] Meanwhile, the federal statutes directly implicated by this case—NEPA and the Reserves Act—reflect Congress' intent that oil and gas development be accompanied by careful analysis and protection of affected environmental resources. *Contra* Doc. 82 at 42-43.

Plaintiffs satisfy the test for obtaining an injunction pending appeal.

Respectfully submitted this 4th day of April, 2023.

> s/ *Erik Grafe*
> _____
> Erik Grafe (Alaska Bar No. 0804010)
> Jeremy C. Lieb (Alaska Bar No. 1810088)
> Ian S. Dooley (Alaska Bar No. 2006059)
> Carole A. Holley (Alaska Bar No. 0611076)
> Eric P. Jorgensen (Alaska Bar No. 8904010)
> EARTHJUSTICE
>
> *Attorneys for Plaintiffs Center for Biological Diversity,*
> *Defenders of Wildlife, Friends of the Earth, and Greenpeace,*
> *Inc.*
>
> s/ *Kristen Monsell*
> _____
> Kristen Monsell (California Bar No. 304793) (*pro hac vice*)
> CENTER FOR BIOLOGICAL DIVERSITY
>
> *Attorneys for Plaintiff Center for Biological Diversity*

_____

[1] *Burford v. Sun Oil Co.*, 319 U.S. 315, 317-18 (1943), is even further afield; that case considered whether a federal court should exercise its diversity jurisdiction to decide matters of state law.

*s/ Cecilia Segal*

Cecilia Segal (California Bar No. 310935) (*pro hac vice*)
Ann Alexander (California Bar No. 321751) (*pro hac vice*)
NATURAL RESOURCES DEFENSE COUNCIL

*Attorneys for Plaintiff Natural Resources Defense Council*

**CERTIFICATE OF COMPLIANCE WITH WORD LIMITS**

I certify that this document contains 1,781 words, excluding items exempted by Local Civil Rule 7.4(a)(4), and complies with the word limits of Local Civil Rule 7.4(a)(1).

Respectfully submitted this 4th day of April, 2023.

_s/ Erik Grafe_
Erik Grafe