Jeremy C. Lieb
Erik Grafe
Ian S. Dooley
Carole A. Holley
EARTHJUSTICE
441 W 5th Avenue, Suite 301
Anchorage, AK 99501
T: 907.277.2500
E: jlieb@earthjustice.org
E: egrafe@earthjustice.org
E: idooley@earthjustice.org
E: cholley@earthjustice.org

Eric P. Jorgensen
EARTHJUSTICE
325 Fourth Street
Juneau, AK 99801
T: 907.586.2751
E: ejorgensen@earthjustice.org

*Attorneys for Plaintiffs Center for Biological Diversity, Defenders of Wildlife, Friends of the Earth, and Greenpeace, Inc.*

Kristen Monsell (*pro hac vice*)
CENTER FOR BIOLOGICAL
DIVERSITY
1212 Broadway, St. #800
Oakland, CA 94612
T: 510.844.7100
E: kmonsell@biologicaldiversity.org

*Attorneys for Plaintiff Center for Biological Diversity*

Cecilia Segal (*pro hac vice*)
NATURAL RESOURCES DEFENSE
COUNCIL
111 Sutter St., 21st floor
San Francisco, CA 94104
T: 415.875.6100
E: csegal@nrdc.org

Michelle Wu (*pro hac vice*)
NATURAL RESOURCES DEFENSE
COUNCIL
40 West 20th St., 11th Floor
New York, NY 10011
T: 646.889.1489
E: michellewu@nrdc.org

*Attorneys for Plaintiff Natural Resources Defense Council*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY *et al.*, </br></br>*Plaintiffs*, </br></br>v. </br></br>BUREAU OF LAND MANAGEMENT *et al.*, </br></br>*Defendants*, </br></br>CONOCOPHILLIPS ALASKA, INC. *et al.*, </br></br>*Intervenor-Defendants.* | Case No. 3:23-cv-00061-SLG |

**PLAINTIFFS' RULE 62(d) MOTION FOR INJUNCTION PENDING APPEAL**

Pursuant to Federal Rule of Civil Procedure 62(d) and Federal Rule of Appellate Procedure 8(a)(1), Plaintiffs move for an injunction pending appeal of the Court's November 9, 2023, order and judgment. Docs. 184, 185. Intervenor-Defendant ConocoPhillips Alaska, Inc. ("ConocoPhillips") intends to proceed with the Willow Master Development Plan ("Willow" or "Project") by resuming surface-disturbing work—including constructing miles of pipeline and roads—on December 21, 2023. Doc. 153-2, ¶¶7, 9. An injunction pending appeal is necessary to maintain current conditions on the ground and preserve the possibility for Plaintiffs to obtain effective and complete relief. Plaintiffs request that the Court enjoin implementation of Defendant Bureau of Land Management's (BLM) approval of the Project, including authorization of construction planned to resume this winter, for the duration of the appeal. In the alternative, Plaintiffs request that the Court grant a short-term injunction to preserve current conditions on the ground while Plaintiffs seek an emergency injunction from the Ninth Circuit Court of Appeals.

The standard for an injunction pending appeal is similar to the standard for a preliminary injunction: (1) a likelihood of success on the merits, (2) irreparable harm absent preliminary relief, (3) the balance of equities favors relief, and (4) an injunction serves the public interest. *See Se. Alaska Conservation Council v. U.S. Army Corps of Eng'rs*, 472 F.3d 1097, 1100 (9th Cir. 2006). Courts, including this one, have also entered short-term injunctions to allow movants time to seek injunctive relief from the appellate court where movants raised serious legal questions and demonstrated a risk of

irreparable harm. *See Sovereign Iñupiat for a Living Arctic v. BLM*, No. 3:20-cv-00290-SLG, 2021 WL 454280, at *4 (D. Alaska Feb. 6, 2021) (entering limited injunction for 14 days or until the Ninth Circuit ruled on any motion for an injunction pending appeal in that court given "strong likelihood of irreparable environmental consequences"); *Conservation Cong. v. U.S. Forest Serv.*, 803 F. Supp. 2d 1126, 1134 (E.D. Cal. 2011) (denying an injunction pending appeal in a case challenging a timber sale, but "because of the potential for irreparable harm," granting plaintiff a limited injunction to seek a stay from the Ninth Circuit).

