# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| SOVEREIGN IÑUPIAT FOR A LIVING ARCTIC, *et al.*,<br><br>　　　　　　Plaintiffs,<br><br>　　　　v.<br><br>BUREAU OF LAND MANAGEMENT, *et al.*,<br><br>　　　　　　Defendants,<br><br>　　　and<br><br>CONOCOPHILLIPS ALASKA, INC., *et al.*,<br><br>　　　　　　Intervenor-Defendants. | Case No. 3:23-cv-00058-SLG |
| CENTER FOR BIOLOGICAL DIVERSITY, *et al.*,<br><br>　　　　　　Plaintiffs,<br><br>　　　　v.<br><br>BUREAU OF LAND MANAGEMENT, *et al.*,<br><br>　　　　　　Defendants,<br>　　　and<br><br>CONOCOPHILLIPS ALASKA, INC., *et al.*,<br><br>　　　　　　Intervenor-Defendants. | Case No. 3:23-cv-00061-SLG |

## <u>ORDER RE MOTIONS FOR INJUNCTION PENDING APPEAL</u>

Before the Court are SILA Plaintiffs' Motion for Injunction Pending Appeal at Docket 169 (Case No. 3:23-cv-00058-SLG)[1] and CBD Plaintiffs' Rule 62(d) Motion for Injunction Pending Appeal at Docket 190 (Case No. 3:23-cv-00061-SLG).[2] Federal Defendants responded at Docket 175 (Case No. 3:23-cv-00058-SLG).[3] Intervenor-Defendants ConocoPhillips, Inc. ("ConocoPhillips"), Kuukpik Corporation ("Kuukpik"), Arctic Slope Regional Corporation ("ASRC"), North Slope Borough ("NSB"), and the State of Alaska ("State") responded in opposition at Dockets 177, 180-82, and 184 (Case No. 3:23-cv-00058-SLG), respectively. In addition, at Docket 183 (Case No. 3:23-cv-00058-SLG), the Alaska Congressional Delegation and Alaska State Legislature have filed an amicus brief.[4] Oral

---

[1] In Case No. 3:23-cv-00058-SLG, SILA Plaintiffs are Sovereign Iñupiat for a Living Arctic, Alaska Wilderness League, Environment America, Northern Alaska Environmental Center, Sierra Club, and The Wilderness Society.

[2] In Case No. 3:23-cv-00061-SLG, CBD Plaintiffs are Center for Biological Diversity, Defenders of Wildlife, Friends of the Earth, Greenpeace, Inc., and Natural Resources Defense Council, Inc.

[3] In Case No. 3:23-cv-00058-SLG, Federal Defendants are the U.S. Bureau of Land Management; U.S. Fish and Wildlife Service; and the U.S. Department of the Interior. In Case No. 3:23-cv-00061-SLG, Federal Defendants are the same with the addition of the National Marine Fisheries Service; U.S. Department of Commerce; Deb Haaland, in her official capacity as Secretary of the Interior; Tommy P. Beaudreau, in his official capacity as Deputy Secretary of the Interior; Gina M. Raimondo, in her official capacity as Secretary of Commerce; Steven Cohn, in his official capacity as Alaska State Director of Bureau of Land Management; Sara Boario, in her official capacity as Alaska Regional Director of U.S. Fish and Wildlife Service; and Jonathan Kurland, in his official capacity as Regional Administrator of National Marine Fisheries Service.

[4] The Court granted the Motion for Leave to File an Amicus Curiae Brief. Docket 187 (Case No. 3:23-cv-00058-SLG).

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order re Motions for Injunction Pending Appeal
Page 2 of 27

argument was not requested and was not necessary to the Court's determination. For the reasons set forth below, Plaintiffs' motions will be denied.

## BACKGROUND

Plaintiffs challenge the Bureau of Land Management's ("BLM") approval of the Willow Project, an oil and gas development by ConocoPhillips in the National Petroleum Reserve in Alaska ("Reserve").[5]  Bringing suit pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, Plaintiffs claimed that BLM and other Federal Defendants violated the National Environmental Policy Act of 1969 ("NEPA"), 42 U.S.C. § 4321 *et seq.*, the Naval Petroleum Reserves Production Act ("NPRPA"), 42 U.S.C. § 6501, *et seq.*, the Alaska National Interest Lands Conservation Act ("ANILCA"), 16 U.S.C. § 3101 *et seq.*, and the Endangered Species Act ("ESA"), 16 U.S.C. § 1531 *et seq.*[6]

On April 3, 2023, the Court denied Plaintiffs' Motions for Temporary Restraining Order and Preliminary Injunction to halt Willow Project construction for the remainder of that winter season.[7]  The Court found that Plaintiffs could not show a likelihood of irreparable harm and "the balance of the equities and the

---

[5] The Court assumes familiarity with the facts of this case.  For additional factual background, see Docket 166 at 4-9 (Case No. 3:23-cv-00058-SLG) (Order Mot. for Summ. J).

[6] *See* Docket 105 (Case No. 3:23-cv-00058-SLG); Docket 115 (Case No. 3:23-cv-00061-SLG).

[7] *Sovereign Iñupiat for a Living Arctic v. Bureau of Land Mgmt.*, Case No. 3:23-cv-00058-SLG, 2023 WL 2759864, at *15 (D. Alaska Apr. 3, 2023), *appeal dismissed*, No. 23-35226, 2023 WL 4339382 (9th Cir. May 19, 2023).

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order re Motions for Injunction Pending Appeal
Page 3 of 27

public interest tipped sharply against preliminary injunctive relief."[8]   After initially

appealing the denial of a preliminary injunction, Plaintiffs later sought voluntary

dismissal of those appeals, which the Ninth Circuit granted on May 19, 2023. [9]

On November 9, 2023, this Court found that Federal Defendants did not

violate the APA and denied Plaintiffs' request for vacatur of approval of the Willow

Project.[10]   Plaintiffs filed notices of appeal to the Ninth Circuit Court of Appeals.[11]

They now seek to enjoin "all construction activities related to Willow to ensure the

*status quo* is maintained" while their appeals are pending.[12]

## LEGAL STANDARD

"The standard for evaluating an injunction pending appeal is similar to that

employed by district courts in deciding whether to grant a preliminary injunction."[13]

---

[8] *Sovereign Iñupiat for a Living Arctic*, 2023 WL 2759864, at *11, 14-15.