## I. Plaintiffs are likely to succeed on the merits.

Plaintiffs acknowledge the Court's merits ruling, Doc. 184, and will not restate their arguments here. *See Masters Software, Inc. v. Discovery Commc'ns, Inc.*, No. C10-405RAJ, 2010 WL 11692803, at *3 (W.D. Wash. Aug. 13, 2010). Nonetheless, with respect for the Court's conclusions, Plaintiffs stand by the arguments in their summary judgment briefing and believe they are likely to succeed on the merits of their claims that BLM violated the National Environmental Policy Act (NEPA) by failing to consider a reasonable range of alternatives and by failing to consider Willow's reasonably foreseeable climate impacts. Doc. 115 at 17-29.[1]

Plaintiffs' claims involve applying well-established Ninth Circuit law to important and primarily legal questions—for example, whether the Naval Petroleum Reserves

---

[1] For purposes of this motion, Plaintiffs focus on their NEPA claims only.

Production Act ("Reserves Act") affords BLM discretion to consider alternatives that allow for less than full oil field development, *id.* at 18-21, and whether BLM's indirect effects analysis must, consistent with NEPA, include climate impacts from future development that it admits Willow will induce, *id.* at 24-29. At minimum, Plaintiffs have raised "serious legal questions sufficient to satisfy the requirement of likelihood of success on the merits." *City of Oakland v. Holder*, 961 F. Supp. 2d 1005, 1013 (N.D. Cal. 2013). This weighs in favor of an injunction pending appeal that allows the Ninth Circuit to "provide guidance" on how its precedent applies to Plaintiffs' claims before Plaintiffs suffer irreparable harm. *Id.* at 1012; *see also In re Porrett*, No. 09-03881-JDP, 2016 WL 1689047, at *2 (D. Idaho Apr. 25, 2016) (granting stay pending appeal where application of law to facts of case required "considerable analysis, and arguments exist[ed] to justify both possible outcomes"); *Masters Software*, 2010 WL 11692803, at *3 (granting stay pending appeal where movant "at least raised serious questions").

**II.     Plaintiffs are likely to suffer irreparable harm without an injunction.**

During the pendency of this appeal, ConocoPhillips plans extensive, year-round construction activity in an area that provides important habitat for the Teshekpuk Lake Caribou Herd, is vital for traditional subsistence harvesting, and provides irreplaceable opportunities for rejuvenation and wildlife viewing. ConocoPhillips' planned activities, and the permanent infrastructure they will create, will irreparably injure Plaintiffs by harming the Teshekpuk Lake Caribou Herd, upon which Plaintiffs rely for subsistence and other activities, and directly interfere with Plaintiffs' subsistence and recreation

activities.

ConocoPhillips' activities will create an east-west wall of constant, heavy vehicle traffic traveling along multiple routes from the gravel mine, Alpine, and Prudhoe Bay to the Willow Facilities Center this winter and to the BT1 drill pad next winter. The number of vehicle trips during construction is expected to increase rapidly from 92,127 this winter to 190,286 next winter. Ex. 8 at 14, Tbl. D.4.47 (BLM_3512_AR822107).[2] Every single hour of every single day throughout the upcoming winter and spring construction seasons, traffic will exceed 15 vehicles per hour. *Id.* at 21, Tbl. D.5.7 (BLM_3512_AR822154) (last two columns and note) (showing between 21.6 and 65.5 vehicle trips per hour, spread over 24 hours a day, for the entire length of the winter (121 days) and spring (61 days) seasons for the next two years of construction); *see also* BLM_3512_AR820962, Tbl. 3.12.3 (last column and row) (showing 15.6 to 82.5 vehicles per hour winter and spring for Years 2-9 for Alternative E). This amount of traffic is well above the rate at which BLM states that caribou show increased disturbance. BLM_3512_AR820959 (describing deflection and low road crossing success when traffic rates exceed 15 vehicles per hour).