[9] *Sovereign Iñupiat for a Living Arctic*, 2023 WL 4339382, at *1.

[10] Docket 166 at 109 (Case No. 3:23-cv-00058-SLG).

[11] Docket 168 (Case No. 3:23-cv-00058-SLG) (Notice of Appeal); Docket 186 (Case No. 3:23-cv-00061-SLG) (Notice of Appeal).

[12] Docket 169 at 3 (Case No. 3:23-cv-00058-SLG) (Mot. for Inj. Pending Appeal) (italics in original).  *See* Docket 190 at 3 (Case No. 3:23-cv-00061-SLG) (Mot. for Inj. Pending Appeal requesting "that the Court enjoin implementation of Defendant Bureau of Land Management's (BLM) approval of the Project, including authorization of construction planned to resume this winter, for the duration of the appeal.").  The Court granted Plaintiffs' Motions for Expedited Consideration of the Motions for Injunction Pending Appeal.  Docket 172 (Case No. 3:23-cv-00058-SLG); Docket 189 (Case No. 3:23-cv-00061-SLG).

[13] *Feldman v. Ariz. Sec'y of State's Off.*, 843 F.3d 366, 367 (9th Cir. 2016) (citing *Lopez v. Heckler*, 713 F.2d 1432, 1435 (9th Cir. 1983) and second citation omitted); *see also Nken v. Holder*, 556 U.S. 418, 428-29 (2009) ("A stay pending appeal certainly has some functional

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order re Motions for Injunction Pending Appeal
Page 4 of 27

Parties seeking preliminary injunctive relief must establish that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of injunctive relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest.[14] Where, as here, the government is a party to the action, the final two *Winter* factors—the balance of the equities and the public interest—merge.[15]

## DISCUSSION

### I. Likelihood of Success on the Merits

Plaintiffs seeking injunctive relief must show a likelihood of success on the merits.[16] Alternatively, in the Ninth Circuit, if a plaintiff demonstrates "that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance

---

overlap with an injunction, particularly a preliminary one. Both can have the practical effect of preventing some action before the legality of that action has been conclusively determined. But a stay achieves this result by temporarily suspending the source of authority to act—the order or judgment in question—not by directing an actor's conduct. A stay 'simply suspend[s] judicial alteration of the status quo,' while injunctive relief 'grants judicial intervention that has been withheld by lower courts.'" (quoting *Ohio Citizens for Responsible Energy, Inc. v. Nuclear Regul. Comm'n*, 479 U.S. 1312, 1313 (1986) (Scalia, J., in chambers))).

[14] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

[15] *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken*, 556 U.S. at 435).

[16] *Winter*, 555 U.S. at 20.

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order re Motions for Injunction Pending Appeal
Page 5 of 27

of hardships tips *sharply* in the plaintiff's favor.'"[17]   "Serious questions are 'substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation.'"[18]   They "need not promise a certainty of success, nor even present a probability of success, but must involve a 'fair chance on the merits.'"[19]

SILA Plaintiffs assert that on appeal they are "likely to prevail on [their] claims that BLM failed to comply with the . . . []NPRPA[] and . . . []NEPA[] by failing to consider a reasonable range of alternatives sufficient to protect surface resources and mitigate impacts to subsistence uses and resources."[20]   Similarly, CBD Plaintiffs argue that "they are likely to succeed on the merits of their claims that BLM violated . . . []NEPA[] by failing to consider a reasonable range of alternatives and by failing to consider Willow's reasonably foreseeable climate impacts."[21]   As several Defendants correctly observe, Plaintiffs' current motions do

---

[17] *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (emphasis in original) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)).  *See also All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011) (holding "serious questions" approach still valid "when applied as a part of the four-element *Winter* test.").

[18] *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 422 (9th Cir. 1991) (quoting *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988)).

[19] *Gilder*, 936 F.2d at 422 (quoting *Marcos*, 862 F.2d at 1362).

[20] Docket 169 at 9-10 (Case No. 3:23-cv-00058-SLG).

[21] Docket 190 at 4 (Case No. 3:23-cv-00061-SLG).

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order re Motions for Injunction Pending Appeal
Page 6 of 27

not present any new arguments regarding their NEPA and NPRPA claims beyond what was already considered and rejected by the Court.[22] For the reasons discussed in the Court's order denying Plaintiffs' request for vacatur of the approval of the Willow Project, the Court finds that Plaintiffs have not shown a likelihood of success on the merits on their claims.[23]

Further, Plaintiffs have not raised serious questions going to the merits on their claims. CBD Plaintiffs cite *City of Oakland v. Holder*, *In re Porrett*, and *Masters Software, Inc. v. Discovery Communications, Inc.*, for their assertion that they have raised a serious question sufficient for an injunction pending appeal.[24] In *City of Oakland*, the plaintiff raised an issue of first impression, which the district court found presented a serious question.[25] In *Porrett*, the court distinguished a case that, "at first blush, appear[ed] to be on point" to ultimately find that the case's analytical approach did not apply after a "close reading" of case law.[26] And *Masters Software* granted the defendant's motion to stay a preliminary injunction

---

[22] *See, e.g.,* Docket 175 at 5 (Case No. 3:23-cv-00058-SLG); Docket 177 at 20-21 (Case No. 3:23-cv-00058-SLG).

[23] Docket 166 at 11-47 (Case No. 3:23-cv-00058-SLG).

[24] Docket 190 at 5 (Case No. 3:23-cv-00061-SLG) (first citing *City of Oakland*, 961 F. Supp. 2d 1005, 1013 (N.D. Cal. 2013); then citing *In re Porrett*, Case No. 09-03881-JDP, 2016 WL 1689047, at *2 (D. Idaho Apr. 25, 2016); and then citing *Masters Software*, Case No. C10-405RAJ, 2010 WL 11692803, at *3 (W.D. Wash. Aug. 13, 2010)).