The construction will involve 1,200 people building about 140 miles of ice roads, around 10 miles of gravel roads, ice pads, gravel pads, a drill site, an airstrip, pipelines, bridges, on-pad facilities, and the Willow Operations Center, and the installation of over

---

[2] For the Court's ease of reference, exhibits 6-8 contain administrative record materials cited in this motion that are not contained in the Joint Appendix. Citations to administrative record numbers alone are to materials contained in the Joint Appendix.

3,000 vertical support members. Doc. 153-2, ¶¶8-10; BLM_3512_AR820743-44; Ex. 8 at 16, Tbl. D.4.48 (BLM_3512_AR822109). During the late spring and summer, heavy machinery will condition and compact gravel roads, gravel will be delivered to Oliktok Dock, and fixed wing aircraft and helicopters will fly across the Willow area. Ex. 8 at 5-6, 9, 12 (BLM_3512_AR822011-12, 30, 64). This activity will occur at the same time and in the same location as other large-scale operations related to Willow, including seismic exploration drilling and borehole drilling. Ex. 9 at 5-6; Ex. 10 at 3-7.

### A. Willow construction is likely to cause population-level effects to the Teshekpuk Lake Caribou Herd, irreparably harming Plaintiffs.

Willow construction activities during the appeal period are likely to cause population-level harm to the Teshekpuk Lake Caribou Herd. As Dr. Kofinas, Dr. Gunn, and Mr. Russell, decorated caribou experts with decades of experience, explain, the herd would be harmed because Willow would extend oilfield industrialization into highly used caribou habitat that has not previously been burdened with industrial disturbance and infrastructure. Ex. 1. The area into which Willow would extend in during the appeal period is directly in the path of the spring migration, when pregnant caribou move from south to north to reach their calving grounds, and is a high-density use area for caribou during fall, winter, and post-calving. *Id.* at 5-6; s*ee also* Ex. 7 at 3 (FWS_78_AR364531). Willow construction will involve high rates of vehicle traffic well above the threshold BLM acknowledges will cause deflections and delays in caribou movement. *See supra* pp. 3-5 (discussing volume of traffic); BLM_3512_AR820959-60

(discussing impacts of this volume of traffic). This high level of industrial activity is likely to cause changes in the herd's distribution and movements, resulting in greater energetic costs to caribou and negative effects on pregnancy and calf survival rates. Ex. 1 at 3, 5-10. For example, frequent exposure to disturbance increases daily energy expenditure and reduces time spent foraging (energy input), which together decrease cow productivity and calf survival. *Id.* at 6-8; *see also* Ex. 6 at 5 (BLM_3514_AR847905) (BLM's analysis confirming that negative effects on caribou caused by wintertime disturbances could increase mortality or reduce calf productivity).

The infrastructure created by construction during the pendency of the appeal will itself also harm caribou on an ongoing basis. Ex. 1 at 10. For example, because it will be directly in their migration pathway, Willow infrastructure will deflect pregnant caribou migrating through the area in spring away from their preferred calving grounds. *Id.*; Ex. 9 at 16-17 (noting that most caribou that migrate away from Teshekpuk Lake during the winter return in the spring by following a migration route through the Willow project area). As BLM has acknowledged, "[c]aribou that do not reach preferred calving habitat could see increases in calf mortality due to predation, low birth weights, and malnourishment from lower quality forage." Ex. 9 at 16.