[25] 961 F. Supp. 2d at 1012-13.

[26] *In re Porrett*, 2016 WL 1689047, at *2.

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order re Motions for Injunction Pending Appeal
Page 7 of 27

pending appeal because plaintiff's theory was "rarely successful" and so the defendant "at least raised serious questions relevant to its prospects for success."[27]

In contrast, this case "involve[s] applying well-established Ninth Circuit law to important and primarily legal questions"[28] and does not present an issue of first impression, competing analytical approaches, or a "rarely successful" legal theory. Accordingly, Plaintiffs have not shown that there is a serious question going to the merits of their claims.

## II.    Irreparable Harm

A party seeking injunctive relief pending appeal must show that they themselves will suffer irreparable harm absent an injunction[29] and that there is "a *probability* of irreparable injury if the stay is not granted."[30]   "A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite" to

---

[27] *Masters Software*, 2010 WL 11692803, at *3.

[28] Docket 190 at 4 (Case No. 3:23-cv-00061-SLG).

[29] *Lair v. Bullock*, 697 F.3d 1200, 1214 (9th Cir. 2012) ("[W]e . . . focus on the individualized nature of irreparable harm and not whether it is 'categorically irreparable.'" (quoting *Leiva-Perez v. Holder*, 640 F.3d 962, 969 (9th Cir. 2011))).

[30] *Id.* (emphasis in original) (citing *Leiva-Perez*, 640 F.3d at 968).

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order re Motions for Injunction Pending Appeal
Page 8 of 27

injunctive relief.[31]   Further, "[t]here must be a 'sufficient causal connection' between the alleged irreparable harm and the activity to be enjoined," such as a "showing that 'the requested injunction would forestall' the irreparable harm."[32] "[T]he movant, *by a clear showing*, carries the burden of persuasion."[33]

"Environmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, i.e., irreparable."[34]  "Of course, this does not mean that 'any potential environmental injury' warrants an injunction."[35]  Because injunctive relief pending appeal is an equitable remedy, there is no presumption of irreparable harm, even in cases involving environmental impact.[36]

Plaintiffs seek to enjoin Willow's upcoming winter construction activities in

---

[31] *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (emphasis in original) (citing *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1201 (9th Cir. 1980)).

[32] *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 886 F.3d 803, 819 (9th Cir. 2018) (quoting *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 981-82 (9th Cir. 2011)).

[33] *Villegas Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (emphasis in original) (citation omitted).

[34] *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 545 (1987).

[35] *All. for the Wild Rockies*, 632 F.3d at 1135 (quoting *Lands Council v. McNair*, 537 F.3d 981, 1004 (9th Cir. 2008)).

[36] *Amoco Prod. Co.*, 480 U.S. at 544-55 (holding that a presumption of irreparable damage "when an agency fails to evaluate thoroughly the environmental impact of a proposed action . . . is contrary to traditional equitable principles").

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order re Motions for Injunction Pending Appeal
Page 9 of 27

order to "maintain current conditions on the ground" while they appeal.[37] Presently, non-surface-disturbing activities are ongoing.[38] ConocoPhillips intends to "recommence" surface-disturbing activities "no sooner than December 21, 2023," and continuing through May 2024.[39] Therefore, the Court focuses on whether Plaintiffs can show they will be irreparably harmed by ConocoPhillips' planned 2023-2024 winter construction activities unless this Court enters an injunction pending appeal.

During last winter's construction season, which concluded in May 2023, ConocoPhillips opened a gravel mine site (Mine Site Area 2), built two miles of gravel road to extend a road referred to as GMT-2, and began constructing a subsistence boat ramp on the Ublutuoch (Tiŋmiaqsiuġvik) River.[40] Planned 2023-2024 surface-disturbing winter work includes installation of approximately 13 miles of pipelines and supports, eight miles of gravel road, a road spur and pad access,

---

[37] Docket 190 at 3 (Case No. 3:23-cv-00061-SLG). *See* Docket 169 at 3 (Case No. 3:23-cv-00058-SLG).

[38] Docket 177-11 at ¶¶ 7-8 (Case No. 3:23-cv-00058-SLG).

[39] Docket 177 at 49 (Case No. 3:23-cv-00058-SLG); Docket 177-11 at ¶ 7 (Case No. 3:23-cv-00058-SLG).

[40] Docket 177-11 at ¶ 3 (Case No. 3:23-cv-00058-SLG); Docket 177-12 at ¶ 5 (Case No. 3:23-cv-00058-SLG). GMT-2 refers to Greater Mooses Tooth-2, a drilling pad. The two miles of gravel road ConocoPhillips built last season, and seven miles of proposed gravel road construction during the 2023-2024 winter season, will extend the GMT-2 road to connect it to the sites for the Willow Operations Center and Willow Central Facility. Docket 177-12 at ¶¶ 6, 11 (Case No. 3:23-cv-00058-SLG).

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order re Motions for Injunction Pending Appeal
Page 10 of 27

an airstrip access road and airstrip apron, gravel pads for the Willow Central Facility and Willow Operations Center, and a bridge; completion of the first subsistence boat ramp; and construction of two additional subsistence ramps.[41] Gravel mining will also continue at Mine Site Area 2, and ConocoPhillips plans to open a second mine site (Mine Site Area 1).[42] Mine Site Area 1 will be slightly closer to Nuiqsut than Mine Site Area 2, but both mines are "about 7 miles west of Nuiqsut."[43] ConocoPhillips intends to have 1,800 personnel working on the Willow Project during the 2023-2024 winter construction season.[44] ConocoPhillips will not produce any oil or gas at Willow during the 2023-2024 or 2024-2025 seasons[45]; nor will there be any construction in the Teshekpuk Lake Special Area ("TLSA") during the 2023-2024 winter season.[46]

Plaintiffs raise concerns with harm to fishing resources due to the planned 2023-2024 Willow construction. Sam Kunaknana lives in Nuiqsut. He subsistence

---

[41] Docket 177-12 at ¶ 6 (Case No. 3:23-cv-00058-SLG). *See* Docket 177-12 at 13-14 (Case No. 3:23-cv-00058-SLG) (maps showing winter 2023-2024 construction activities).