The reduction in population will irreparably harm Plaintiffs' opportunities to view, study, and harvest these species in the Reserve and throughout their range. Ex. 3, ¶¶18, 27, 31; Doc. 115-3, ¶¶22, 27; Doc. 115-7, ¶41; Doc. 115-5, ¶19; Ex. 2, ¶¶15-19, 22, 25; Doc. 115-6, ¶16.

### B. Willow construction is likely to cause irreparable harm Plaintiffs' ability to engage in subsistence harvesting.

Plaintiffs will suffer irreparable harm to their subsistence activities. Dr. Rosemary Ahtuangaruak, a member of Plaintiff Friends of the Earth and a Nuiqsut resident, describes the immediate effect that construction activities would have on her and her family's subsistence and traditional practices. She and her family rely on caribou caught where the construction activities will occur. Ex. 2, ¶¶15-17. BLM's analysis confirms the importance of the Willow area to Nuiqsut hunters, nearly all of whom use the area. Ex. 8 at 30 (BLM_3512_AR824205) & 32, Tbl. E.16.5 (BLM_3512_AR824219); *see also* Ex. 1 at 12 (noting that "as many as 84 [percent] of Nuiqsut harvesters hunt caribou in the Willow construction area").

The construction will eliminate Dr. Ahtuangaruak and her family's use of the area. Dr. Ahtuanguruak describes how her family has been forced to abandon traditional hunting lands and travel farther because those lands have become overtaken by industrial activity and are no longer safe or desirable. Ex. 2, ¶22; *see also* Ex. 1 at 12. This leaves less food for themselves and to share with others. Ex. 2, ¶¶10, 22; *see also* Ex. 1 at 15. Dr. Ahtuangaruak expresses her concern that the Willow ice roads, gravel roads, and drill pads, including in the Teshekpuk Lake Special Area, will lead to the loss of one of the last undisturbed hunting grounds and deflect caribou away from traditional hunting grounds and historical migratory routes. Ex. 2, ¶¶15-22; *see also* Ex. 1 at 5-7. Dr. Ahtuangaruak explains how her nephews, including one who is a "super hunter," share meat with her and others in the community. Ex. 2, ¶16. She describes how they will no

longer use the Willow area if it becomes industrialized from heavy construction activity, because the area will be less enjoyable and because caribou will be less likely to be present and more likely to be startled by industrial activity, making the hunt more difficult. *Id.* ¶¶16-19.

BLM's analysis confirms Dr. Ahtuangaruak's concerns. It finds that subsistence harvesters avoid oil development infrastructure and activity when spending time on the land hunting, fishing, and camping. BLM_3512_AR821026 (noting that between 23 percent and 47 percent of harvesters reported they avoid developed areas during individual study years, and in the North Slope Borough's 2019 census that 36 percent of Nuiqsut households reported abandoning traditional use areas within the last five years). Dr. Kofinas *et al*. confirm this effect. Ex. 1 at 12-14.

The harm to Plaintiffs' subsistence practices during initial Willow construction activities is substantial and irreparable. The loss of subsistence opportunities in the Willow area for super hunters, such as Dr. Ahtuanguruak's nephew, may not be made up elsewhere. Ex. 2, ¶22; *see also* Ex. 1 at 14-16. In addition, as Dr. Ahtuangaruak explains, the loss of even a single opportunity to practice subsistence activities can inflict permanent harm. Ex. 2, ¶30; *see also* Ex. 1 at 15-16 (discussing food insecurity). Failed hunts threaten not only the food security of Dr. Ahtuangaruak and her family, but their physical and mental health as well. Ex. 2, ¶¶24, 31-38, 60-62, 66-67, 69, 98-102, 108, 112-15, 117, 122. The construction at Willow will also cause the loss of culturally important traditions, including teaching, sharing food, and time on land. *Id.*, ¶¶10, 12-14,

*CBD et al. v. BLM et al.*,
Case No. 3:23-cv-00061-SLG 8

Case 3:23-cv-00061-SLG   Document 190   Filed 11/17/23   Page 10 of 19

16, 28-29, 55, 58, 60-61, 77, 114; Ex. 1 at 15-17.