[42] Docket 177-12 at ¶ 9 (Case No. 3:23-cv-00058-SLG).

[43] Docket 177-12 at ¶ 9 (Case No. 3:23-cv-00058-SLG). *See* Docket 177-12 at 13 (Case No. 3:23-cv-00058-SLG).

[44] Docket 177-11 at ¶ 11 (Case No. 3:23-cv-00058-SLG).

[45] Docket 177-11 at ¶ 13 (Case No. 3:23-cv-00058-SLG) (noting ConocoPhillips aims to "achieve first oil in 2029").

[46] ConocoPhillips will perform geotechnical work in the TLSA, but no construction. Docket 177-12 at ¶ 14 (Case No. 3:23-cv-00058-SLG).

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order re Motions for Injunction Pending Appeal
Page 11 of 27

Case 3:23-cv-00061-SLG   Document 208   Filed 12/01/23   Page 11 of 27

fishes on Fish Creek and the Ublutuoch River, which he states "are located in the vicinity of the proposed Willow project, and there are important subsistence fishing areas downstream from the Willow project and Conoco's gravel mine on the Ublutuoch." Oil "development activities have deterred [him] from fishing [on Fish Creek]." Further, Willow's "gravel mine is on a part of the Ublutuoch that [he] use[s] and that is also upstream from where [he] fish[es] and hunt[s]." Because of the gravel mine, Mr. Kunaknana is "not likely to be able to continue hunting and fishing in these areas successfully if Willow's construction is allowed to continue this coming winter."[47] Dr. Rosemary Ahtuangaruak, the Mayor of Nuiqsut, is "worr[ied]" that the gravel mine might "affect the water table" where "we put down our fish nets," that it might contaminate the water, and that it will contribute to erosion.[48]

However, BLM found that "fish would not be affected by blasting or gravel excavation."[49] While the Court acknowledges Mr. Kunaknana's and Dr. Ahtuangaruak's apprehensions about downstream effects of the Willow Project on fish, they do not establish any immediate threatened injury to fish causally

---

[47] Docket 169-8 at ¶¶ 2, 8-10 (Case No. 3:23-cv-00058-SLG). Mr. Kunaknana's claims of irreparable harm are similar to those he made in support of the preliminary injunction. *See Sovereign Iñupiat for a Living Arctic*, 2023 WL 2759864, at *8.

[48] Docket 190-2 at ¶¶ 6, 26 (Case No. 3:23-cv-00061-SLG).

[49] AR820904.

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order re Motions for Injunction Pending Appeal
Page 12 of 27

connected to ConocoPhillips' 2023-2024 planned winter construction activities.[50]

Several of Plaintiffs' members expressed concern about Willow's impact on caribou and subsistence hunting.[51]  Mr. Kunaknana is

> worried that blasting at the gravel mine, construction activities, and all the industrial activity and roads from Willow will disturb and drive away the caribou [he] depend[s] on, who stay in this area during the winter.  This past winter, there were caribou near the old mine site.  When they started blasting, the caribou disappeared from that area.  As they start blasting more and doing further construction around the new mine site for Willow, [he] believe[s] the same will happen here.[52]

Siqiñiq Maupin is concerned that planned winter construction activities near Teshekpuk Lake will harm the caribou herd that lives in that area.[53]  Dr. Ahtuangaruak and her family hunt caribou in the area where Willow winter construction activities will occur and she claims that the "Willow industrial activities that would begin this winter threaten to harm our use of the area during the time of the activities and beyond."[54]  She is also concerned that the "noises and activities

---

[50] ConocoPhillips presented evidence that fishing continues despite oil and gas development. Docket 177-2 at ¶ 19 (Case No. 3:23-cv-00058-SLG) ("I have nets set under the ice right now for Arctic cisco, just 600 feet from the drilling pad at CD 4.").

[51] The Court does not consider a November 16, 2023, study filed by CBD Plaintiffs at Docket 190-1 (Case No. 3:23-cv-00061-SLG) because it is unsworn and there is no indication that it was made under penalty of perjury.  28 U.S.C. § 1746.  It was also not included in the administrative record and CBD Plaintiffs have not demonstrated that it is publicly available.

[52] Docket 169-8 at ¶ 16 (Case No. 3:23-cv-00058-SLG).

[53] Docket 169-9 at ¶¶ 18-19 (Case No. 3:23-cv-00058-SLG).

[54] Docket 190-2 at ¶ 15 (Case No. 3:23-cv-00061-SLG).  Dr. Ahtuangaruak is also concerned that ConocoPhillips will prohibit access to the GMT-2 road, which will harm her nephews' ability to travel further on to the tundra beyond the end of GMT-2 to hunt caribou.  Docket 190-2 at ¶

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order re Motions for Injunction Pending Appeal
Page 13 of 27

Case 3:23-cv-00061-SLG   Document 208   Filed 12/01/23   Page 13 of 27

from the [gravel] mine will affect caribou migrations through that area."[55]

BLM determined that Willow would likely "deflect . . . caribou from areas where Nuiqsut hunters harvest them."[56]  BLM also found that 23 to 47 percent of subsistence harvesters avoid hunting in areas of oil and gas development, but those statistics also indicate that the majority of hunters do not avoid such areas.[57]  Additionally, "winter is not a primary hunting time for caribou"[58] and "[o]verall caribou harvests for the community of Nuiqsut as a whole have remained stable over time."[59]

Further, while Plaintiffs' members assert that Willow will harm caribou and their subsistence prospects, ConocoPhillips provided evidence that Willow's gravel

_____

18 (Case No. 3:23-cv-00061-SLG).  However, she has not averred that she goes off the GMT-2 road to hunt caribou and that her access will similarly be obstructed.  *See Nat'l Wildlife Fed'n*, 886 F.3d at 822 ("Plaintiffs seeking injunctive relief must show that they themselves are likely to suffer irreparable harm . . . .").  In any event, while "[t]he Willow access road will be closed when construction resumes this winter," it "will be made available for local use again in summer of 2024 when the new gravel can be worked."  Docket 177-13 at ¶ 13 (Case No. 3:23-cv-00058-SLG).  Accordingly, any harm from the GMT-2 road closure would be short term and not irreparable.