      **C.     Willow construction is likely to ruin Plaintiffs' enjoyment of the area.**

Because construction during the appeal period will result in permanent infrastructure, it will also result in permanent damage to areas Plaintiffs use. Not only will the activity and infrastructure harm Dr. Ahtuangaruak and her family's ability to hunt, but it will also ruin their enjoyment of the area while they are hunting, fishing, or camping. Dr. Ahtuangaruak has observed damage to fish and tundra from ice roads, habitat destruction caused by gravel pads, and an expanse of pipelines and drilling pads surround her village, and she explains that Willow infrastructure built during the next couple of years will have the same effect on her enjoyment of the area. Ex. 2, ¶¶17, 19, 23, 62-67, 69.

Plaintiff member Daniel Ritzman intends to travel down the Colville River in the summer of 2024, ending his trip in Nuiqsut. Ex. 3, ¶¶27-28. The presence of helicopter traffic, a mine, and additional industry traffic would harm his enjoyment of the landscape and could diminish his ability to view raptors, caribou, and other wildlife. *Id.*, ¶¶11, 18, 20-21, 27-31.

Plaintiff member Josh Oboler plans to camp with his family next summer near the construction area, and his experience will be dramatically reduced by the extensive human activity. Ex. 5, ¶¶9-11.

Plaintiff member Jeff Fair has conducted extensive research on yellow-billed loons in northern Alaska, including in the Reserve, and he intends to visit areas in the Reserve

that could be affected by Willow construction in the next several years. Doc. 115-3, ¶¶4, 9-11, 15, 17. He explains that, in his professional opinion, "it is more likely than not that the disturbance and harm to this already-imperiled species from the Willow project will lead toward their demise and make it harder for me to continue studying and observing yellow-billed loons both professionally and personally, even from afar." *Id.*, ¶15; *see also id.*, ¶26 (describing harm from road construction and concluding "the extent of damage to loon habitat that Willow will cause is likely to reduce the population and productivity (number of chicks hatched) of this already imperiled species.").

Other Plaintiff members intend to visit areas affected by the Project for research and recreation and would similarly be harmed by Willow's irrevocable impacts to the area, its unindustrialized quality, and the diverse and valuable species that rely on it. Doc. 115-5, ¶¶17, 20, 23-25; Doc. 115-6, ¶¶7-9, 12-13, 17-18.

Courts consistently characterize the harms to plaintiffs' interests from proposed construction activities as irreparable. *See Soda Mountain Wilderness Council v. BLM*, 534 F. App'x 680, 684-85 (9th Cir. 2013) (enjoining construction of 1.15 miles of new road); *Se. Alaska Conservation Council v. Fed. Highway Admin.*, No. 1:06-cv-0009 JWS, 2009 WL 10677763, at *10 (D. Alaska Feb. 13, 2009) (enjoining construction of ferry terminal and road resulting in loss of 70 acres of wetlands); *People of State of Cal. ex rel. Van De Kamp v. Tahoe Reg'l Plan. Agency*, 766 F.2d 1308, 1310, 1316 (9th Cir. 1985) (affirming injunction of development and construction in lake basin that would cause irreparable harm to watershed); *S. Fork Band Council of W. Shoshone of Nev. v. U.S.*

*Dep't of Interior*, 588 F.3d 718, 722, 728 (9th Cir. 2009) (per curiam) (enjoining proposed gold mining project); *Today's IV, Inc. v. Fed. Transit Admin.*, No. LA CV13-00378 JAK, 2014 WL 5313943, at *21 (C.D. Cal. Sept. 12, 2014) (enjoining activity causing noise, dust, air pollution, and traffic). The long-term impacts of ConocoPhillips' immediate construction activities would irreparably harm Plaintiffs' members' ability to "view, experience, and utilize" the Project area in its "undisturbed state." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

### III.  The balance of equities and public interest favor an injunction.

Construction activities during the pendency of this appeal will cause irreparable environmental and subsistence injuries to Plaintiffs' members. *Supra* pp. 5-11. An injunction pending appeal, by contrast, will primarily harm Defendants by postponing the Project's economic benefits for the duration of the appeal. Accordingly, the balance of equities and public interest favor an injunction.