[55] Docket 190-2 at ¶ 25 (Case No. 3:23-cv-00061-SLG).

[56] AR824340.

[57] AR821026.

[58] AR824330.  *See also* Docket 177-14 at ¶ 11 (Case No. 3:23-cv-00058-SLG) ("[T]he entire [Willow] project area (which includes a 2.5-mile buffer around gravel infrastructure) overlaps with just 0.92% of the Teshekpuk Caribou Herd Winter Seasonal range."); Docket 177-13 at ¶ 4 (Case No. 3:23-cv-00058-SLG) ("January through April harvest of caribou (from all areas) averages 7% percent of the annual harvest.").

[59] AR824327.

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order re Motions for Injunction Pending Appeal
Page 14 of 27

road has provided a boon to caribou harvesting. Chester Hopson lives in Nuiqsut, uses the gravel road that ConocoPhillips built last construction season "pretty much every day," and has "seen a lot of people harvesting caribou on that road."[60] Thomas Napageak, a Nuiqsut native, described that, last fall, he helped a hunting party from Anaktuvuk Pass harvest 19 caribou from gravel roads at GMT-1 and GMT-2.[61] Regarding the impact of noise from gravel mining on caribou, Mr. Napageak averred that "Willow construction last year did not alter the migration" of caribou and "[m]ost subsistence hunting takes place from the road away from the mine site area."[62] Curtis Avhakana "observed a lot of caribou on the roads and ice roads during construction activity" last winter and "[t]hey did not appear bothered in the slightest by the activity."[63] These competing narratives from subsistence hunters do not support a finding that Plaintiffs have made the requisite clear showing that their subsistence hunting activities will be irreparably harmed if the 2023-2024 winter construction activities proceed.

Several of Plaintiffs' members are concerned about other impacts of

---

[60] Docket 177-8 at ¶¶ 2, 7 (Case No. 3:23-cv-00058-SLG). *See also* Docket 177-3 at ¶ 8 (Case No. 3:23-cv-00058-SLG) ("I have already used the short section of new road built from GMT-2 to harvest caribou. It only just opened this fall, but I went to the end of the road and found a herd out there. I harvested three caribou from that herd."); Docket 177-4 at ¶ 10 (Case No. 3:23-cv-00058-SLG) ("[T]he new road . . . is being heavily used every day by people from the village.").

[61] Docket 177-2 at ¶¶ 2, 7 (Case No. 3:23-cv-00058-SLG).

[62] Docket 177-2 at ¶ 19 (Case No. 3:23-cv-00058-SLG).

[63] Docket 177-4 at ¶ 13 (Case No. 3:23-cv-00058-SLG).

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order re Motions for Injunction Pending Appeal
Page 15 of 27

ConocoPhillips' proposed winter construction activities. Ms. Maupin is concerned about noise pollution from Willow and air pollution from vehicle activity.[64] However, she lives in Fairbanks, not in the area around Willow, so it is not likely that she will face immediate irreparable injury due to noise or air pollution caused by the 2023-2024 proposed winter construction.[65] Dr. Ahtuangaruak avers that, "[t]his winter, we heard the blasting at the new mine for Willow" and residents "could hear and feel it in the village, shaking the houses."[66] But ConocoPhillips provided evidence that, on the whole, noise and vibrations from gravel mining last winter season was imperceptible or nearly imperceptible to Nuiqsut's residents.[67] And while BLM predicted that "[b]lasting would be very annoying near the source and intrusive to conversation in Nuiqsut," it also found that "these noise events would be very short-lived and instantaneous."[68] On the whole, Plaintiffs have not established that noise from blasting constitutes an irreparable injury that warrants an injunction pending

---

[64] Docket 169-9 at ¶¶ 21-22 (Case No. 3:23-cv-00058-SLG).

[65] Docket 169-9 at ¶ 5 (Case No. 3:23-cv-00058-SLG).

[66] Docket 190-2 at ¶ 24 (Case No. 3:23-cv-00061-SLG).

[67] Docket 177-2 at ¶ 13 (Case No. 3:23-cv-00058-SLG) ("Although the company conducted significant blasting last winter, I did not hear anything in Nuiqsut"); Docket 177-8 at ¶ 10 (Case No. 3:23-cv-00058-SLG) ("From the Spur road outside of Nuiqsut, you could see the mine blasts in the distance, but you could not hear them. And I did not hear any blasts at all in Nuiqsut."); Docket 177-9 at ¶ 8 (Case No. 3:23-cv-00058-SLG) ("Most times from the village, you could not hear or feel the blasts at all. There were a few times when I felt a slight vibration, but it was minor.").

[68] AR820825.

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order re Motions for Injunction Pending Appeal
Page 16 of 27

appeal. Mr. Kunaknana also avers that "[d]uring winter exploration when the ice road is under construction and when the gravel is being hauled, we see yellow snow on both sides of the ice road from the heavy equipment and machinery operating 24/7 for the delivery of the gravel to the development sites."[69] But it is unclear what irreparable harm, if any, is caused by the discoloration of the snow along the gravel roads.[70]

Finally, Plaintiffs have filed several declarations that they contend show that their members will suffer injury to their use and enjoyment of the land due to the 2023-2024 winter construction activities.[71] Daniel Ritzman states that Willow development will deter him from visiting the TLSA in the future[72] and Josh Oboler has a trip planned to the TLSA and the Pik Sand Dunes this upcoming summer.[73] But, as noted, no construction in the TLSA is planned before January 2025, and

---

[69] Docket 169-8 at ¶ 14 (Case No. 3:23-cv-00058-SLG).