In evaluating Defendants' harms, this Court considers "only the portion of the harm that would occur while the [] injunction is in place"—*i.e.*, harm from postponing construction pending appeal—and not harm that would result if the entire Project were never built. *League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 765 (9th Cir. 2014). Any alleged harms that would result only if Willow were terminated—such as lost tax revenue from Project operations or weakened energy security—are therefore irrelevant to Plaintiffs' motion for an injunction pending appeal.

Focusing on the proper timeframe, any harms to ConocoPhillips are purely financial and "self-inflicted," resulting from the company's "own decisions about how to proceed in the face of litigation." *Sierra Club v. Trump*, 929 F.3d 670, 706 (9th Cir. 2019), *stay granted on other grounds by Trump v. Sierra Club*, 140 S. Ct. 1 (2019); *see also Nat'l Parks & Conservation Ass'n v. Babbitt*, 241 F.3d 722, 738 (9th Cir. 2001) (company could not claim surprise from an injunction and its "loss of anticipated revenues" did not outweigh irreparable environmental damage), *abrogated on other grounds by Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010). ConocoPhillips has suggested that missing this winter's construction season will jeopardize the entire Project by putting its leases at risk of expiration, but that is baseless. As this Court has recognized, the Reserves Act provides that no lease "shall expire" where the lessee fails to produce oil "due to circumstances beyond [their] control," 42 U.S.C. § 6506a(i)(6), such as an injunction. *See* Doc. 82 at 36 n.144.

As to other Intervenors, while the loss of construction jobs during the appeal period would be significant, deferring those jobs to a future year is still a "temporary delay" that does not outweigh Plaintiffs' irreparable environmental injuries. *Connaughton*, 752 F.3d at 766. While some subsistence users may allege that delaying construction will harm them, others have explained that allowing construction to proceed will jeopardize their reliance on caribou. *Supra* pp. 7-9. Overall, the irreparable environmental and subsistence harms to Plaintiffs' members from construction activities during the appeal period outweigh the largely economic harms to Defendants from

postponing construction over the same period. *See S. Fork Band Council of W. Shoshone of Nev.*, 588 F.3d at 728 (injunction warranted despite employment loss, which "may for the most part be temporary"); *Se. Alaska Conservation Council*, 472 F.3d at 1101 (enjoining mine construction would not "reduce significantly any future economic benefit" from the mine's operation); *N. Alaska Env't Ctr. v. Hodel*, 803 F.2d 466, 471 (9th Cir. 1986) (affirming injunction despite potential for "real financial hardship" to miners).

Finally, "avoiding irreparable environmental injury" and ensuring that BLM carefully considers Willow's environmental impacts before the Project moves forward "comports with the public interest." *Cottrell*, 632 F.3d at 1138 (citation omitted); *see also Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 992 (9th Cir. 2020) (the public interest is served by requiring agencies to "comply with the law"). That is consistent with BLM's obligations under the Reserves Act, which requires the agency to carefully consider and minimize adverse impacts on the Reserve's surface resources before approving oil and gas activities. *See* 42 U.S.C. § 6506a(b). Plaintiffs have demonstrated a likelihood of success—or at minimum raised serious questions—on their claims that BLM violated NEPA in approving Willow. *Supra* pp. 2-3. Allowing Project activities to proceed "without an adequate record of decision runs contrary to the mandate of NEPA," *Sierra Club v. Bosworth*, 510 F.3d 1016, 1033 (9th Cir. 2007), and deprives Plaintiffs of meaningful relief should they ultimately prevail on the merits.