[70] *See Caribbean Marine Servs. Co.*, 844 F.2d at 675-76 (explaining that "[s]ubjective apprehensions and unsupported predictions" are "not sufficient to satisfy a plaintiff's burden of demonstrating an immediate threat of irreparable harm"). Similarly, Elisabeth Dabney's claim that "[g]ravel mining and road construction will fill wetlands that provide habitat for the birds our members seek out in the Reserve," does not identify harm to birds nor tie any such harm to birds to an injury to a member's interest in viewing those birds. Docket 169-2 at ¶ 23 (Case No. 3:23-cv-00058-SLG).

[71] Docket 190 at 11-12 (Case No. 3:23-cv-00061-SLG).

[72] Docket 169-5 at ¶ 36 (Case No. 3:23-cv-00058-SLG).

[73] Docket 190-4 at 5 and ¶ 10 (Case No. 3:23-cv-00061-SLG).

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order re Motions for Injunction Pending Appeal
Page 17 of 27

the closest Willow construction to the Pik Sand Dunes is 24.9 miles away.[74]  Mr. Ritzman also intends to float down the Colville River to Nuiqsut next summer and he has unspecified plans to explore the Ublutuoch River and surrounding areas in the summer.[75]  But the gravel mine near the Ublutuoch River is already open and is 500 feet from the river and most construction occurs in the winter.[76]

Dr. Ahtuangaruak states that she "like[s] to travel along the GMT-2 road, from Nuiqsut to the end, not to hunt but to get out any enjoy nature and try to relax."[77]  She asserts that the "permanent infrastructure that will be constructed over the next two years, including the roads, pipelines, well pads, and operations center, will destroy the peace and beauty that currently exists beyond the end of the road."[78]  Even if Dr. Ahtuangaruak's interest in the "peace and beauty" that presently exists past the end of the current road would be harmed by this winter's planned construction activities, it is unclear whether this type of intangible injury would constitute an irreparable injury sufficient to warrant an injunction pending

---

[74] Docket 177-13 at ¶ 23 (Case No. 3:23-cv-00058-SLG).

[75] Docket 169-5 at ¶ 34 (Case No. 3:23-cv-00058-SLG).

[76] Docket 169-5 at ¶ 34 (Case No. 3:23-cv-00058-SLG); *Sovereign Iñupiat for a Living Arctic*, 2023 WL 2759864, at *10.

[77] Docket 190-2 at ¶ 23 (Case No. 3:23-cv-00061-SLG).

[78] Docket 190-2 at ¶ 23 (Case No. 3:23-cv-00061-SLG).

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order re Motions for Injunction Pending Appeal
Page 18 of 27

appeal.[79]   In any event, Plaintiffs fail to establish the other *Winter* factors and therefore an injunction pending appeal is not warranted.

### III.   Balance of the Equities and the Public Interest

The government is a party to this action, so the final two *Winter* factors—the balance of the equities factor and the public interest factor—merge.[80]   In "balanc[ing] the competing claims of injury," a court "must consider the effect on each party of the granting or withholding of the requested relief."[81]   Because environmental injury specifically "can seldom be adequately remedied by money damages and is often permanent or at least of long duration," the "balance of harms will usually favor the issuance of an injunction to protect the environment" if "such injury is sufficiently likely."[82]   However, the law does not "allow us to abandon a balance of harms analysis just because a potential environmental injury is at issue,"[83] and "[e]conomic harm may indeed be a factor in considering the balance

---

[79] *See All. For Wild Rockies*, 632 F. 3d at 1135.

[80] *Drakes Bay Oyster Co.*, 747 F.3d at 1092 (citing *Nken*, 556 U.S. at 435).

[81] *Amoco Prod. Co.*, 480 U.S. at 542.

[82] *Id.* at 545.

[83] *Lands Council*, 537 F.3d at 1005 (citing *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1496 (9th Cir. 1995)). *See W. Watersheds Project v. Salazar*, 692 F.3d 921, 923 (9th Cir. 2012) ("In balancing the equities, the district court properly weighed the environmental harm posed by [a solar energy] project against the possible damage to project funding, jobs, and the state and national renewable energy goals that would result from an injunction halting project construction, and concluded that the balance favored" denying a preliminary injunction halting project construction.).

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order re Motions for Injunction Pending Appeal
Page 19 of 27

of equitable interests."[84]   The Court therefore must balance the environmental and subsistence harms that have been asserted if the 2023-2024 winter construction activities proceed against the economic and other harms that would occur if those activities are enjoined while the merits of this case are on appeal.

The same interests persist at this stage of the litigation than were present when Plaintiffs sough a preliminary injunction earlier this year.[85]   SILA Plaintiffs argue that the environmental and subsistence harms to their members outweigh "[a]ny economic benefits to the government or permittees" and that any employment opportunities for Nuiqsut residents and others would simply be deferred to the future if ConocoPhillips is permitted to resume construction activities after resolution of Plaintiffs' appeals.[86]   Similarly, CBD Plaintiffs assert that "[c]onstruction activities during the pendency of this appeal will cause irreparable environmental and subsistence injuries to Plaintiffs' members," while an "injunction pending appeal, by contrast, will primarily harm Defendants by postponing the [Willow] Project's economic benefits for the duration of the

---

[84] *Earth Island Inst. v. Carlton*, 626 F.3d 462, 475 (9th Cir. 2010) (first citing *Amoco Prod. Co.*, 480 U.S. at 545; and then citing *Lands Council*, 537 F.3d at 1005 (holding that the district court did not clearly err in concluding that the balance of harms did not tip in environmental organization's favor where a Forest Service project would "further the public's interest in aiding the struggling local economy and preventing job loss")).

[85] *See Sovereign Iñupiat for a Living Arctic*, 2023 WL 2759864, at *12-15.

[86] Docket 169 at 17 (Case No. 3:23-cv-00058-SLG).