## CONCLUSION

For these reasons, Plaintiffs request that the Court grant the requested relief.

Respectfully submitted this 17th day of November, 2023.

>*s/ Erik Grafe*
>Erik Grafe (Alaska Bar No. 0804010)
>Jeremy C. Lieb (Alaska Bar No. 1810088)
>Ian S. Dooley (Alaska Bar No. 2006059)
>Carole A. Holley (Alaska Bar No. 0611076)
>Eric P. Jorgensen (Alaska Bar No. 8904010)
>EARTHJUSTICE
>
>*Attorneys for Plaintiffs Center for Biological Diversity, Defenders of Wildlife, Friends of the Earth, and Greenpeace, Inc.*
>
>*s/ Kristen Monsell*
>Kristen Monsell (California Bar No. 304793) (*pro hac vice*)
>CENTER FOR BIOLOGICAL DIVERSITY
>
>*Attorneys for Plaintiff Center for Biological Diversity*
>
>*s/ Cecilia Segal*
>Cecilia Segal (California Bar No. 310935) (*pro hac vice*)
>Michelle Wu (New York Bar No. 5633664) (*pro hac vice*)
>NATURAL RESOURCES DEFENSE COUNCIL
>
>*Attorneys for Plaintiff Natural Resources Defense Council*

**CERTIFICATE OF COMPLIANCE WITH WORD LIMITS**

I certify that this document contains 3,431 words, excluding items exempted by Local Civil Rule 7.4(a)(4), and complies with the word limits of Local Civil Rule 7.4(a)(2).

Respectfully submitted this 17th day of November, 2023.

      *s/ Erik Grafe*
      Erik Grafe

## CERTIFICATE OF SERVICE

I hereby certify that on November 17, 2023, a copy of foregoing PLAINTIFFS' RULE 62(d) MOTION FOR INJUNCTION PENDING APPEAL, with attachments, was served electronically on all counsel of record through the Court's CM/ECF system.

I further certify that Tarek Farag, tarekfaragusa@hotmail.com, was served by electronic mail.

        *s/ Erik Grafe*
        Erik Grafe

# TABLE OF EXHIBITS

| Exhibit No. | Description |
| --- | --- |
| 1 | Dr. Gary Kofinas *et al.*, Declaration of Likely Impacts to Caribou and Caribou Subsistence from the Construction Phase of the Willow Project, National Petroleum Reserve in Alaska, A Report of Teewinot Institute (Nov. 16, 2023) |
| 2 | Declaration of Rosemary Ahtuangaruak (Nov. 15, 2023) |
| 3 | Declaration of Daniel Ritzman (Nov. 16, 2023) |
| 4 | Omitted |
| 5 | Declaration of Josh Oboler (Nov. 15, 2023) |
| 6 | Bureau of Land Management (BLM), National Petroleum Reserve-Alaska, Final Integrated Activity Plan/ Environmental Impact Statement, (Nov. 2012) (BLM_3514_AR846832-9465) (excerpts) |
| 7 | BLM, National Petroleum Reserve in Alaska, Final Integrated Activity Plan and Environmental Impact Statement (June 2020) (FWS_78_363916-6175) (excerpts) |
| 8 | BLM, Willow Master Development Plan, Final Supplemental Environmental Impact Statement (Jan. 2023) (BLM_3512_AR820670-4879) (excerpts) |
| 9 | BLM, ConocoPhillips Ptarmigan Seismic Survey Environmental Assessment, DOI-BLM-AK-R000-2024-0001-EA (undated, posted on BLM's ePlanning website on Nov. 9, 2023) (excerpts) |
| 10 | ConocoPhillips Alaska, Inc., Application for Right-of-Way Grant FF097571 Amendment and BT1 W1R1C14 Sundry Notice, 2024 Willow Development Geotechnical Program, Greater Mooses Tooth Unit and Bear Tooth Unit, North Slope, Alaska (Aug. 3, 2023) (excerpts) |