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order re Motions for Injunction Pending Appeal
Page 20 of 27

appeal."[87]

On the other hand, Kuukpik emphasizes that 39 percent of Nuiqsut households live below the poverty line[88] and notes that if construction is halted by an injunction, the corporation will be unable to provide jobs to 12 local subsistence representatives and its subsidiary would be unable to hire 25 additional Nuiqsut residents this winter.[89] Further, Kuukpik argues that halting construction activities pending appeal would prevent the construction of subsistence ramps and gravel roads that most subsistence hunters and fishers view as highly beneficial to these activities.[90] ASRC would also face economic harm if winter construction activities are enjoined, in part because ASRC's subsidiary "estimates a loss of approximately 349 jobs over the next few months, and $59 million in revenue."[91] NSB claims that it will lose revenue if winter construction activities are halted and noted that the "North Slope Borough Assembly[,] . . . in 2021, voted unanimously (with one abstention) to approve the rezoning of lands to allow Willow's

---

[87] Docket 190 at 13 (Case No. 3:23-cv-00061-SLG).

[88] Docket 180 at 22 (Case No. 3:23-cv-00058-SLG) (citing AR821013).

[89] Docket 180 at 23 (Case No. 3:23-cv-00058-SLG) (citing Dockets 180-3 at ¶ 16 and 180-5 at ¶ 5 (Case No. 3:23-cv-00058-SLG)).

[90] Docket 180 at 25-27 (Case No. 3:23-cv-00058-SLG).

[91] Docket 181 at 21 (Case No. 3:23-cv-00058-SLG) (citing Docket 181-1 at ¶¶ 31, 35 (Case No. 3:23-cv-00058-SLG)).

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order re Motions for Injunction Pending Appeal
Page 21 of 27

construction to begin."[92]   The State offers that the postponement of Willow development will imperil future public permitting and planning required for Willow and employment and training opportunities for North Slope residents.[93] ConocoPhillips asserts that an injunction would jeopardize the future of the Project and the employment of 1,800 workers set to be engaged on Willow this winter.[94]

In *Amoco Production Co. v. Village of Gambell*, the Supreme Court observed that subsistence uses are not "always more important than development of energy resources, or other uses of federal lands."[95]   In that case, the plaintiffs sought a preliminary injunction against an oil and gas lease sale that they alleged would interfere with their aboriginal hunting and fishing rights.[96]   The district court held that, while the plaintiffs "had established a strong likelihood of success on the merits," injunctive relief was inappropriate because "the balance of irreparable harm did not favor [them,] . . . the public interest favored continued oil exploration,"

---

[92] Docket 182 at 17, 14 (Case No. 3:23-cv-00058-SLG) (citing Docket 182-1 at ¶¶ 25-26 (Case No. 3:23-cv-00058-SLG)).

[93] Docket 184 at 13-14 (Case No. 3:23-cv-00058-SLG) (citing Docket 184-1 at ¶¶ 2-4) (Case No. 3:23-cv-00058-SLG).

[94] Docket 177 at 43-47 (Case No. 3:23-cv-00058-SLG).  Through November 2023, ConocoPhillips states that it has invested $1.1 billion in the Willow Project, and, during the 2023-2024 winter construction season, ConocoPhillips anticipates spending an additional $750 million.  Docket 177-11 at ¶ 13 (Case No. 3:23-cv-00058-SLG).

[95] *Amoco Prod. Co.*, 480 U.S. at 545-46.

[96] *Id.* at 535.

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order re Motions for Injunction Pending Appeal
Page 22 of 27

Case 3:23-cv-00061-SLG   Document 208   Filed 12/01/23   Page 22 of 27

and such exploration would "not significantly restrict subsistence resources."[97] The Supreme Court agreed with the district court's analysis and held that "injury to subsistence resources from [oil and gas] exploration was not at all probable" in that case.[98] And it noted that "on the other side of the balance of harms was the fact that the oil company . . . had committed approximately $70 million to exploration . . . which they would have lost without chance of recovery had exploration been enjoined."[99]

Here, Plaintiffs have not persuasively demonstrated that injury to subsistence resources from Willow's 2023-2024 winter construction activities is probable, especially in light of the competing perspectives of subsistence hunters in Nuiqsut. *Amoco* suggests that the economic harms, particularly to the residents of Nuiqsut and elsewhere on the North Slope, if 2023-2024 winter construction activities are enjoined, outweigh any potential harm to subsistence hunters that this winter's construction activities may cause.[100]

The Court also finds that, while the environmental harm that would be

---

[97] *Id.* at 539-40.

[98] *Id.* at 545.

[99] *Id.*

[100] *Lands Council*, 537 F.3d at 1005 (upholding denial of a preliminary injunction motion against project that "further[s] the public's interest in aiding the struggling local economy and preventing job loss"); *Or. Nat. Desert Ass'n v. Bushue*, 594 F. Supp. 3d 1259, 1271 (D. Or. 2022) (denying as against public interest preliminary injunction that "could impose significant financial harm, threatening jobs and livelihoods").

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order re Motions for Injunction Pending Appeal
Page 23 of 27

caused by 2023-2024 winter construction activities is of legitimate concern to Plaintiffs, only a small area of the Reserve will be impacted: No construction will occur in the TLSA during the 2023-2024 winter construction season; 7.6 acres of the Colville River Special Area will be disturbed during construction (0.00031 percent of that special area); and 204.1 acres of land will be disturbed in the Reserve (0.000879 percent of the Reserve).[101]

As for "[t]he public interest inquiry," it "primarily addresses impact on non-parties rather than parties."[102]  "This is particularly the case where 'the impact of an injunction reaches beyond the parties, carrying with it a potential for public consequences.'"[103]  An injunction pending appeal in this case would implicate issues of broader public concern that has significant public consequences.  In this regard, the Court considers the fact that the Alaska House and Senate unanimously adopted a resolution on February 20, 2023, stating that "a further delay in approval or construction of the Willow project . . . is not in the public interest."[104]  Alaska's elected federal lawmakers also expressed unanimous

---

[101] Docket 177-12 at ¶¶ 13-14 (Case No. 3:23-cv-00058-SLG).

[102] *Inst. of Cetacean Rsch. v. Sea Shepherd Conservation Soc'y*, 725 F.3d 940, 946 (9th Cir. 2013) (quoting *Bernhardt v. Los Angeles County*, 339 F.3d 920, 931 (9th Cir. 2003)).

[103] *Id.* (quoting *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1139 (9th Cir. 2009)).

[104] Docket 53-6 at 4 (Case No. 3:23-cv-00058-SLG) (House Joint Resolution No. 6).

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order re Motions for Injunction Pending Appeal
Page 24 of 27

Case 3:23-cv-00061-SLG   Document 208   Filed 12/01/23   Page 24 of 27

support of the Willow Project at that time.[105]  And in an amicus brief recently filed

by the Alaska Congressional Delegation and Alaska State Legislature, they assert

that "granting injunctive relief will cause immediate harm to Alaska's economy" and

"[t]he construction at issue here is more extensive and integral to the Project,

making the potential harm to many Alaskans' livelihoods even greater."[106]  And

they argue that "energy development in the [Reserve] strengthens national security

and decreases dependence on foreign energy."[107]

     The Ninth Circuit has explained that "the district court should give due weight

to the serious consideration of the public interest in [a] case that has already been

undertaken by the responsible state officials" who acted "unanimously" with

respect to "the subject of this [litigation]."[108]  The Ninth Circuit added, "[w]e are not

sure on what basis a court could conclude that the public interest is not served by

[legislative action] adopted in such a fashion."[109]  In light of the foregoing, the Court

---

[105] Docket 49-1 (Case No. 3:23-cv-00058-SLG).

[106] Docket 183-1 at 6 (Case No. 3:23-cv-00058-SLG).

[107] Docket 183-1 at 7 (Case No. 3:23-cv-00058-SLG).

[108] *Stormans, Inc.*, 586 F.3d at 1140; *see also Burford v. Sun Oil Co.*, 319 U.S. 315, 318 (1943) (explaining in the context of "the general regulatory system devised for the conservation of oil and gas in Texas" that it "is in the public interest that federal courts of equity should exercise their discretionary power with proper regard for the rightful independence of state governments in carrying out their domestic policy" (citation omitted)).

[109] *Golden Gate Rest. Ass'n v. City & County of San Francisco*, 512 F.3d 1112, 1126-27 (9th Cir. 2008).

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order re Motions for Injunction Pending Appeal
Page 25 of 27

gives considerable weight to the conclusions of the Alaska Congressional Delegation and the Alaska State Legislature that an injunction halting 2023-2024 winter construction activities pending appeal is not in the public interest.

Moreover, allowing the 2023-2024 winter construction activities to proceed would be consistent with the congressional directive in the NPRPA to the Secretary of Interior to conduct "an expeditious program of competitive leasing of oil and gas in the [Reserve]."[110] Considering that last year's gravel road has already aided in the successful harvesting of caribou by many subsistence hunters, the construction of subsistence ramps and additional miles of gravel road, in addition to the employment opportunities Willow will afford, would help ensure an "adequate opportunity for satisfaction of the economic and social needs of the State of Alaska and its people," which is a stated purpose of ANILCA.[111] The Court concludes that the strong legislative support at both the state and federal levels to proceed with the 2023-2024 winter construction activities tips strongly against the issuance of an injunction pending appeal.[112]

---

[110] Pub. L. No. 96-514, 94 Stat. 2964 (1980) (codified at 42 U.S.C. § 6506a).

[111] 16 U.S.C. § 3101(d).

[112] *United States v. McIntosh*, 833 F.3d 1163, 1172 (9th Cir. 2016) ("It is 'emphatically . . . the exclusive province of the Congress not only to formulate legislative policies and mandate programs and projects, but also to establish their relative priority for the Nation. Once Congress, exercising its delegated powers, has decided the order of priorities in a given area, it is for . . . the courts to enforce them when enforcement is sought.'" (quoting *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 194 (1978))).

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order re Motions for Injunction Pending Appeal
Page 26 of 27

In sum, the Court has weighed the environmental and subsistence harms identified by Plaintiffs against the economic impact, benefits to most subsistence users, and the state and federal legislative pronouncements of the public interest, if the proposed Willow 2023-2024 winter construction activities proceed, and concludes that the balance of the equities and the public interest tip sharply against injunctive relief pending appeal.

## IV. Conclusion

Plaintiffs have failed to satisfy the *Winter* factors.[113]  Accordingly, SILA Plaintiffs' Motion for Injunction Pending Appeal at Docket 169 (Case No. 3:23-cv-00058-SLG) and CBD Plaintiffs' Rule 62(d) Motion for Injunction Pending Appeal at Docket 190 (Case No. 3:23-cv-00061-SLG) are **DENIED**.

DATED this 1st day of December, 2023, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[113] Because the Court finds that Plaintiffs have not raised a serious question going to the merits, the Court denies CBD Plaintiffs' request to issue a short-term injunction while Plaintiffs seek emergency relief from the Ninth Circuit.  *Cf. Sovereign Iñupiat for a Living Arctic v. BLM*, Case No. 3:20-cv-00290-SLG, 2021 WL 454280, at *4 (D. Alaska Feb. 6, 2021) (granting limited injunction where legal issue was one of first impression).  Moreover, 2023-2024 surface-disturbing winter construction will begin "no sooner than December 21, 2023," providing sufficient time for Plaintiffs to seek emergency relief in the Ninth Circuit.  Docket 177 at 49 (Case No. 3:23-cv-00058-SLG); Docket 177-11 at ¶ 7 (Case No. 3:23-cv-00058-SLG).

Case No. 3:23-cv-00058-SLG, *Sovereign Iñupiat for a Living Arctic, et al. v. BLM, et al.*
Case No. 3:23-cv-00061-SLG, *Ctr. for Biological Diversity, et al. v. BLM, et al.*
Order re Motions for Injunction Pending Appeal
Page 27 of 27